IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| STEPHEN L. PRICE, | ) | |
| | ) | 02-30767 |
| Debtor. | ) | CHAPTER 7 |
| _____ | ) | |
| | ) | |
| SUSAN S. DEPAOLA, TRUSTEE, | ) | |
| | ) | ADVERSARY PROCEEDING NO. |
| Plaintiff, | ) | |
| | ) | 05-03063 |
| vs. | ) | |
| | ) | |
| STEPHEN L. PRICE and STARLA | ) | DISTRICT COURT CASE NO. |
| WATSON FRAZER, | ) | |
| | ) | 2:2006mc03317 |
| Defendants. | ) | |

TO:  The United States District Court for
     The Middle District of Alabama, Northern Division

## AMENDED MOTION TO WITHDRAW REFERENCE AND TRANSFER TO DISTRICT COURT AND MEMORANDUM IN SUPPORT THEREOF

Comes Now, Starla Watson Frazer ("Frazer") and pursuant to 11 U.S.C. § 157 moves this Court to withdraw the previous, automatic reference of this case to the Bankruptcy Court and transfer this Adversary Proceeding back to the District Court. For her Motion, Frazer asserts the following:

## INTRODUCTION

After having notice for at least three years of the transfers to Frazer in the Divorce Decree and Price's nominal participation in the Tiffin Litigation, the Trustee brought this

3714.4

suit claiming a right to the proceeds of the Tiffin Stock and the Residence in August of 2005.  The Trustee appears to assert two claims in support of her attempt to avoid the transfers:

1.  the divorce Order was collusive and a fraud upon the Court; and

2.  the Divorce Decree did not transfer all rights to the Tiffin Stock and the proceeds of the Tiffin Litigation.

The Bankruptcy Court's specialized knowledge is not beneficial in this case because both of the Trustee's claims are governed by state law.  The Trustee cannot bring her fraudulent transfer claim under the bankruptcy code, 11 U.S.C. § 548 as it is barred by the statute of limitations contained in 11 U.S.C. § 546.  (See App. 1, Pleadings, Exh. A, Frazer Motion for Summary Judgment).  The Trustee's only avoidance action is under 11 U.S.C. § 544(b) pursuant to which the Trustee stands in the shoes of an actual creditor who would have the ability to bring this action under the Alabama Fraudulent Transfer Act, § 8-9A-4. Any claim under 11 U.S.C. § 544, however, is also barred by the statute of limitations. 11 U.S.C. § 546(a); (App. 1, Pleadings, Exh. A, Frazer Motion for Summary Judgment).  Any claim that property is property of the estate under § 541 is also governed by state law.

Frazer requests that this Court withdraw the automatic reference of this case to the Bankruptcy Court because Frazer

has a constitutional right to a jury trial, a constitutional right to have her case heard by an Article III Court and because withdrawal of the reference would promote judicial economy. Because this case involves only state law claims, the uniformity of the application of the Bankruptcy Code will not be impacted.

## FACTUAL BACKGROUND

### I.    FRAZER DIVORCED PRICE BECAUSE OF PRICE'S MISCONDUCT

1.    Frazer and the Debtor, Stephen Price, ("Price") were married for thirteen years and have two minor children. Price and Frazer jointly owned a trucking business and upon the request of Price, Frazer executed guarantees of the trucking business's debts. (App. 2, Frazer Affidavit, ¶ 2).

2.    On September 22, 2000, Price forged Frazer's name to a guarantee of any and all of Price's obligations in existence or that accrued thereafter with Trans Lease, Inc. (App. 2, Frazer Affidavit, ¶5, Exh. A).  On October 11, 2000, Price also forged Frazer's name to two truck leases with Trans Lease, Inc. (App. 2, Frazer Affidavit, ¶5, Exh. B).

3.    On February 1, 2001, Frazer filed for divorce in DR-2001-126 in the Circuit Court of Montgomery County. (the "Divorce Action"). (App. 2, Frazer Affidavit, ¶4).  The divorce was highly contentious. (App. 2, Frazer Affidavit, ¶4).

4.    On August 2, 2001, six months after filing the Divorce Action, Frazer and Price agreed upon the terms of the

divorce and entered into a Marital Settlement Agreement (the "Divorce Agreement"). (App. 2, Frazer Affidavit, ¶ 6, Exh. C). The Divorce Agreement required Price to pay Frazer alimony, child support, and for Price to assume all obligations of their jointly owned trucking company. Price agreed to indemnify Frazer for any liability arising out of said obligations. (App. 2, Frazer Affidavit, ¶ 6, Exh. C, ¶ 11). The Divorce Agreement also divided the parties assets. Id., ¶¶ 12, 14, 16, 18, 19.

5.    On August 8, 2001, Judge John C. Capell entered a final non-appealable order granting Frazer's petition for divorce, incorporating the Divorce Agreement and ordering the parties to comply with the Divorce Agreement (the "Divorce Order"). (App. 2, Frazer Affidavit, ¶ 7, Exh. D).

6.    One of Price's assets was 250 shares of stock in Tiffin Motors Homes, Inc. (the "Tiffin Stock"). (App. 2, Frazer Affidavit, ¶ 7, Exh. C, ¶ 19). The Divorce Agreement and Order transferred title to the Tiffin Stock to Frazer.

> [Frazer] shall be the absolute owner of the stock in Tiffin Motor Homes, Inc. which is presently titled in the Husband's name. The Husband shall immediately execute any and all documents which are necessary to convey all right[s], title and interest therein to Wife to be her's absolutely.

> (App. 2, Frazer Affidavit, Exh. C, ¶ 19).

> Divesting of Property Rights:    Except as otherwise provided for in this "Marital Settlement Agreement", each party shall be

divested of and each party waives, renounces and
gives up all right, title, and interest in and to
the property awarded to the other.

> (App. 2, Frazer Affidavit, Exh. C,
> ¶ 22).

7.  In the event Price transferred the Tiffin Stock
before the entry of the Divorce Order, Price was required to pay
to Frazer either the fair market value of the Tiffin Shares or
the amount he actually received, "whichever amount is greater."
(App. 2, Frazer Affidavit, Exh. C, ¶ 19).   The Divorce Order
established a judicial lien upon any amount Price receives for
the Tiffin Stock.  (App. 2, Frazer Affidavit, Exh. C, ¶ 19; Exh.
D).

8.  The Divorce Agreement obligated Price to pay "any
costs, expenses, legal fees or legal expenses associated with
this stock or its transfer." (App. 2, Frazer Affidavit, Exh. C,
¶ 19).

9.  The Divorce Order also transferred to Frazer all
right, title and interest to the residence in Steamboat Springs,
Colorado (the "Residence"). (App. 2, Frazer Affidavit, Exh. C, ¶
12; App. 1, Pleadings, Exh. B, Trustee AP, ¶ 7).

10. Frazer married John Frazer in December of 2002
and they remain married to this date.   Price has also re-
married. (App. 2, Frazer Affidavit, ¶ 10).

## II.  PRICE'S VIOLATIONS OF THE DIVORCE DECREE AND UNLAWFUL ACTIONS

11.  On August 10, 2001, two days after the entry of the Divorce Order which transferred the Tiffin Stock to Frazer, Price agreed to participate in a minority shareholder action against Bob Tiffin, Inc., et al, CV-01-223 in the Circuit Court of Franklin County (the "Shareholders Action"). (App. 2, Frazer Affidavit, ¶ 8, Exh. E). Price falsely verified the Tiffin Complaint the day after the Divorce Order was entered, misrepresenting that he was the rightful owner of the Tiffin Stock. (App. 2, Frazer Affidavit, ¶ 8, Exh. E). Frazer was unaware that this had occurred. (App. 2, Frazer Affidavit, ¶ 8).

12.  Frazer sold the Residence on or about September 22, 2001. Great Plains Trucking, Inc. asserted a lien upon the Residence for debts incurred by Price, which debts Frazer guaranteed. In violation of the Divorce Order, Price did not indemnify Frazer for the debts he incurred. Frazer litigated with Great Plains for over two years before she reached a settlement paying $150,000 of the Residence proceeds to Great Plains on behalf of Price. (App. 2, Frazer Affidavit, ¶ 16).

13.  Frazer attempted to obtain possession of the Tiffin Stock certificate from Price immediately after the Divorce. After some delay, Grady Price, Price's father, claimed

that he was holding the Tiffin Stock Certificate as collateral for an unsupported and undocumented loan Grady Price had allegedly made to Price.  Finally, in November 2001, Grady Price released his alleged lien and Frazier's Tiffin Stock certificate was delivered to Frazer.  Frazer has had possession of the Tiffin Stock since November of 2001.  (App. 2, Frazer Affidavit, ¶ 9).

14.  In approximately September, 2001, Frazer discovered that Price had joined as a plaintiff in the Tiffin Litigation although the stock had been transferred to Frazer. The Divorce Order was modified to reflect Frazier's ownership of the claims in the Tiffin Litigation.  (App. 2, Frazer Affidavit, ¶¶ 8, 19, Exh. J).

15.  From 2001 to 2004, Price, Grady Price and Tom Baddley, the lawyer representing the minority shareholders in the Tiffin Litigation ("Baddley"), offered to purchase Frazer's Tiffin Stock for the extremely undervalued amount of $100,000 – $200,000.  Frazer declined each offer.  (App. 2, Frazer Affidavit, ¶ 10).

16.  On January 15, 2002, Tiffin filed a declaratory judgment action, Case No. CV02-019 in the Circuit Court of Franklin County against Price and Frazer to determine the rightful owner of the Tiffin Stock.  Frazer was dismissed on May

22, 2003 for lack of prosecution and Price was dismissed on March 15, 2006. (App. 2, Frazer Affidavit, ¶ 11).

### III. PRICE'S CHAPTER 7 BANKRUPTCY CASE DISCHARGED HIS DEBTS, INCLUDING MANY OWED TO FRAZER

17.  On March 11, 2002, over a year after Frazer filed for divorce, Price filed for Chapter 11 relief and voluntarily converted to Chapter 7 on April 24, 2002. (App. 1, Pleadings, Exh. B, Trustee AP, ¶ 5). Consistent with the Divorce Order and the transfer of the Tiffin Stock to Frazer, Price did not include the Tiffin Stock or the Shareholders Action on his bankruptcy schedules. (App 1, Pleadings, Exh. C, Price Schedules and Statement of Financial Affairs).

18.  Susan DePaola, the Plaintiff, was appointed Trustee on May 6, 2002 (the "Trustee"). (App. 1, Pleadings, Exh. B, Trustee AP, ¶ 5; Exh. D, Docket Sheet).

19.  In 2002, the Trustee had knowledge that Price had transferred the Tiffin Stock and the Residence to Frazer pursuant to the Divorce Order. The Trustee wrote a letter to William Hibbard, Great Plains' attorney in the Residence Litigation, stating that she had examined the Divorce Order and Divorce Agreement and that she would make a decision whether to pursue a fraudulent transfer action by July 19, 2002. (App. 2, Frazer Affidavit, ¶ 18, Exh. G).

20.  On January 8, 2003, Price received his discharge. As a consequence of Price's discharge, Frazer has been forced to pay approximately $350,000 in debts that Price was ordered to pay in the Divorce Order.  Frazer did not file a proof of claim in Price's or Cross Country's bankruptcy cases.  (App. 2, Frazer Affidavit, ¶ 17).

21.  The Trustee reviewed the case 11 times between April, 2003 and June, 2004, whereby each time she determined that the case could not be closed because of possible assets. Finally, on June 15, 2004, the Trustee issued a Final Report of No Distribution.  The Trustee was discharged and the case was closed on June 21, 2004. (App. 1, Pleadings, Exh. R, Price Bankruptcy Docket Sheet; Doc. 57-59).

## IV.  FRAZER'S ATTEMPTS TO PROTECT HER INTERESTS IN THE TIFFIN STOCK AND THE MINORITY SHAREHOLDER'S ACTION.

22.  Frazer learned of the Shareholders Action, and on April 17, 2003, the Circuit Court approved a modification of the Divorce Order ("Modification Agreement") to reflect Frazer's ownership of the claims in the Shareholders Action as the rightful owner of the Tiffin Stock:

> Husband agrees to notify his attorney and/or Wife's attorney as soon as litigation regarding the stock is resolved.  Husband understands that any payments to Husband for said stock that is at issue in this matter is not to be used for his personal benefit but instead belongs solely to the Wife and Husband will sign whatever documents

are necessary to assist in transferring all stock
to Wife upon release of said stock....

> (App. 2, Frazer Affidavit, ¶ 19,
> Exh. J). (Emphasis supplied).

23.  The Modification Agreement also greatly reduced Price's child support obligations because Price claimed that his income declined from $24,000 per month to $1,500.00 per month. Price works for his new wife's company. (App. 2, Frazer Affidavit, ¶ 19, Exh. J).

24.  On December 1, 2004, Frazer learned of the settlement of the Shareholders Action. (App. 2, Frazer Affidavit, ¶ 20).

25.  Frazer notified Baddley, the minority shareholder's lawyer, that she was in possession of the Tiffin Stock Certificate on April 1, 2004. (App. 2, Frazer Affidavit, ¶ 21, Exh. H).

26.  Frazer, through counsel, filed a Motion to enforce the Divorce Order, as modified, so that she could receive her proceeds. The hearing was held in the Circuit Court before the Hon. Mark Anderson on December 21, 2004. The Trustee and her legal counsel appeared and requested a 90 day continuance of the domestic relations case to permit the Trustee to investigate the ownership of the Tiffin Shares, despite that the Trustee had known since the inception of Price's bankruptcy that the Tiffin Shares had been transferred to Frazer pursuant

to the Divorce Order.   The Circuit Court granted the continuance. (App. 2, Frazer Affidavit, ¶ 22).

27.  On December 21, 2004, the Trustee filed a motion and reopened this Chapter 7 Bankruptcy Case for the purpose of investigating the Tiffin Settlement. (App. 1, Pleadings, Exh. B, Trustee AP, ¶ 5).

28.  On January 5, 2005, in violation of the divorce Order and without Frazer's knowledge or agreement, Price executed a Tiffin Stock Purchase Agreement and Release and Settlement Agreement concluding the Shareholders Action. (App. 2, Frazer Affidavit, Exh. ¶ 23).

29.  In an apparent effort to misappropriate the proceeds of the Tiffin Litigation, on January 7, 2005, Price executed a false lost stock affidavit claiming that he had not transferred the stock to any other individual or entity and misrepresenting that he was the rightful owner of the Tiffin Stock. (App. 2, Frazer Affidavit, ¶ 24, Exh. I).

30.  Baddley, the minority shareholder's attorney who received notice from Frazer that she was in possession of the Tiffin Stock certificate, witnessed an Assignment Separate from Certificate which purportedly transferred the Tiffin Stock back to Tiffin based upon the fraudulent lost stock affidavit. (App. 2, Frazer Affidavit, ¶ 24, Exh. I).

## V.   PROCEDURAL HISTORY FOLLOWING THE REOPENING OF PRICE'S BANKRUPTCY CASE

31. Following the Trustee's reopening of the bankruptcy case, Price's counsel in the Shareholders Action, Thomas Baddley ("Baddley"), filed a motion to move the funds from the Circuit Court into a trust account maintained by Baddley. Baddley's motion was granted by the Circuit Court. Baddley presently holds Frazer's funds from the Tiffin Settlement in trust with a claim for attorney's fees.

32. Frazer filed a Motion for Relief From Automatic Stay on May 19, 2005, which the Bankruptcy stayed contingent upon the Trustee filing an adversary proceeding within thirty days of the Bankruptcy Court's order. (App. 1, Pleadings, Exh. E, Frazer Motion for Relief from Automatic Stay).

33. The Trustee filed this Adversary Proceeding on August 12, 2005, seeking: (1) a declaratory judgment that the Tiffin Stock and the Residence are property of Price's Chapter 7 Bankruptcy estate; and (2) turnover of said property pursuant to 11 U.S.C § 542. (App. 1, Pleadings, Exh. B, Trustee AP).

34. Frazer filed a Motion to Dismiss on September 14, 2005, which this Court denied. (App. 1, Pleadings, Exh. F, Frazer Motion to Dismiss; Exh. G, Trustee Opposition to Frazer Motion to Dismiss; Exh. H, Memorandum Opinion)

35.  Frazer filed a Motion for Summary Judgment Based Upon the Statute of Limitations on December 28, 2005.  The Trustee's Response acknowledged that 11 U.S.C. § 546 bars the Trustee's claims but argued that the statute of limitations should be equitably tolled without any supporting evidence. This court denied Frazer's Motion for Summary Judgment on February 13, 2006. (App. 1, Pleadings, Exh. I, Frazer Motion for Summary Judgment Based Upon Statute of Limitations; Exh. J Trustee Opposition to Frazer Motion for Summary Judgment Based Upon Statute of Limitations; Exh. K, Memorandum Opinion).

36.  The Trustee amended her Complaint on March 13, 2006 to include a cause of action that alleged a violation of the Alabama Fraudulent Transfer Act, Ala. Code § 8-9A-4.  (App. 1, Pleadings, Exh. L, Amended Trustee AP).

37.  On April 11, 2006, the Bankruptcy Court ordered Frazer to identify all issues she contends are triable to a jury with appropriate citations thereto by May 11, 2006.  (App. 1, Pleadings, Exh. N, April 11, 2006 Order).

38.  On April 14, 2006, Frazer answered the Trustee's Amended Complaint and reiterated her demand for a jury trial. (App. 1, Pleadings, Exh. O, Frazer Amended Answer, Counterclaims and Crossclaims).

39.  Frazer filed a Motion for Summary Judgment on May 1, 2006.  The Trustee's response is due June 10, 2006.

**Argument**

I.  **WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE FRAZER POSSESSES THE ABSOLUTE RIGHT TO A JURY TRIAL**

Pursuant to 28 U.S.C. § 1334(a) the District Court has original and exclusive jurisdiction over all cases under Title 11. The District Court may refer to bankruptcy judges any cases arising under Title 11 as well as related proceedings. See 28 U.S.C. § 157(a). Under this authority, the Middle District of Alabama, through a general order adopted by the District Court, has referred all cases under Title 11 as well as related proceedings to the bankruptcy judges of the Middle District. That order provides that:

> [A]ll cases under Title 11, United States Code, and all proceedings arising under Title 11, United States Code, or arising in or related to a case under Title 11 shall be referred to the bankruptcy judges for this district.
>
> See General Order of Reference, April 25,1985.

Unless the parties consent, where there is the right to a jury trial, a district court must withdraw adversary proceedings referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). See 28 U.S.C. § 157(e) which provides:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise jurisdiction by the district court and with the express consent of all the parties.

3714.4

14

See <u>Northern Pipeline Const. Co. v. Marathon Pipeline Co.</u>, 458 U.S. 50 (1982); <u>Malone v. Norwest Financial California, Inc.</u>, 245 B.R. 389, 400-01 (E.D. Cal. 2000); 28 U.S.C. § 157(e).

Frazer does not consent to a jury trial in bankruptcy court. Frazer requests that any jury trial be conducted in the District Court. Because Frazer is entitled to a jury trial on all claims in this case, withdrawal of the reference is mandatory.

The Seventh Amendment to the United States Constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved…." "Suits at common law" refers to (1) suits involving legal rights, as opposed to equitable rights; and (2) actions brought to enforce statutory rights that are analogous to common law causes of action ordinarily decided in English law courts in the late 18th century. <u>Granfinanciera v. Nordberg</u>, 492 U.S. 33, 42 (1989).

Two questions resolve the issue of whether a particular claim entails a right to trial by jury: first, whether the action or its analog was historically tried to juries at the time the Seventh Amendment was adopted in 1791; and then, second, whether the relief sought is legal or equitable in nature." <u>Malone</u>, 245 B.R. at 399 (citing <u>Tull v. United States</u>, 481 U.S. 412 (1987)).

> In Granfinanciera, the Supreme Court articulated a two part test for journaling such distinction: First, we compare the statutory action to eighteenth century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.
>
> RDM Sports Group, Inc. v. Equitex, Inc., 260 B.R. 915, 919 (N.D. Ga. 2001) (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989) (quoting Tull v. United States, 481 U.S. 412, 417-18 (1987)).

## A.  Frazer Has an Absolute Right to a Jury Trial of the Trustee's Claim that the Divorce Order was Collusive and the Tiffin Stock was Fraudulently Transferred

The Trustee has sued Frazer alleging a fraudulent transfer of the Tiffin Stock pursuant to the Alabama Fraudulent Conveyance Act.  For her relief, the Trustee requested that the Bankruptcy Court void the Divorce Order and enter judgment for the Trustee awarding the Tiffin Stock certificate and the funds in Baddley's escrow account to Price's bankruptcy estate.  (App. 1, Pleadings, Exh. L, Amended Trustee AP).  It does not appear from the Trustee's Amended Complaint that the Trustee alleges the residence was fraudulently transferred.  (App. 1, Pleadings, Exh. L, Amended Trustee AP).

In Granfinanciera, the leading case regarding the right to a jury trial, the United States Supreme held that although Congress designated fraudulent transfer actions as core

bankruptcy proceedings, Congress may not infringe upon an individuals right to a jury trial. 492 U.S. 33. The Supreme Court held that the Constitution provides the right to trial by jury of fraudulent transfer claims if a jury demand was properly asserted. Id. at 46. Frazer properly demanded a jury trial and has a Constitutional right to have a jury adjudicate whether the Divorce Order was collusive and therefore fraudulent. Granfinanciera, 492 U.S. 33. Additionally, the Trustee seeks a monetary judgment, which also entitles Frazer to a trial by jury.

**B.    Frazer has the Right to Have the Other Counts of the Trustee's Action Tried by Jury**

In Counts I and II, the Trustee seeks the recovery of the Tiffin Stock and the proceeds from the Residence, alleging that they are property of Price's bankruptcy estate.

> Where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to obtain is possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury.

> Granfinanciera, 492 U.S. at 46, n. 5.

The state court entered the Divorce Order as a final order which was recorded in the local probate office on a pre-

petition basis, effectively transferring the Debtor's interest in the Tiffin Stock and the Residence to Frazer. (App. 2, Frazer Affidavit, ¶¶ 6, 7, Exh. D, Exh. C, ¶¶ 12, 19). Absent proof of an actionable fraud in the entry of the Divorce Order, the Trustee's claims must be dismissed and the state court's order honored. In re Grace, Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D. Ala. June 22, 2000) (Sawyer, J.) Any claim by the Trustee that any portion of the Tiffin proceeds is property of the estate is governed by State law and must be tried to a jury.

Even if Counts I and II were determined to involve only equitable claims, this Court must withdraw the reference and first try the fraud claim to a jury. Frazer may not be deprived of her right to have the fraudulent transfer allegations adjudicated by a jury by permitting the bankruptcy court to first try any equitable claims involving the same facts and circumstances.

> (Only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.
>
> Dairy Queen, Inc. v. Wood, 369 U.S. 469, 473 (1989).
>
> Absent the express consent of all parties to a particular count, the bankruptcy court may not conduct a jury trial as to that count. Here, the

plaintiff clearly is entitled to a jury trial as
to at least one count of its complaint, a count
for breach of contract, and therefore the
adversary proceeding must be tried to a jury.
(citations omitted)

> Wilson v. ENC Mortgage Corp. (In
> re Wilson), Bankruptcy No.
> 0016925, Adversary No. 04-1276,
> 2005 WL 3320594, at *1 (October
> 17, 2005 Bankr. D. Mass.)

[T]his court finds that debtors are entitled to a
jury trial on these causes of action under the
Seventh Amendment, and thus, this proceeding must
be transferred to the United States District
Court.

> Walton v. AG Credit, ACA (In re
> Walton), 158 B.R. 939, 942 (Bankr.
> N.D. Ohio 1993)

Frazer has demanded a jury trial of all claims and
issues in this Adversary Proceeding. As such, withdrawal of the
reference is mandatory.

## II.  FRAZER'S MOTION TO WITHDRAW REFERENCE IS TIMELY

If a party has rightfully demanded a jury trial and
does not consent to the jury trial in bankruptcy court, the
District Court is required to withdraw its previous, automatic
referral of the case to the bankruptcy court either on its own
or upon a party's "timely" motion. 11 U.S.C. § 157(d).

The Trustee filed her original complaint in this
adversary proceeding on August 12, 2005. The Trustee's original
complaint did not allege that the transfers of the Tiffin Stock
and the Residence were fraudulent. (App. 1, Pleadings, Exh. B,

Trustee AP) Frazer's original answer contained a timely jury demand. (App. 1, Pleadings, Exh. M, Frazer Answer, Counterclaims and Crossclaim). Frazer filed a motion to dismiss and a summary judgment alleging, among other things, that absent fraudulent transfer allegations, the Trustee's Complaint failed to state a claim for which relief could be granted. (App. 1, Pleadings, Exh. F, Frazer Motion to Dismiss; Exh. I, Frazer Motion for Summary Judgment Based Upon the Statute of Limitations). The Trustee amended her complaint on March 13, 2006 to include a claim that the transfer of the Tiffin stock was fraudulent under the Alabama Fraudulent Transfer Act. (App. 1, Pleadings, Exh. L, Amended Trustee AP). On April 11, 2006, before Frazer answered the Trustee's amended complaint, the Bankruptcy Court, *sua sponte*, ordered Frazer to set forth the allegations for which she alleged the right to a jury trial by May 11, 2006. (App. 1, Pleadings, Exh. N, April 11, 2006 Order). Frazer's Amended Answer, filed April 14, 2006, also contained a timely jury demand. (App. 1, Pleadings, Exh. O, Frazer Amended Answer, Counterclaims and Crossclaim). On May 11, 2006, Frazer filed this Motion to Withdraw the Reference simultaneous with her Response to the Trustee's request to strike Frazer's jury demand. (App. 1, Pleadings, Exh. P, Frazer Response to April 11, 2006 Order).

Frazer's Motion to Withdraw the Reference and Transfer to District Court is timely.   The Bankruptcy court gave the Trustee numerous extensions to amend her Complaint and include a fraudulent transfer count.   (App. 1, Pleadings, Exh. H, Memorandum Opinion; Exh. K, Memorandum Opinion; Exh. Q, Scheduling Order).

For instance, the Bankruptcy Court gave the Trustee until January 15, 2006 to amend her complaint to state a claim for which relief could be granted.   (App. 1, Pleadings, Exh. Q, Scheduling Order).   The Trustee failed to amend her Complaint by the deadline, thus Frazer filed a motion for summary judgment based upon the statute of limitations.   (App. 1, Pleadings, Exh. I).   In Frazer's Motion for Summary Judgment based upon the Statute of Limitations, Frazer argued that the Trustee failed to amend her pleadings to allege a fraudulent transfer, thus her turnover complaint failed to state a claim for which relief could be granted and provided citations establishing that the statute of limitations contained in 11 U.S.C. § 546 applies to any fraudulent transfer claim brought under state law pursuant to 11 U.S.C § 544.   Id.   Moreover, the Bankruptcy Court then denied Frazer's Motion for Summary Judgment and granted another extension of the deadline to amend the pleadings, despite that the Trustee did not move for an extension.   The Court's Order also found a genuine issue of material fact regarding whether

the statute of limitations had been equitably tolled, despite the complete lack of evidence provided by the Trustee.  Frazer has now filed a motion for summary judgment which establishes that the Trustee had knowledge of the transfers in the Divorce Order, the Tiffin Litigation and the Residence Litigation which defeats any equitable tolling argument.  The Trustee is due to respond to Frazer's Motion for Summary Judgment by June 10, 2006.

The Trustee did not add the state law fraudulent transfer claim until March 13, 2006.  Before Frazer's answer to the amended complaint was due, the Bankruptcy Court, *sua sponte*, ordered Frazer to brief her argument as to why she was entitled to a jury trial by May 11, 2006.  This is the primary basis for Frazer's Motion to Withdraw the Reference.  Frazer filed her Motion to Withdraw the Reference simultaneous with her response to the Court's *sua sponte* order.

The Middle District of Alabama, does not have a local rule determining when to file a timely motion to withdraw the reference.  There is no binding precedent determining the appropriate time.  Because the Bankruptcy Court ordered Frazer, *sua sponte*, to assert her grounds for her jury demand prior to conclusion of all pretrial issues, Frazer, in an abundance of caution, filed her motion simultaneously therewith.

### III. <u>FRAZER HAS NOT VOLUNTARILY RELINQUISHED A KNOWN RIGHT TO A JURY TRIAL.</u>

It is anticipated that the Trustee will allege that Frazer has magically converted the Trustee's legal claims into equitable claims by filing a compulsory counterclaim against the Estate in Bankruptcy Court and has thereby consented to a trial without a jury.

> [L]egal claims are not magically converted into equitable issues by their presentation to a court of equity, *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be brought there or taken to an administrative tribunal.

<u>Granfinanciera</u>, 492 U.S. at 52.

Congress may only deny a party its constitutional right to a jury trial if the legal cause of action involves public rights. <u>Id.</u> at p. 2796. "If the right to a jury trial depends upon the forum which Congress has chosen, Congress could utterly destroy the right by always providing for administrative resolution." <u>Beard v. Braunstein</u>, 914 F. 2d 434, 440 (3rd Cir. 1990). "Waivers of valid jury demands are not to be lightly inferred, and waivers should be scrutinized with utmost care." <u>Haynes v. W.C. Cave & Co., Inc.</u>, 52 F.3d 928 (11th Cir. 1995).

### A.   Frazer's Counterclaim is Not Equivalent to a Proof of Claim

Frazer's counterclaim is not equivalent to a proof of claim.  First, one's voluntary assertion of a proof of claim against an Estate is a voluntary submission to the bankruptcy court's jurisdiction.  Langenkamp v. Culp, 498 U.S. 1042, 44 (1990).  A proof of claim is voluntary, but a compulsory counterclaim is not.  A waiver of constitutional rights must be both knowing and voluntary.  See e.g., Parke v. Raley, 506 U.S. 20, 28-29 (1992); In re NDEP Corp., 203 B.R. 905 (D.Del. 1996); In re Data Compass Corp., 92 B.R. 575, 578 (Bankr. E.D.N.Y. 1988).  Congress cannot force Frazer to choose between a valid defense, which she asserted as a declaratory counterclaim, and her Constitutional right to a jury trial.

Second, Frazer's counterclaim is not a request for any portion of the res.  Frazer is not seeking an affirmative recovery from Price's bankruptcy estate.  Frazer's counterclaim is comparable to an affirmative defense:

> It is a claim against the Trustee and Baddley to determine the extent and priority liens in the event the Court erroneously determines that the Trustee possesses any interest in the Tiffin Stock, which Starla disputes.
>
> > (App. 1, Pleadings, Exh. O, Amended Answer, Crossclaim and Counterclaim, p. 7-8, ¶10).

The Divorce Order states that if the stock is not effectively transferred to Frazer, Frazer has a judicial lien

upon the Tiffin Stock and any funds payable to Price from the Tiffin litigation.  (App. 1, Frazer Affidavit, Exh. C, Divorce Agreement at ¶ 19).  Frazer's counterclaim is protective and pled in the alternative.  If the stock has not effectively been transferred to Frazer, Frazer has been granted a judicial lien. The assertion of a counterclaim to protect our judicial lien and enforce the Divorce Order is not seeking any monetary recovery as an unsecured creditor for the Estate and is thus not part of the administration of the estate.

Third, Frazer's counterclaim did not trigger the process of allowance and disallowance of claims.

> [W]hen a proof of claim is filed, the process of allowance and disallowance of claims is triggered.  On the contrary, when the trustee or debtor files an action and there is a timely jury demand along with the assertion of counterclaims, then those counterclaims are part of the "the jury process" rather than the process of allowance and disallowance of claims.

In re NDEP Corp., 203 B.R. 905.

The filing of a proof of claim is a necessary condition for the claims allowance process to begin.  In re NDEP Corp., 203 B.R. 905, 912 (citing Germain v. Connecticut Nat'l Bank 988 F.2d 1323, 1327 (2d Cir. 1993).  Congress created the claims allowance process for the purpose of efficient and expedient processing of claims. A party that enjoys the benefit of having a more efficient and expedient adjudication of their

claims against an estate has voluntarily and knowingly submitted to bankruptcy jurisdiction and waived its right to a jury trial. See Id. Frazer's adjudication of her compulsory counterclaim (which is defensive in nature) has not been efficient or expedient.

Frazer paid approximately $350,000 of debt that the Divorce Order required Price to pay. Frazer did not file a proof of claim for those pre-petition debts. (App. 2, Frazer Affidavit ¶ 17).

**B.** **Frazer's Counterclaim Was Compulsory and Therefore Was Not a Voluntary Relinquishment of Her Right to a Jury Trial.**

Congress may not force a party to choose between waiving a valid claim or defense or waiving her right to a jury trial. Beard v. Braunstein, 914 F. 2d 434, 440 (3rd Cir. 1990). "The better rule… is that defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim." Id. (citing 6 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE CIVIL 2d § 1416 at 125 (1990)); In re Kaiser Steel Corp. v. Frates, 911 F.2d 380 (10th Cir. 1990).

> A finding that a defendant has waived his objections to jurisdiction and venue by interposing a compulsory counterclaim "is something less than fair play."
>
> Id. (citing Dragor Shipping Corp. v. Union Tank Car Corp., 378 F. 2d 241, 244 n. 4 (9th Cir. 1967).

FED. R. BANKR. 7013 provides that FED. R. CIV. P. 13 regarding compulsory counterclaims applies in adversary proceedings when a party is sued by a trustee and the claim arose post-petition. The Trustees have sued Frazer to recover for Price's allegedly fraudulent transfer of the Tiffin Stock. Frazer counterclaimed against the Trustee for a declaratory judgment that Frazer's judicial lien upon the Tiffin Stock defeats any fraudulent transfer claim by the Trustee. Frazer's counterclaim against the Trustee could not arise pre-petition, because the estate that the Trustee seeks to supplement with Frazer's property was not in existence pre-petition. Frazer's counterclaim is compulsory. If the "conversion theory" is applicable, Congress has abridged Frazer's Seventh Amendment right by forcing Frazer to choose between a valid claim for which she utilized as a defense and her Constitutional right to a jury trial.

The right to a jury trial is not waived unless it is voluntary. The 11th Circuit has not decided whether the filing of a counterclaim impliedly waives the fundamental right to a jury trial. The Alabama District Courts have not decided the issue and other lower courts' decisions are in a state of flux, thus the filing of a counterclaim cannot be a knowing and intelligent relinquishment of a constitutional right.

WHEREFORE, Premises Considered, Frazer respectfully requests that this Court withdraw the previous automatic reference of this case to the Bankruptcy Court and transfer the Adversary Proceeding back to District Court.

/s/ David B. Anderson_____
David B. Anderson
Deanna L. Weidner
Attorneys for Starla Frazer

OF COUNSEL:

WALLER, LANSDEN, DORTCH & DAVIS, LLP
AmSouth-Harbert Plaza, Suite 1400
1901 6th Avenue North
Birmingham, AL  35203
Phone:  205-214-6380
Fax:  205-214-8787

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Amended Motion to Withdraw Reference and Transfer to District Court has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Ms. Teresa R. Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ms. Susan S. DePaola
1726 West Second Street, Suite B
Montgomery, AL  36106

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

This the 30th day of May, 2006.

/s/ David B. Anderson_____
Of Counsel