# Appendix 1

# Exhibit E

.0

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **BANKRUPTCY CASE NO.** |
| Stephen Price, | ) | |
| | ) | **02-30767** |
| Debtor. | ) | **CHAPTER 7** |

☐    **Movant is willing to consider an adequate protection agreement.**
The motion will be served with a form for a proposed order agreeable to the moving party, leaving blank, where appropriate, amounts to be arrived at by way of negotiation or determined upon further factual development.

☒    **Movant is not willing to consider an adequate protection agreement.**
Pursuant to LBR 4001-1, the moving party seeks relief from the automatic stay. Unless a response is filed and served upon the moving party within 20 days from the date of service of this motion, the motion may be granted by the court without further notice or hearing.

## MOTION FOR RELIEF FROM AUTOMATIC STAY; AND MEMORANDUM IN SUPPORT THEREOF

Comes Now, Starla Frazer ("Frazer") and pursuant to 11 U.S.C. § 362 and Bankruptcy Rule 4001(a) moves this Court to declare that the automatic stay does not apply to the enforcement of the below-described Divorce Orders; or, in the alternative, to modify the automatic stay to enable Frazer to enforce the Divorce Orders and her judicial and consensual liens against the proceeds of Tiffin Company stock being held in trust by attorney, Thomas Baddley. In support of her motion Frazer asserts the following:

### Jurisdiction

Pursuant to 28 U.S.C. § 1334 and § 156(a)(2)(G) and 11 U.S.C. § 362, this Court has subject matter jurisdiction to determine whether it has subject matter jurisdiction and, if so,

to declare that the stay does not apply, or to grant relief from the automatic stay.

## Factual Background

1.    Frazer and the Debtor, Stephen Price, were married for thirteen years.  In February of 2001, Frazer filed for divorce in DR-2001-126 in the Circuit Court of Montgomery County on February 2, 2001 (the "Divorce Action").  On August 2, 2001, six months after filing the Divorce Action, Frazer and Price agreed upon the terms of the divorce and entered into a Marital Settlement Agreement ("Divorce Agreement") (Exh. A).  On August 10, 2001, Judge John C. Capell entered a final non-appealable order granting Frazer's petition for divorce, incorporating the Divorce Agreement and ordering the parties to comply with the Divorce Agreement (the "Divorce Order") (Exh. B).

2.    One of Price's assets was 250 shares of stock in Tiffin Motors Homes, Inc. (the "Tiffin Stock") (Exh. C).  The Divorce Agreement and Order transfers title to the Tiffin Stock to Frazer.

> "[Frazer] "shall be the absolute owner of the stock in Tiffin Motor Homes, Inc. which is presently titled in the Husband's name.  The Husband shall immediately execute any and all documents which are necessary to convey all right[s], title and interest therein to Wife to be her's absolutely."
>
> (Exh. A at ¶ 19).

> <u>Divesting of Property Rights:</u> Except as otherwise provided for in this "Marital Settlement Agreement", each party shall be divested of and each party waives, renounces and gives up all right, title, and interest in and to the property awarded to the other.

> (Exh. A at ¶ 22).

3.    The Divorce Agreement and Order provided that if the Tiffin Stock were subject to a stock transfer agreement, or if Frazer were otherwise unable to liquidate the Tiffin Stock, Price would pay to Frazer the fair market value of the Tiffin Shares.

> In the event there is a restriction on the transfer or sale of said stock or any limitations on the Wife's ability to liquidate said stock, the Husband shall pay to the Wife the fair market value of said stock as established by generally accepted accounting principles for the valuation of a closely held corporation.

> (Exh. A at ¶ 19).

4.    In the event Price transferred the Tiffin Stock before the entry of the Divorce Order, by vesting title thereto, Price was required to pay to Frazer either the fair market value of the Tiffin Shares or the amount he actually received, "whichever amount is greater." (Exh. A at ¶ 19).    The Divorce Order established a judicial lien upon any amount Price receives for the transfer of the Tiffin Stock.  (Exh. A. at ¶ 19).

5.    The Divorce Agreement also obligated Price to pay "any costs, expenses, legal fees or legal expenses associated with this stock or its transfer." (Exh. A at ¶ 19).

6.    The Tiffin Stock is subject to a Tiffin Motor Homes, Inc. Stock Transfer Agreement ("Stock Transfer Agreement") (Exh. D) which imposes certain conditions upon, but that do not prohibit, the transfer of ownership of the Tiffin Stock.  The Stock Transfer Agreement grants Bob Tiffin and/or Tiffin Motor Homes, Inc. ("Tiffin") the right of first refusal to purchase the shares at the price and upon the terms of any bona fide offer made to the shareholder (Exh. D at ¶ 2); or, if the stock has been transferred, it grants Tiffin a purchase option from the Transferree. (Exh. D at ¶ 6.)

7.    On August 10, 2001, two days after the entry of the Divorce Order, Price agreed to participate in a minority shareholder action against Bob Tiffin, Inc., et al, CV-01-223 in the Circuit Court of Franklin County (the "Shareholders Action").  Frazer was unaware that this had occurred.

8.    In November 2001, the Tiffin Stock was delivered to Frazer.  Frazer has had possession of the Tiffin Stock since November of 2001.

9.    On March 11, 2002, over a year after Frazer filed for divorce from Price, Price commenced this Chapter 7 Bankruptcy Case.  Consistent with the Divorce Order and the

transfer of the Tiffin Stock to Frazer, Price did not include the Tiffin Stock or the Shareholders Action on his schedules.

10. On January 8, 2003, Price received his discharge. As a consequence of Price's discharge, Frazer has been forced to pay approximately $350,000 in joint debts that Price was ordered to pay in the Divorce Order.

11. At some point during the pendency of the bankruptcy case, the Chapter 7 Trustee learned of the Tiffin Stock and Shareholders Action; however, the Trustee took no action to administer any alleged asset of the estate relating thereto and the Chapter 7 case was closed.

12. Frazer also learned of the Shareholders Action, and on April 17, 2003, the Circuit Court approved a modification of the Divorce Order ("Modification Agreement") (Exh. E) to reflect Frazer's interest in the Shareholders Action as the owner of the Tiffin Stock:

> Husband agrees to notify his attorney and/or Wife's attorney as soon as litigation regarding the stock is resolved. Husband understands that any payments to Husband for said stock that is at issue in this matter is not to be used for his personal benefit but instead belongs solely to the Wife and Husband will sign whatever documents are necessary to assist in transferring all stock to Wife upon release of said stock...
>
> (Exh. E, ¶ 13). (Emphasis supplied).

13. On December 1, 2004, Frazer learned of the settlement of the Shareholders Action. The settlement of the Shareholders Action provided for cash payments and installment payments to shareholders.

14. Frazer, through counsel, filed a Motion to enforce the Divorce Order, as modified, so that she could receive her proceeds. The hearing was held in the Circuit Court before the Hon. Mark Anderson on December 21, 2004. The Trustee and her legal counsel appeared and requested a 90 day continuance of the domestic relations case to permit the Trustee to investigate the ownership of the Tiffin Shares. The Circuit Court granted the continuance.

15. The Trustee filed a motion and reopened this Chapter 7 Bankruptcy Case for the purpose of investigating the Tiffin Settlement.

16. On January 5, 2005, Price executed a Tiffin Stock Purchase Agreement and Release and Settlement Agreement concluding the Shareholders Action. In recognition of Frazer's interest in the Tiffin Stock, the settlement documents required the funds to be held in escrow.

17. Tiffin's right of first refusal and option to purchase the Tiffin Stock was satisfied by the settlement of the Shareholders Action, pursuant to which Tiffin actually purchased the Tiffin Stock.

18. Price's counsel in the Shareholders Action, Thomas Baddley ("Baddley"), filed a motion to move the funds from the Circuit Court into a trust account maintained by Baddley. Baddley's motion was granted by the Circuit Court. Baddley presently holds Frazer's funds from the Tiffin Settlement in trust with a claim for attorney's fees.

## MEMORANDUM

### I. FRAZER OWNED THE TIFFIN STOCK PURSUANT TO THE DIVORCE ORDER AND PURSUANT TO ALABAMA LAW THE TIFFIN STOCK IS NOT PROPERTY OF THE ESTATE

#### A. The Divorce Order

A debtor's estate in bankruptcy comprises all property in which the debtor has "legal or equitable interests" at the time the bankruptcy petition is filed. 11 U.S.C. §541(a). Price did not have a legal or equitable interest in the Tiffin Stock on March 11, 2002, the date he filed his petition, first, because Frazer had previously been granted absolute ownership of the Tiffin Stock pursuant to the Divorce Order and Divorce Agreement on August 10, 2001. (Exh. A at ¶ 19). Absent a showing of collusion, once a divorce decree is entered, the transferor of property no longer has an interest in that property. *McGregor v. Grace (In re Grace)*, Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D.Ala. June 22, 2000)(Sawyer, J.); *Moretz v. Moretz*, No. 95-41767, 1996 WL 33401174, at *3 (Bankr. S.D.Ga. June 10, 1996) (if a final

decree of divorce had been entered at the time the bankruptcy petition was filed, then the trustee's strong arm power granted in 11 U.S.C. § 544(a) would not prevail); *Davis vs. Cox*, 356 F.3d 76, 84 (1st Cir. 2004).

In the case of *In re Golden*, Ch. 7 Case No. 00-07110-DHW (Bankr. M.D. Ala. June 18, 2004) (No. 200) the parties filed for divorce prior to the husband's petition for bankruptcy. There, this Court commented that, "[t]he state court, however, had neither granted the divorce nor made any order affecting the distribution of marital assets by the time the bankruptcy petition was filed. Had it done so, this court would not, absent a showing of collusion or other fraud, upset that distribution. The debtor, as of the date of the filing, would no longer have had an interest in the property."

> *Id.; see also In re Marchman*, 263 B.R. 859, 862 (Bankr. M.D. Ala. 2001); Trustees Brief Filed by Von G. Memory at 5, *In re Golden*, Ch. 7 Case No. 00-07110-DHW (Bankr. M.D. Ala. June 18, 2004) (No. 191) ("[The non-debtor spouse] seems to be a clear cut winner if the domestic action was initiated and concluded prior to the bankruptcy").

In the case of *Grace v. Grace*, the deed to the real estate was not executed or recorded until after the husband filed a Chapter 7 case. This Court, however, reasoned that "[i]t was entry of the divorce decree and not execution or recordation of the Clerk's deed which served to transfer title."

8

*Id.* Therefore, "[a]s that interest was never part of the estate, it follows that there was not a transfer of an interest of property of the estate which may be avoided by the Trustee." *Id.*

Similarly, the Divorce Order expressly divested title and declared Frazer to "be the absolute owner" of the Tiffin Stock which was delivered to Frazer. The Divorce Order compelled Price to execute all necessary documents. As in *Grace*, Price's failure to execute a formal assignment of the Tiffin Stock was not material. In *Grace,* this Court explained:

> "[t]hat [the debtor-husband] disobeyed a court order did not vest him with a property right, lost on January 7, 1997, when the divorce decree entered. That the Trustee would attempt to make an argument that the estate has a property interest in the house by virtue of [the debtor-husband's] contemptuous, if not criminal, behavior is patently outrageous."

**B.    The Tiffin Stock Was Effectively Transferred to Frazer Under Alabama Law.**

Ownership of the Tiffin Shares as investment securities transfers upon indorsement and delivery of the certificate. Ala. Code §7-8-304 (c)(1996). As against the transferor, transfer of a security is complete on delivery and the transferee has an enforceable right to have any necessary indorsement supplied. UCC § 8-304 (d) (1994); UCC § 8-307 (1978). Delivery of a certificated security occurs when the purchaser acquires possession of the certificate. Ala. Code §

9

7-8-301 (1996).  Indorsement is proper even if that indorsement is within a separate document. *Id.*

On August 8, 2001, Price executed the Divorce Agreement, which unambiguously transferred all rights in the Tiffin Stock to Frazer. (Exh. A).  In November of 2001, the Tiffin Stock certificate was delivered to Frazer.  "A book transfer speaks only to the issues of record ownership, and not of legal or equitable title and is not a condition precedent to a valid transfer as between the parties to the transaction." *Jones v. Central States Investment Co.,* 654 P.2d 727 (Wyo. 1982); *In the matter of the Succession of Dunham, La.,* 408 So. 2d 888 (1981); Danaher v. C.N. Flagg and Co., Inc. 434 A.2d 944 (1980); *Hall v. American Friends Service Committee, Inc.* 445 P.2d 616 (1968).  The restrictions in the Stock Transfer Agreement have no effect upon the conveyance of the Tiffin Stock to Frazer because the Agreement authorized a transfer subject to an option to purchase the Tiffin Stock, which option has been exercised by Tiffin.  Frazer was the owner of the Tiffin Stock prior to the commencement of this bankruptcy case.

### C.    The Tiffin Stock Is Not Property of the Estate

"Once property ceases being property of the estate, such aspect of the stay is vitiated as to that property." *Johnson v. Johnson,* 51 B.R. 439, 442 (Bankr. E.D. PA 1985). Price did not have a legal or equitable interest in the Tiffin

Stock at the time he filed his petition for bankruptcy, thus the Tiffin Stock is not property of the estate. Therefore, the automatic stay does not prevent the enforcement of the Divorce Order.

## II.  WERE THE TRUSTEE TO COMMENCE AN ACTION TO CHALLENGE THE DIVORCE AGREEMENT OR DIVORCE ORDER, THIS COURT SHOULD ABSTAIN

If there is a question about Price's rights and duties and remedies under the Divorce Agreement or Divorce Orders, this Court should abstain and permit the State Court to enforce the Divorce Orders. Depending upon the cause of action asserted by the Trustee, mandatory abstention could apply. 28 U.S.C. § 1334(c)(2). In the interest of comity this Court should also abstain. 28 U.S.C. §1334(c)(1) (1975).

Determination and enforcement of the terms of a divorce decree are family law matters that are properly determined by a state court, rather than a federal court. *Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir. 1992) (citing *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988); *see also Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978); *see generally Simms v. Simms*, 175 U.S. 162 (1899) ("the subject of domestic relations belongs to state, not federal law.")).

> "Traditionally, the federal courts have been wary of becoming embroiled in family law matters. For that reason, federal courts generally abstain from deciding diversity 'cases involving divorce and alimony, child custody, visitation rights,

establishment of paternity, child support, and **enforcement of separation or divorce decrees** still subject to state court modification."[1]

*Id.* (emphasis added).

The factors evaluated to determine whether discretionary abstention by a bankruptcy court is appropriate include:

> (1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues...; (3) the presence of a related proceeding commenced in state court...; (4) the basis for bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case...; (6) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (7) the burden of the bankruptcy court's docket; (8) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties...; and (9) the presence in the proceeding of non-debtor parties.

*Roddam*, 193 B.R. at 978 n.8 (citing *In re Tucson Estates, Inc.,* 912 F.2d 1162, 1167 (9th cir 1990); *In re Repulic Reader's Serv., Inc.,* 81 B.R. 422, 429 (Bankr. S.D. Tex 1987).

---

[1] The 11th Circuit also explained the legislative intent in the Bankruptcy Code stating: "Nor was it 'the intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts—courts that would in turn, willy-nilly, modify divorce decrees of state courts…'" *Carver*, 954 F.2d at 1579 (quoting *In re Garrison*, 5 B.R. 256, 260 (Bankr. E.D. Mich. 1980)).

First, requiring the Trustee to assert any claim that Price may have to the Tiffin Stock in state court will not adversely impede the administration of Price's bankruptcy estate. Just as in *Roddam*, the only potential impact of the state court interpreting and enforcing the divorce agreement will be that, if Price recovers, his creditors may receive a dividend, where as things stand now, they will not. *See Roddam*, 193 B.R. at 978.

Second, the state law issues predominate over the bankruptcy issues. The Trustee under § 542 or § 544 cannot invalidate the Divorce Order, the enforcement of which, together with divorce agreements are issues of state law. *See In re Thaggard*, 180 B.R. 659, 661 (Bankr. M.D. Ala. 1995). Contract interpretation is a matter of state law. *See Penzoil Co. v. F.E.R.C.*, 645 F. 2d 360 (5th Cir. 1981). Finally, whether an individual is in contempt in a state court is a matter of state law.

Third, the contempt action to enforce the Divorce Order is pending and ready to proceed in the Circuit Court; and fourth, this court's jurisdiction is pursuant to 28 U.S.C. §1334. Fifth, the determination of the parties' rights under the Divorce Agreement is a "related to" matter; and sixth, if Price is awarded a portion of the funds from the Tiffin Settlement in state court, the bankruptcy court can easily

enforce the distribution of the award to Price's creditors. Finally, Frazer is a non-debtor party to the state law action in which Baddley, a non-debtor, is also seeking a fee.

This Court should follow the tradition of allowing family law matters to be litigated in state court and abstain from determining the rights of Price and Frazer under the Divorce Agreement.

**III. TO THE EXTENT THAT PRICE IS DETERMINED TO HAVE ANY INTEREST IN THE TIFFIN STOCK THE STAY IS DUE TO BE LIFTED TO ALLOW FRAZER TO FORECLOSE HER LIENS**

Pursuant to the Divorce Order and Divorce Agreement, Price is indebted to Frazer for attorney's fees, for Price's debts paid by Frazer as joint debtor, and for "any amount [Price] receives for the sale or transfer of said stock." The Divorce Order and Divorce Agreement (executed by Price) grant Frazer a "judicial lien." Frazer maintains possession of the Tiffin Stock certificate.

Price's obligations to Frazer are secured by the Tiffin Stock in which Frazer has a perfected security interest. "For purposes of a pledge, an equitable title is passed to the pledgee by the simple delivery of the stock certificate." *Bank of Guntersville v. U.S. Fidelity & Guaranty Co.*, 75 Sp. 168, 170 (Ala. 1917).

Since Price is indebted to Frazer in a total amount far in excess of the amount to be paid under the settlement of

the Shareholders Action, there is no equity in the Tiffin Stock for the Price estate. In addition, Frazer lacks adequate protection of her interest in the Tiffin Stock and the proceeds. Therefore, cause exists and this Court should lift the automatic stay and permit Frazer to foreclose on the Tiffin Stock.

WHEREFORE, premises considered, Frazer requests this Court to grant the following relief:

a. Declare that the automatic stay does not apply to the enforcement of the Divorce Order.

b. In the alternative, grant relief from the automatic stay to permit Frazer to enforce the Divorce Order and Frazer's consensual and judicial liens in the Circuit Court of Montgomery County, Alabama. Frazer also requests such other and further relief that this Court deems just and appropriate.

/s/ David B. Anderson_____
David B. Anderson
Deanna L. Weidner
Attorneys for Starla Frazer

OF COUNSEL:

WALSTON, WELLS, ANDERSON & BIRCHALL, LLP
One Federal Place
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203
Phone: 205-244-5200
Fax: 205-244-5400

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing Motion for Relief from Automatic Stay has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Mr. Stephen L. Price
P. O. Box 241806
Montgomery, AL  36124

Ms. Teresa R. Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ms. Susan S. DePaola
1726 West Second Street, Suite B
Montgomery, AL  36106

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

This the 19th day of May, 2005.


/s/ David B. Anderson_____
Of Counsel

# Appendix 1

# Exhibit F

.0

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **BANKRUPTCY CASE NO.** |
| STEPHEN PRICE, | ) | |
| | ) | 02-30767 |
| Debtor. | ) | CHAPTER 7 |
| | ) | |
| | ) | |
| SUSAN S. DEPAOLA, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | **ADVERSARY PROCEEDING** |
| v. | ) | **CASE NO.** |
| | ) | |
| STEPHEN L. PRICE, AND STARLA | ) | 05-03063 |
| WATSON PRICE FRAZIER, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS AND FOR OTHER RELIEF

Comes Now, Starla Frazer ("Frazer") and submits the following in support of her Motion to Dismiss and pursuant to 11 U.S.C. § 362(e) moves this Court to set the final hearing to adjudicate her Motion for Relief from Automatic Stay.

### FACTUAL BACKGROUND

1.  Frazer realleges and incorporates herein by reference its Motion For Relief From Automatic Stay.

2.  Frazer and the Debtor, Stephen Price, were married for thirteen years. In February of 2001, Frazer filed for divorce in DR-2001-126 in the Circuit Court of Montgomery County on February 2, 2001 (the "Divorce Action"). On August 2, 2001, six months after filing the Divorce Action, Frazer and

Price agreed upon the terms of the divorce and entered into a Marital Settlement Agreement ("Divorce Agreement") (Motion For Relief From Automatic Stay, Exh. A.)  On August 10, 2001, Judge John C. Capell entered a final non-appealable order granting Frazer's petition for divorce, incorporating the Divorce Agreement and ordering the parties to comply with the Divorce Agreement (the "Divorce Order") (Motion From Relief From Automatic Stay, Exh. B.)

    3.   One of Price's assets was 250 shares of stock in Tiffin Motors Homes, Inc. (the "Tiffin Stock") (Motion For Relief From Automatic Stay, Exh. C.)  The Divorce Agreement and Order transfers title to the Tiffin Stock to Frazer.

> "[Frazer] "shall be the absolute owner of the stock in Tiffin Motor Homes, Inc. which is presently titled in the Husband's name. The Husband shall immediately execute any and all documents which are necessary to convey all right[s], title and interest therein to Wife to be her's absolutely."

(Motion For Relief From Automatic Stay, Exh. A at ¶ 19.)

> Divesting of Property Rights:  Except as otherwise provided for in this "Marital Settlement Agreement", each party shall be divested of and each party waives, renounces and gives up all right, title, and interest in and to the property awarded to the other.

(Motion For Relief From  Automatic Stay, Exh. A at ¶ 22.)

    4.   The Divorce Agreement and Order provided that if the Tiffin Stock were subject to a stock transfer agreement, or

if Frazer were otherwise unable to liquidate the Tiffin Stock, Price would pay to Frazer the fair market value of the Tiffin Shares.

> In the event there is a restriction on the transfer or sale of said stock or any limitations on the Wife's ability to liquidate said stock, the Husband shall pay to the Wife the fair market value of said stock as established by generally accepted accounting principles for the valuation of a closely held corporation.

(Motion For Relief From  Automatic Stay, Exh. A at ¶ 19.)

5.    The Divorce Order established a judicial lien upon any amount Price receives for the transfer of the Tiffin Stock.  (Exh. A. at ¶ 19.)

6.    The Tiffin Stock is subject to a Tiffin Motor Homes, Inc. Stock Transfer Agreement ("Stock Transfer Agreement") (Motion For Relief From Automatic Stay, Exh. D) which imposes certain conditions upon, but that do not prohibit, the transfer of ownership of the Tiffin Stock.  The Stock Transfer Agreement grants Bob Tiffin and/or Tiffin Motor Homes, Inc. ("Tiffin") the right of first refusal to purchase the shares at the price and upon the terms of any bona fide offer made to the shareholder (Motion For Relief From  Automatic Stay, Exh. D at ¶ 2); or, if the stock has been transferred, it grants Tiffin a purchase option from the Transferree. (Motion For Relief From Automatic Stay, Exh. D at ¶ 6.)

7.    On August 10, 2001, two days after the entry of the Divorce Order, Price agreed to participate in a minority shareholder action against Bob Tiffin, Inc., et al, CV-01-223 in the Circuit Court of Franklin County (the "Shareholders Action"). Frazer was unaware that this had occurred.

8.    In November 2001, the Tiffin Stock was delivered to Frazer. Frazer has had possession of the Tiffin Stock since November of 2001.

9.    Any offers by Price to sell the stock to third parties were unauthorized by Frazer, the rightful owner.

10.    As admitted by the trustee, the divorce decree also conveyed all right, title and interest to the Steamboat Springs, Colorado residence (the "Residence") to Frazer.

11.    Frazer, not Price, entered into an agreement to sell the Residence on or about September 20, 2001. Great Plains Transportation Company ("Great Plains") was one of Price's creditors. Frazer personally guaranteed the debt. Price misdirected funds that were assigned to Great Plains by prior contract from a vendor to himself. As a result, Great Plains placed a lien on the Residence that Frazer was forced to resolve. Frazer settled the claim with Great Plains in January of 2004.

12.    On March 11, 2002, over a year after Frazer filed for divorce from Price, Price commenced this Chapter 7

Bankruptcy. (Case No. 02-30767, ECF Doc. 1.) Consistent with the Divorce Order, the transfer of the Tiffin Stock to Frazer and the conveyance of the Residence to Frazer, Price did not include the Tiffin Stock, the Shareholders Action or the Residence on his schedules.

13. On January 8, 2003, Price received his discharge. (Case No. 02-30767, ECF Doc. 54.) As a consequence of Price's discharge, Frazer has been forced to pay approximately $350,000 in joint debts that Price was ordered to pay in the Divorce Order, including Price's debt to Great Plains.

14. The Chapter 7 Trustee was in possession of the divorce decree and settlement agreement during the pendency of Price's bankruptcy proceedings. Price was examined under oath and testified on at least four occasions regarding the assets of the estate.

15. Present counsel for the Trustee represented a creditor in Price's bankruptcy action and investigated the assets of the estate. On July 26, 2002, as representative of a creditor, present Trustee's counsel filed a Motion to Expand the Time to File an Adversary Proceeding in order to further investigate Price's assets. (Case No. 02-30767, ECF Doc. 37.) The Motion specifically references the Residence, which is subject to the Divorce Order.

16.  This Court granted the Motion requesting an extension of time ruling that any Adversary Proceedings shall be filed no later than October 21, 2002.  With the knowledge of the Divorce Action and the transfers by the Divorce Order, neither the creditor, nor the Trustee filed an Adversary Proceeding to set aside the Divorce Order as being collusive.

17.  Frazer, through counsel, filed a Motion to enforce the Divorce Order, as modified, so that she could receive her proceeds from the Tiffin Shareholders Action.  The hearing was held in the Circuit Court before the Hon. Mark Anderson on December 21, 2004.  The Trustee and her legal counsel appeared and requested a 90 day continuance of the domestic relations case to permit the Trustee to investigate the ownership of the Tiffin Shares.  The Circuit Court granted the continuance.

18.  The Trustee filed a motion and reopened this Chapter 7 Bankruptcy Case for the purpose of investigating the Tiffin Settlement.

19.  On January 5, 2005, Price executed a Tiffin Stock Purchase Agreement and Release and Settlement Agreement concluding the Shareholders Action.  In recognition of Frazer's interest in the Tiffin Stock, the settlement documents required the funds to be held in escrow.

20. Tiffin's right of first refusal and option to purchase the Tiffin Stock was satisfied by the settlement of the Shareholders Action, pursuant to which Tiffin actually purchased the Tiffin Stock.

21. Price's counsel in the Shareholders Action, Thomas Baddley ("Baddley"), filed a motion to move the funds from the Circuit Court into a trust account maintained by Baddley. Baddley's motion was granted by the Circuit Court. Baddley presently holds Frazer's funds from the Tiffin Settlement in trust with a claim for attorney's fees.

## THE TRUSTEE'S CLAIMS ARE DUE TO BE DISMISSED PURSUANT TO BANKRUPTCY RULE 7012(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court "is empowered to dismiss an action 'for failure to state a claim upon which relief can be granted.'" *Deerman v. Federal Home Loan Mortgage Co.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997). A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) is due to be granted if a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citations omitted). While a court "must take factual allegations as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff, (internal citations omitted), [a] complaint should be dismissed . . . if it is clear that no relief could be granted

even crediting plaintiffs' [sic] allegations of the facts." *Id.* Moreover, "the court is under no duty to rewrite the plaintiff's complaint to find a claim." *Id.* (citing *Peterson v. Atlanta Housing Authority,* 998 F. 2d 904, 912 (11th Cir. 1993)).

### 1. **Frazer owned the Tiffin stock pursuant to the Divorce Order and pursuant to Alabama law the Tiffin stock is not property of the estate**

A debtor's estate in bankruptcy comprises all property in which the debtor has "legal or equitable interests" at the time the bankruptcy petition is filed.  11 U.S.C. §541(a). Price did not have a legal or equitable interest in the Tiffin Stock or the Residence on March 11, 2002, the date he filed his petition, because Frazer had previously been granted absolute ownership of the Tiffin Stock pursuant to the Divorce Order and Divorce Agreement on August 10, 2001.  (Motion For Relief From Automatic Stay, Exh. A at ¶ 19.)  Absent a showing of collusion, once a divorce decree is entered, the transferor of property no longer has an interest in that property. *McGregor v. Grace (In re Grace)*, Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D.Ala. June 22, 2000)(Sawyer, J.); *Moretz v. Moretz*, No. 95-41767, 1996 WL 33401174, at *3 (Bankr. S.D.Ga. June 10, 1996) ("if a final decree of divorce had been entered at the time the bankruptcy petition was filed, then the trustee's strong arm power granted in 11 U.S.C. § 544(a) would not prevail"); *Davis vs. Cox*, 356 F.3d 76, 84  (1st Cir. 2004).

In the case of *In re Golden*, Ch. 7 Case No. 00-07110-DHW (Bankr. M.D. Ala. June 18, 2004) (No. 200) the parties filed for divorce prior to the husband's petition for bankruptcy. There, this Court commented that,

> "[t]he state court, however, had neither granted the divorce nor made any order affecting the distribution of marital assets by the time the bankruptcy petition was filed. Had it done so, this court would not, absent a showing of collusion or other fraud, upset that distribution. The debtor, as of the date of the filing, would no longer have had an interest in the property."

*Id.; see also In re Marchman*, 263 B.R. 859, 862 (Bankr. M.D. Ala. 2001); Trustees Brief Filed by Von G. Memory at 5, *In re Golden*, Ch. 7 Case No. 00-07110-DHW (Bankr. M.D. Ala. June 18, 2004) (No. 191) ("[The non-debtor spouse] seems to be a clear cut winner if the domestic action was initiated and concluded prior to the bankruptcy").

In the case of *Grace v. Grace*, the deed to the real estate was not executed or recorded until after the husband filed a Chapter 7 case. This Court, however, reasoned that "[i]t was entry of the divorce decree and not execution or recordation of the Clerk's deed which served to transfer title." *Id.* Therefore, "[a]s that interest was never part of the estate, it follows that there was not a transfer of an interest of property of the estate which may be avoided by the Trustee." *Id.*

Similarly, the Divorce Order expressly divested title and declared Frazer to "be the absolute owner" of the Residence

and of the Tiffin Stock which was delivered to Frazer. The alleged "restriction" on transfer was not a restriction but a condition that was satisfied.

### 2.   The Trustee has not Alleged any facts from which collusion could be found.

The Trustee cannot invalidate her Divorce Order through a turnover action under § 541 or § 543. Therefore, no relief can be granted under the Trustee's allegations of the facts. Absent a showing of collusion, once a divorce decree is entered, the transferor of property no longer has an interest in that property. *McGregor v. Grace (In re Grace)*, Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D.Ala. June 22, 2000)(Sawyer, J.) The Trustee has alleged that Frazer withheld information that was available to the Trustee through matters of public record in the Divorce Action of which the Trustee had knowledge. As a matter of law this conduct cannot constitute collusion. Moreover, the fact that Frazer was jointly liable for many of Price's debts prevents any collusion where one spouse bankrupts against the debts while the other spouse retains the assets and, in effect, continues in a marital relationship. The Trustee's demand for a turnover is due to be dismissed as a matter of law.

10

3.    **To the extent that Price is determined to have any interest in the Tiffin Stock or the residence, the stay is due to be lifted to allow Frazer to foreclose her liens.**

Pursuant to the Divorce Order and Divorce Agreement, Price is indebted to Frazer for attorney's fees, for Price's debts paid by Frazer as joint debtor, and for "any amount [Price] receives for the sale or transfer of said stock." The Divorce Order and Divorce Agreement (executed by Price) grant Frazer a "judicial lien." Frazer maintains possession of the Tiffin Stock certificate.

Price's obligations to Frazer are secured by the Tiffin Stock in which Frazer has a perfected security interest. "For purposes of a pledge, an equitable title is passed to the pledgee by the simple delivery of the stock certificate." *Bank of Guntersville v. U.S. Fidelity & Guaranty Co.*, 75 Sp. 168, 170 (Ala. 1917).

Since Price is indebted to Frazer in a total amount far in excess of the amount to be paid under the settlement of the Shareholders Action, there is no equity in the Tiffin Stock or the Residence for the Price estate. In addition, Frazer lacks adequate protection of her interest in the Tiffin Stock and the proceeds. Therefore, accepting the Trustee's allegations as correct, cause exists and this Court should lift

the automatic stay and permit Frazer to foreclose on the Tiffin Stock.

**4.    Any allegation of collusion fails as a matter of law because it is time barred.**

The divorce decree granted all rights, title and interest in the Tiffin Stock and the Residence to Frazer six months before Price filed bankruptcy.    Absent a showing of collusion, the Tiffin Stock and the Residence are not property of the estate and cannot be subject to a turnover action.    11 U.S.C. § 542.    Even if the Trustee had alleged collusion in her Complaint, the Trustee's claim for a fraudulent transfer would be time barred.    11 U.S.C. § 546 (a).

The applicable statute of limitations is set forth at 11 U.S.C. § 546(a), which provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of-
>
> > (1) the later of-
> >
> > > (A) 2 years after the entry of order for relief; or
> > >
> > > (B) 1 year after the appointment or election of the first trustee under section 702...or
> >
> > (2) the time the case is closed or dismissed.

Applying § 546(a) to the facts at issue establishes that the Trustee's complaint was filed after the statute of limitations expired:  (1) the order for relief was entered on

March 11, 2002. (Case No. 02-30767, ECF Doc. 1.) Two years after that date is March 11, 2004; (2) the Trustee was appointed on May 6, 2002. (Case No. 02-30767, ECF Doc. 26.) One year after that date is May 6, 2003. The later of these dates is March 11, 2004. The bankruptcy case was closed on June 21, 2004. Therefore, the pertinent statute of limitations is March 11, 2004.

This complaint was not filed until August 12, 2005, which is over two years after the date the statute of limitations expired.

WHEREFORE, premises considered, Frazer requests this Court to grant the following relief:

     a.   Dismiss the Trustee's Complaint against Frazer as a matter of law.

     b.   Grant Frazer's motion for relief from stay.

In the alternative, abstain from hearing this Adversary Proceeding.

/s/ David B. Anderson_____
David B. Anderson
Deanna L. Weidner
Attorneys for Starla Frazer

OF COUNSEL:

WALSTON, WELLS, ANDERSON & BIRCHALL, LLP
One Federal Place
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203
Phone: 205-244-5200
Fax: 205-244-5400

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion to Dismiss and for Other Relief has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Mr. Stephen L. Price
P. O. Box 241806
Montgomery, AL  36124

Ms. Teresa R. Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ms. Susan S. DePaola
1726 West Second Street, Suite B
Montgomery, AL  36106

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

This the 14th day of September, 2005.


/s/ David B. Anderson_____
Of Counsel

# Appendix 1

# Exhibit G

.0

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 02-30767-WRS |
| STEPHEN L. PRICE, | |
| Debtor. | CHAPTER 7 |

| | |
|---|---|
| SUSAN SHIROCK DEPAOLA, IN HER OFFICIAL CAPACITY OF TRUSTEE FOR THE BANKRUPTCY ESTATE OF STEVEN L. PRICE, | ADVERSARY PROCEEDING |
| Plaintiff, | NO. 05-03063 |
| v. | |
| STEVEN L. PRICE and STARLA WATSON PRICE FRAZER, | |
| Defendant. | |

## RESPONSE TO MOTION TO DISMISS
## OF STARLA FRAZER

COMES NOW, the Plaintiff, Susan S. DePaola, by and through counsel of record, and in response to the Motion to Dismiss of Starla Frazer ("Defendant Frazer") says as follows:

1.    Defendant Frazer filed a Motion to Dismiss pursuant to 12(b)(6) for failure to state a claim from which relief can be granted.

2.    Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 102, 102, 2 Law.Ed. 2d 80 1957 says, "The standard for determination of a F.R.C.P. 12(b)(6) Motion is that a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

3.      "The issue is not whether the Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims". <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 336, 94 S.Ct. 1683, 1686, 40 Law.Ed. 2d 90 (1974).

4.      In taking in consideration a 12(b)(6) motion to dismiss the Court is limited to facts alleged in the complaint as well as official records such as a debtor's bankruptcy case file. <u>Pension Benefit Guar. Corp. v. White Console Ind., Inc.</u>, 998 F.2d 1192, 1196 (3rd Cir. 1993). <u>Watterson v. Paige</u>, 987 F.2d 1, 3 (1st Cir. 1993)

5.      For purposes of Motion to Dismiss, the factual allegation of the complaint are taken as true and are construed favorably to the pleader, <u>Solis v. Ramirez v. U.S. Department of Justice</u>, 758 F.d 1426, 1429 (11th Cir. 1985)."

6.      "Because the standard under the rule governing Motion to dismiss for failure to state a claim imposes such a heavy burden, such motions are rarely granted.  F.R.C.P. 12(b)(6) 28 U.S.C.A. , In re: <u>Jones</u>,279 Bankr. 370, Bankr. MD GA, 2001.

7.      On a motion to dismiss, failure to state claim pursuant to 12(b)(6)<b>,</b> the Court cannot consider evidence outside the four corners of the complaint and, in fact, evidence outside the pleadings cannot be presented for the purposes of deciding a 12(b)(6) motion to dismiss. <u>Vinning v. Segal</u>, 773 So.2d 1243 (Fla. 3rd VCA 2000).   In re: <u>Southeast Banking Corp. Securities and Loan</u>, 147 Fed. Supp. 2d. 1348 SD FL 2001.

8.      Plaintiff has alleged two basic causes of action, first being 11 U.S.C. § 541 and 542 seeking to obtain the turnover of settlement proceeds related to the sale of the Defendants' home in Colorado on or about September 20, 2001. Plaintiffs have alleged that the Debtor had an interest in said  home such that the proceeds {$260,000)  incident to sale may be property of the

estate.  Furthermore,  Plaintiff has alleged that Frazier without notice to the Trustee received and used the balance of said proceeds.

9.      Plaintiff's second cause of action under 11 U.S.C. § 541 and 542 alleges that the Defendants have wrongfully and intentionally withheld information regarding the sale of the "Tiffin" stock and court litigation in the Circuit Court of Franklin County, Alabama.

10.      Plaintiffs have further alleged that both Defendants have wrongfully and intentionally asserted claims and exercised dominion over said property which is the property of the Estate.  Furthermore, Plaintiff has alleged that both Defendants conspired to withhold information and to prevent the Trustee from obtaining information regarding the referenced stock and civil litigation.

11.      In addition the Plaintiff has alleged that the debtor has willfully and fraudulently neglected to discharge his duties under 11 U.S.C. § 521 by failing to disclose and mischaracterize his interest in the said stock and said civil action in Circuit Court of Franklin County, Alabama.

12.      Finally, Plaintiff brings to the Court's attention the Court's previous order on a motion for relief from automatic stay by Defendant Frazer wherein this Court stated "Thus, it appears that as of the date the Petition in Bankruptcy was filed, the Debtor owned at least a nominal interest in the stock .As that interest was not disclosed on the schedules."

13.      Based on the limited information the Court has with regards to the factual allegations and evidence, this Court has already made a determination that the debtor had at least a nominal interest in the Tiffin stock prior to or at the time of filing the bankruptcy petition.

14.   In any event, it cannot be said that the Plaintiff's complaint does not state a cause of action for which relief can be granted, nor that the Plaintiff cannot prevail under any set of circumstances.  Accordingly, Defendants' Motion to Dismiss is due to be denied.

Respectfully submitted October 11, 2005.

Memory, Day & Azar

By: /S/ Von G. Memory
ASB-8137-071V

William D. Azar
ASB-3731-Z59W

Attorneys for Susan
DePaola, Trustee

Memory, Day & Azar
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
vgmemory@memorylegal.com
wdazar@memorylegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☐ facsimile

☐ hand delivery

☐ delivered in open court

on October 11, 2005.

David B. Anderson, Esq.
Walston, Wells, Anderson & Bains, LLP
One Federal Place, Ste 1100
1819 5th Avenue North
Birmingham, AL 35203

Charles N. Parnell, III, Esq.
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Susan S. DePaola, Trustee
1726 West Second Street
Suite B
Montgomery, AL 36106

Teresa R. Jacobs
U.S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Andre M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

/S/ Von G. Memory

# Appendix 1

# Exhibit H

.0

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                                    Case No. 02-30767 - WRS
                                                                         Chapter 7

STEPHEN L. PRICE,

     Debtor.


SUSAN S. DEPAOLA, TRUSTEE


     Plaintiff,                                              Adv. Pro.No. 05-3063 - WRS

v.

STEPHEN L. PRICE AND STARLA
W. PRICE FRAZIER


**<u>MEMORANDUM DECISION</u>**


     This Adversary Proceeding came before the Court for hearing on October 12,

2005, upon the motion of Starla W. Price Frazier ("Frazier") to dismiss for failure to state

a claim.  Defendant Frazier was present by counsel David B. Anderson.  The Trustee and

Plaintiff, Susan S. Depaola, was present by counsel Von G. Memory.  After considering

the briefs and memoranda filed by the parties and hearing the evidence, for the reasons

expressed below, Defendant Frazier's Motion to Dismiss is DENIED.  (Docs. 8, 15).

Also, as explained below, due to the issues yet to be resolved in this Adversary

Proceeding, the Court also finds that Defendant Frazier's Motion for Relief from the Automatic Stay[1] is due to be DENIED.  (Case No. 02-30767, Docs. 71, 73).

## I.  JURISDICTION

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O).

## II.  FINDINGS OF FACT

It should first be noted that many of the facts involved in this Adversary Proceeding are in dispute and have yet to be fully fleshed out.  However, the Court will recite the facts as has been presented to it thus far in this Adversary Proceeding to the extent necessary for purposes of resolving the motions presently at bar.  At the heart of this Adversary Proceeding are two pieces of property that were the subject of a divorce and marital settlement agreement between Stephen L. Price ("Debtor")[2] and Frazier.  Frazier and the Debtor were married for thirteen years.  Frazier filed for divorce in the Circuit Court of Montgomery County on February 2, 2001. (Doc. 8).  The parties entered into a marital settlement agreement on August 2, 2001.  The marital settlement agreement

---

[1] This Court's Order dated July 20, 2005, instructed that the automatic stay shall remain in effect for 30 days from the date of that Order subject to the Trustee filing an Adversary Proceeding.  (Case No. 02-30767, Doc. 78).

[2] The Debtor filed a voluntary Chapter 11 petition in this Court on March 11, 2002. (Case No. 02-30767, Doc. 1).  This case was voluntarily converted to a case under Chapter 7 on April 24, 2002.  (Case No. 02-30767, Doc. 8).  Susan S. DePaola, the Plaintiff, was appointed as interim Trustee by Order of this Court on May 6, 2002. (Doc. 26).

addressed the ownership of two pieces of property that are now at the heart of this dispute: 1) 250 shares of common stock[3] in Tiffin Motor Homes, Inc., acquired by the Debtor under his mother's will; and 2) the conveyance of all right, title, and interest to the parties' jointly owned residence in Steamboat Springs, Colorado.  It is alleged that Frazier was awarded a conditional interest in the stock of Tiffin Motor Homes, Inc., and all right, title and interest in the Steamboat Springs residence.  Incident to the conveyance of the parties' residence per the marital settlement agreement, the property was sold and, according to the Trustee, net proceeds in the amount of $260,000.00 remained after the payment of liens and costs.  (Doc. 1).  Subsequent to the sale of the property a state court action was initiated in Colorado by Great Plains Transportation Services, Inc., which sought to place a lien on the Colorado residence.  This claim was ultimately settled by Frazier.  With respect to the Tiffin Motor Homes stock, the Debtor participated as a plaintiff in a minority shareholder action against Bob Tiffin, filed in 2001 in the Circuit Court of Franklin County, Alabama.  (CV-01-223).  That civil action settled for $19,350,000.00.  The individual distribution reserved for the Debtor is $1,075,000.00.  The Trustee alleges that the Debtor and Frazier have wrongfully and intentionally withheld information regarding the Tiffin Motor Homes stock and the state court litigation involving the residence.  It is alleged that the Debtor failed to list this civil litigation in his bankruptcy schedules.  It is these settlement proceeds from the state court litigation involving the residence and the proceeds from the shareholder action that the Trustee is seeking to recover as property of the Debtor's bankruptcy estate.

---

[3] The Tiffin Motor Homes stock was subject to a stock transfer agreement whereby Bob Tiffin and/or Tiffin Motor Homes, Inc., was granted the right of first refusal to purchase the shares upon terms and price of any bona fide offer.  Furthermore, the agreement provided that in the event of a transfer, Tiffin was granted a purchase option from the transferee.

# III. CONCLUSIONS OF LAW

This Court is compelled to follow the standard set forth by the Eleventh Circuit in considering a motion to dismiss.  For purposes of deciding the present motion to dismiss, a "complaint must be taken as true and read in the light most favorable to the plaintiff." _Peterson v. Atlanta Hous. Auth._, 998 F.2d 904, 912 (11th Cir. 1993) (quoting _Linder v. Portocarrero_, 963 F.2d 332, 334 (11th Cir. 1992)).  Stated another way, "[m]otions to dismiss for failure to state a claim should be denied unless it appears _beyond doubt that the Plaintiff can prove no set of facts in support of its claims_." _Jackam v. Hospital Corp. of America Mideast, Ltd._, 800 F.2d 1577, 1580 (11th Cir. 1986) (emphasis added) (quoting _Bracewell v. Nicholson Air Services, Inc._, 680 F.2d 103 (11th Cir. 1982)).  Furthermore, when reviewing such a motion, all allegations are to be construed as true and read in the light most favorable to the plaintiff. _Id_; _see also_ _Solis-Ramirez v. U.S. Dep't. of Justice_, 758 F.2d 1426, 1429 (11th Cir. 1985).  Any doubts or ambiguities with respect to the sufficiency of the claim must be resolved in favor of the plaintiff.  _Deerman v. Federal Home Mortg. Corp._, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997).

The Trustee here has stated a claim sufficient to overcome a motion to dismiss. The Trustee has asserted a turnover action pursuant to 11 U.S.C. § 542, alleging that both Frazier and the Debtor "have wrongfully and intentionally withheld information" regarding the Tiffin Motor Homes stock and regarding the civil action filed in the Circuit Court of Franklin County.  (Doc. 1).  The Trustee argues that Frazier and the Debtor have failed to disclose information and have given misleading testimony with respect to these two pieces of property, both of which according to the Trustee constitute property the

estate.  Even at this early stage in the proceedings, the Defendant Frazier has vigorously disputed the allegations asserted in the complaint.  However, the underlying merit or ultimate success of the Trustee's claims are issues that the Court is not required to address at this time.  The sole issue the Court must now determine is whether it appears beyond doubt that the Plaintiff can prove no set of facts in support of its claims.  *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1580 (11th Cir. 1986).  Upon review of the allegations made in the complaint and after considering the various arguments of counsel, the Court determines that it cannot conclude that the Plaintiff can prove no set of facts that will support the claims asserted in this Adversary Proceeding.  The Court is cognizant of the fact that it is "under no duty to rewrite plaintiff's complaint to find a claim," nor is the Court in a position to determine the very best theory of recovery for the Plaintiff.  *Deerman v. Federal Home Mortgage Co.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997)(citing *Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 912 (11th Cir. 1993)).  In this case the Trustee has asserted a claim, which is sufficient to survive a motion to dismiss— that the proceeds from the settlement of the civil action involving the Steamboat Springs residence and that the proceeds from the civil action involving the Tiffin Motor Homes stock are property of the estate, and that information thereof has been concealed.

## IV.  CONCLUSION

        For the reasons expressed above, Defendant Frazier's Motion to Dismiss is DENIED. (Doc. 8, 15).  Furthermore, because the issue of whether or not the aforementioned

property constitutes property of the estate remains outstanding and unresolved, Defendant

Frazier's Motion for Relief from the Automatic Stay is DENIED without prejudice,

pending the resolution of this Adversary Proceeding.  (Case No. 02-30767, Docs. 71, 73).

Frazier's motion alternatively requests that the Court abstain from hearing this Adversary

Proceeding.  In light of the aforementioned discussion, such request is DENIED.  Finally,

the Plaintiff's Motion to Strike Matters Outside the Pleadings is DENIED as moot.  (Doc.

16).  The Court will enter an Order consistent with this Memorandum Decision by way of

a separate document.


Done this 14th day of October, 2005.


/s/ William R. Sawyer
United States Bankruptcy Court


c:  David B. Anderson, Attorney for Starla W. Price Frazier
    Charles N. Parnell, III, Attorney for Stephen L. Price
    Von G. Memory, Attorney for Trustee
    Debtor
    Teresa Jacobs, Bankruptcy Administrator

# Appendix 1

# Exhibit I

.0

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| STEPHEN L. PRICE, | ) | |
| | ) | 02-30767 |
| Debtor. | ) | CHAPTER 7 |
| _____ | ) | |
| | ) | |
| SUSAN S. DEPAOLA, TRUSTEE, | ) | |
| | ) | ADVERSARY PROCEEDING NO. |
| Plaintiff, | ) | |
| | ) | 05-03063 |
| vs. | ) | |
| | ) | |
| STEPHEN L. PRICE and STARLA | ) | |
| WATSON PRICE FRAZIER, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS AND MEMORANDUM IN SUPPORT THEREOF

Comes Now, Starla Watson Frazer ("Starla") and for her Motion for Summary Judgment On Statute of Limitations and Memorandum in Support Thereof asserts the following:

### Factual Background

1. Starla and the Debtor, Stephen Price ("Price"), were married for thirteen years. (Memorandum Opinion p. 2.) Starla filed for divorce in DR-2001-126 in the Circuit Court of Montgomery County on February 2, 2001 (the "Divorce Action"). Id. On August 2, 2001, six months after filing the Divorce Action, Starla and Price agreed upon the terms of the divorce and entered into a Marital Settlement Agreement ("Divorce

1030.11

Agreement") (Starla Motion for Relief From Automatic Stay, Exh. A). On August 8, 2001, Judge John C. Capell entered a final non-appealable order granting Starla's petition for divorce, incorporating the Divorce Agreement and ordering the parties to comply with the Divorce Agreement (the "Divorce Order"). (Frazer Motion for Relief From Automatic Stay, Exh. B; Adversary Proceeding for Declaratory Judgment Fed R. Bankr. 7001 (1 and 9) and Demand for Turnover of Property, 11 U.S.C. § 542 ("Trustee AP"), ¶ 6).

2. One of Price's assets was 250 shares of stock in Tiffin Motors Homes, Inc. (the "Tiffin Stock") (Starla Motion for Relief From Automatic Stay, Exh. C). The Divorce Order transfers title to the Tiffin Stock to Starla.

> "[Starla] "shall be the absolute owner of the stock in Tiffin Motor Homes, Inc. which is presently titled in the Husband's name. The Husband shall immediately execute any and all documents which are necessary to convey all right[s], title and interest therein to Wife to be her's absolutely."

(Starla Motion for Relief From Automatic Stay, Exh. A at ¶ 19).

> Divesting of Property Rights: Except as otherwise provided for in this "Marital Settlement Agreement", each party shall be divested of and each party waives, renounces and gives up all right, title, and interest in and to the property awarded to the other.

(Starla Motion for Relief From Automatic Stay Exh. A at ¶ 22).

3.    The Divorce Decree also transferred to Starla all right, title and interest to the residence in Steamboat Springs, Colorado (the "Residence"). (Trustee AP, ¶ 7.)

4.    On March 11, 2002, over a year after Starla filed for divorce, Price filed for Chapter 11 relief and voluntarily converted to Chapter 7 on April 24, 2002. (Trustee AP, ¶ 5.)  Susan DePaola, the Plaintiff and Counterclaim Defendant, was appointed Trustee on May 6, 2002 (the "Trustee").  (Trustee AP ¶ 5.)

5.    On March 11, 2002 Price notified the Trustee of the Divorce Decree (and the transfer of assets to Starla recited therein) in the Debtor's Statement of Financial Affairs.  (Case No. 02-30767, ECF Doc. 2, ¶ 10.)  Price also listed the allegedly concealed lawsuit involving the Residence filed by secured creditor, Great Plains Transportation, in his Statement of Financial Affairs (Case No. 02-30767, ECF Doc. 2, ¶ 4.)

6.    On May 2, 2002, during Price's § 341, First Meeting of Creditors, Price was questioned about potential preferential transfers and equity in the Residence.  (Case No. 02-30767, ECF Doc. 39.)  The Trustee's notes reflect "Equity in home. Preferential transfer". Id.

7.   On July 8, 2002, the Trustee corresponded with William Hibbard, counsel for Great Plains Trucking, Inc. admitting knowledge of the transfers from Price to Starla pursuant to the Divorce Decree, alleging a fraudulent transfer of the Residence and stating that the Trustee will decide whether to pursue any alleged fraudulent transfer by July 19, 2002.   (Trustee correspondence, attached hereto as Exhibit A.) ("As I indicated to you, I have been examining the divorce settlement agreement…").)

8.   Von G. Memory ("Memory"), present counsel for the Trustee, previously represented Trust Bank, one of Price's Chapter 7 creditors.   On July 26, 2002, while representing Trust Bank, Memory filed a Motion to Extend Time to File an Adversary Proceeding for the purpose of examining Price under oath regarding transfer's made pursuant to the Divorce Decree and the assets of Price's estate. (Case No. 02-30767, ECF Doc. 37.)   This Court granted the motion to extend time, but ordered that all interested parties may file a complaint to object to Price's discharge no later than October 21, 2002. (Case No. 02-30767, ECF Doc. 49.)

9.   Price was examined under oath and testified on at least four occasions regarding the assets of his

estate.   (Case No. 02-30767, ECF Doc. 44, Price Motion in Opposition to Trust Bank's Motion to Expand Time to File an Adversary Proceeding.)

10.  On October 22, 2002, the day following the deadline to object to Price's discharge, the Trustee moved to employ Memory as special counsel "for the purpose of recovering possible priorities paid to an attorney and to Starla [Frazer]."   (Case No. 02-30767, ECF Doc. 50, ECF DOC. 51, Response of Bankruptcy Administrator on Trustee's Application to Employ Professional Person.)

11.   The Debtor was discharged on January 8, 2003.   (Case No. 02-30767, ECF Doc. 54.)   The Trustee reviewed the case 11 times between April, 2003 and June, 2004, whereby each time she determined that the case could not be closed because of possible assets.   Finally, on June 15, 2004, the Trustee issued a Final Report of No Distribution.   The Trustee was discharged and the case was closed on June 21, 2004. (Case No. 02-30767, ECF Doc. Report; Doc. 57-59.)

12.  Six Months later, on December 21, 2004, the Trustee moved to re-open Price's Chapter 7 case to investigate Price's transfer of the Tiffin Stock to Starla, despite having knowledge of the transfer for over two years.   (Case No. 02-30767, ECF Doc. 60.

13. Starla filed a Motion for Relief From Automatic Stay on May 19, 2005, which this Court stayed contingent upon the Trustee filing an adversary proceeding within thirty days of this Court's order. (Case No. 02-30767, ECF Doc. 71, 78.)

14. The Trustee filed this Adversary Proceeding on August 12, 2005, seeking: (1) a declaratory judgment that the Tiffin Stock and the Residence are property of Price's Chapter 7 Bankruptcy estate; and (2) turnover of said property pursuant to 11 U.S.C § 542. (ECF Doc. 1.) In order to recover the Residence or the Stock, the Trustee must prove that the Divorce Order was a voidable transfer under § 544 or § 548.

15. Starla filed a Motion to Dismiss on September 14, 2005, which this Court denied. (ECF Doc. 8, 18.)

## INTRODUCTION

The Trustee seeks a declaratory judgment that the Tiffin Stock and the Residence are property of Price's Chapter 7 estate and requests a turnover pursuant to 11 U.S.C. § 542. The state court entered and recorded the Divorce Order pre-petition, effectively transferring the Debtor's interest in the Tiffin Stock and the Residence to Starla. Absent proof of an actionable fraudulent transfer,

the Trustee's claims must be dismissed and the state court's order honored. All fraudulent transfer claims are barred by the applicable statute of limitations, thus there is no genuine issue of material fact and the Trustee's claims should be dismissed as a matter of law.

**ARGUMENT**

**I.    SUMMARY JUDGMENT STANDARD**

The summary judgment standard is stated as follows in Bryant v. Cruises, Inc., 6 F.Supp. 2d 314, 1317 (N.D. Ala. 1998):

> The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986)). In determining whether this burden is met, the court must view the evidence "and all factual references arising from it in the light most favorable to the nonmoving party." Id. (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" Id. (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 242, 106 S.Ct 2505, 91 L.Ed.2d 202). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 575 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

## II.  THE TRUSTEE MUST PROVE A FRAUDULENT TRANSFER TO AVOID THE STATE COURT'S ORDER AND INCLUDE THE TIFFIN STOCK OR THE RESIDENCE AS PROPERTY OF THE ESTATE.

Absent proof of a fraudulent transfer, the Trustee's claims must be dismissed.  A debtor's estate in bankruptcy comprises all property in which the debtor has "legal or equitable interests" at the time the bankruptcy petition is filed.  11 U.S.C. §541(a).  The Divorce Order granted absolute ownership of the Tiffin Stock and the Residence to Starla on August 8, 2001. (Starla Motion for Relief From Automatic Stay, Exh. A, ¶¶ 19, 6.)  As a matter of law, Price did not have a legal or equitable interest in the Tiffin Stock or the Residence on March 11, 2002, the date he filed his petition. (Starla Motion for Relief From Automatic Stay, Exh. A, ¶¶ 19, 6.) Absent a showing of collusion, once a divorce decree is entered, the transferor of property no longer has an interest in that property. McGregor v. Grace (In re Grace), Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D.Ala. June 22,

2000)(Sawyer, J.); <u>Moretz v. Moretz</u>, No. 95-41767, 1996 WL 33401174, at *3 (Bankr. S.D.Ga. June 10, 1996) (explaining that if a final decree of divorce had been entered at the time the bankruptcy petition was filed, then the trustee's strong arm power granted in 11 U.S.C. § 544(a) would not prevail); <u>Davis vs. Cox</u>, 356 F.3d 76, 84 (1st Cir. 2004).

In the case of <u>In re Golden</u>, Ch. 7 Case No. 00-07110-DHW (Bankr. M.D. Ala. June 18, 2004) (No. 200), the parties filed for divorce prior to the husband's petition for bankruptcy. Distinguishing the facts there from those in this case, this Court commented:

> "[t]he state court, however, had neither granted the divorce nor made any order affecting the distribution of marital assets by the time the bankruptcy petition was filed. Had it done so, this court would not, absent a showing of collusion or other fraud, upset that distribution. The debtor, as of the date of the filing, would no longer have had an interest in the property."

<u>Id.</u>; <u>see also</u> <u>In re Marchman</u>, 263 B.R. 859, 862 (Bankr. M.D. Ala. 2001); Trustees Brief Filed by Von G. Memory at 5, <u>In re Golden</u>, Ch. 7 Case No. 00-07110-DHW (Bankr. M.D. Ala. June 18, 2004) (No. 191) ("[The non-debtor spouse] seems to be a clear cut winner if the domestic action was initiated and concluded prior to the bankruptcy").

Price's failure to record the transfer of the Tiffin Stock to Starla is of no consequence. In the case of _Grace v. Grace_, the deed to the real estate was not executed or recorded until after the husband filed a Chapter 7 case. This Court, however, reasoned that "[i]t was entry of the divorce decree and not execution or recordation of the Clerk's deed which served to transfer title." _Id._ Therefore, "[a]s that interest was never part of the estate, it follows that there was not a transfer of an interest of property of the estate which may be avoided by the Trustee." _Id._

Similarly, the Divorce Order expressly divested title and declared Starla to "be the absolute owner" of the Tiffin Stock and the Residence. The Divorce Order compelled Price to execute all necessary documents. As in _Grace_, Price's failure to execute a formal assignment of the Tiffin Stock was not material. In _Grace_, this Court explained:

> "[t]hat [the debtor-husband] disobeyed a court order did not vest him with a property right, lost on January 7, 1997, when the divorce decree entered. That the Trustee would attempt to make an argument that the estate has a property interest in the house by virtue of [the debtor-husband's] contemptuous, if not criminal, behavior is patently outrageous."

The Tiffin Stock and the Residence were transferred to Starla pre-petition, thus they are not part of Price's estate,

absent a viable claim by the Trustee that the Divorce Order was a fraudulent transfer.

## III. ANY FRAUDULENT TRANSFER ACTION IS BARRED BY THE STATUTE OF LIMITATIONS.

A trustee has a duty to diligently investigate assets of the debtor's estate. 11 U.S.C §§ 704(1),(4). The Trustee in this case had ample opportunity to investigate any alleged fraudulent transfer, the Trustee was aware of the transfer of the Residence and the Tiffin Stock, and yet, the Trustee failed to file a complaint within the applicable statute of limitations.

### A. The Trustee's Claims are barred by the Statute of Limitations Set Forth in 11 U.S.C § 546(a)

The Divorce Decree transferred all rights, title and interest in the Tiffin Stock and the Residence to Starla six months before Price filed bankruptcy. (Starla Motion for Relief From Automatic Stay, Exh. A, ¶ 19.) Absent a showing of collusion, the Tiffin Stock and the Residence are not property of the estate and are not subject to a turnover action. 11 U.S.C. § 542. Any allegation of collusion is time barred pursuant to 11 U.S.C § 546(a):

> An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of-
>
> (1) the later of

(A) 2 years after the entry of order for relief; or

(B) 1 year after the appointment or the election of the first trustee under section 702… or

(2) the time the case is closed or dismissed.

Applying § 546(a) to the facts at issue establishes that the Trustee filed her complaint after the statute of limitations passed, thus the Trustee's claims are barred as a matter of law:

(1) The order for relief was entered on March 11, 2002. (Case No. 02-30767, ECF Doc. 1.) Two years after that date is March 11, 2004. (2) The Trustee was appointed on May 6, 2002. (Case No. 02-30767, ECF Doc. 26.) One year after that date is May 6, 2003. (3) The later of these dates is March 11, 2004. (4) The bankruptcy case was closed on June 21, 2004. (Case No. 02-30767, ECF Doc. 59.) The earlier of these two dates is March 11, 2004.

Therefore, the statute of limitations expired on March 11, 2004. The Trustee's Complaint was not filed until August 12, 2005, which is more than one year beyond the date the statute of limitations expired. (ECF Doc. 1.)

**B.    An Action Brought by the Trustee Under State Law is Subject to the Statute of Limitations Set Forth in 11 U.S.C. § 546(a).**

The Bankruptcy Code's statute of limitation period is applicable, even if the Trustee asserts a claim under § 544 and state fraudulent transfer law.  In re Naturally Beautiful Nails, Inc., 243 B.R. 827, 829 (M.D. Fla. 1999).  "As long as the state law statute of limitations has not run before the debtor's filing for bankruptcy, the trustee can bring a fraudulent conveyance action as long as he complies with the provisions of Section 546."  In re Naturally Beautiful Nails, 243 B.R. at 829.

For instance, in Gerardo, the court concluded that a suit brought by the trustee under the Illinois Uniform Fraudulent Transfer Act, which had a four year statute of limitations, was governed by § 546(a), not the state law statute of limitations.  The court explained that the action by the Trustee to avoid the transfer under state law necessarily involves an assertion of the Trustee's rights under 11 U.S.C. § 544(b).  In re Gerardo Leasing, Inc., 173 B.R. 379, 386 (Bankr. N.D. Ill. 1994) citing In re Martin, 142 B.R. 260, 265-66 (Banrk. N.D. Ill. 1992).  "[A]lthough an action under § 544(b) is based on state law, it is still created by the Bankruptcy Code and is not available to a trustee or debtor outside of bankruptcy."  Id.   § 546(a) expressly applies to actions or proceedings under § 544.  11 U.S.C. § 546(a).  Therefore, any

claim by the Trustee to avoid the transfer of the Tiffin Stock and the Residence to Starla under state fraudulent transfer law is, nonetheless, subject to the statute of limitations set forth in 11 U.S.C. § 546(a).

### CONCLUSION

The Divorce Order effectively transferred all of Price's rights and interest in the Tiffin Stock and the Residence pre-petition. Therefore, absent evidence of an actionable fraudulent transfer, they are not, and have not ever been, property of the estate. The statute of limitations for the Trustee's fraudulent transfer claim expired prior to filing of this suit, thus, as a matter of law, the Trustee's claims against Frazer should be dismissed.

Wherefore, premises considered, Starla Watson Frazer respectfully requests that this Court grant summary judgment in her favor and dismiss the Trustee's claims.

/s/ David B. Anderson
David B. Anderson
Deanna L. Weidner
Attorneys for Starla Frazer

OF COUNSEL:

WALLER, LANSDEN, DORTCH & DAVIS, LLC
AmSouth-Harbert Plaza, Suite 1900
1901 6th Avenue North
Birmingham, AL   35203
Phone:  205-214-6380
Fax:  205-214-8787

1030.11                         14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion for Summary Judgment on Statute of Limitations and Memorandum in Support Thereof has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Mr. Stephen L. Price
P. O. Box 241806
Montgomery, AL  36124

Ms. Teresa R. Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ms. Susan S. DePaola
1726 West Second Street, Suite B
Montgomery, AL  36106

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

This the 28th day of December, 2005.

/s/ David B. Anderson
Of Counsel

**Exhibit A**

# SAMFORD & DePAOLA, P.C.

### ATTORNEYS & COUNSELORS AT LAW

William James Samford, Jr.*
Susan Shirock DePaola

\* *Also Admitted in D.C.*

One Commerce Street ⁃ Suite 601
Montgomery, Alabama 36104
Telephone (334) 262-1600
Facsimile (334) 262-1638

July 8, 2002

William Hibbard
PO Box 773959
Steamboat Springs, CO  80477

**RE: STEPHEN PRICE**                    **BR:  02-30767**

Dear Mr. Hibbard,

This letter is written to follow-up on our telephone conversation of today's date regarding the above-captioned matter. As I indicated to you, I have been examining the divorce settlement agreement pursuant to which Mr. Price transferred all of his rights to the marital residence to Starla Price. I am of the opinion that this transfer is due to be set aside pursuant to 11 U.S.C. §548 and/or 547, thus justifying the Estate's claim to a portion of the funds deposited in Court as a result of your Writ of Attachment. As I indicated to you, Mr. Price will be returning to Court on July 19 and I will make a final determination on these issues at that time.

I understand that Mr. Price has not been served and that you have taken no action to serve him by publication or otherwise become entitled to a default judgment against him. At this time, the automatic stay provided by the Bankruptcy Code would prohibit any such action. In the event the parties, including Mrs. Price's attorney and you on behalf of Great Plains, wish to enter into settlement discussions—clearly all of these issues can be resolved—with bankruptcy Court approval.

In the interim, the facts you presented to me do not indicate any reason for the continuing expenses associated with a cash bond. Unless there are applicable defenses that would justify some recovery in the Price's favor over and above the amount deposited in Court, I cannot see that a bond is necessary. I believe that Mrs. Price's interest and the Trustee's interest would be aligned in that regard and in the event her attorney is willing to have the bond released I certainly would not oppose such a decision. I will get back in touch with you after July 19, 2002 to let you know how I intend to proceed.

Very Truly Yours,
SAMFORD & DePAOLA, P.C.

By:    _SUSAN SHIROCK DEPAOLA_

SUSAN SHIROCK DEPAOLA

C: James Oliphant

# Appendix 1

# Exhibit J

.0

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| IN RE: | **CASE NO. 02-30767-WRS** |
| **STEPHEN L. PRICE,** | **CHAPTER 7** |
| Debtor. | |
| **SUSAN S. DEPAOLA, TRUSTEE,** | **ADVERSARY PROCEEDING** |
| Plaintiff, | |
| v. | **NO. 05-03063** |
| **STEPHEN L. PRICE, and STARLA WATSON PRICE FRAZIER,** | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN RESPONSE AND OBJECTION TO THE MOTION FOR**
**SUMMARY JUDGMENT BY STARLA WATSON FRAZIER**

### I. STATEMENT OF THE CASE

This matter is before the Court on a complaint filed by the Chapter 7 Trustee incident to

the Chapter 7 bankruptcy case of Steven L. Price ("Price") and pursuant to 11 U.S.C. §§ 541 and

542 and alleging that certain settlement proceeds obtained or recovered incident to a State of

Colorado court action are property of the estate and should be turned over or delivered to the

Plaintiff. The Plaintiff further avers that Price and Starla Frazier ("Frazier"), jointly and

severally, wrongfully and intentionally withheld information regarding the stock and the state

court litigation and have wrongfully and intentionally asserted claims and exercised dominion

over property of the bankruptcy estate.

The Plaintiff further avers that the Price and Frazier have conspired to withhold

information and to prevent the trustee from obtaining information regarding the referenced stock

and the civil litigation. Moreover, Price has willfully and fraudulently neglected to discharge his duties under 11 U.S.C. § 521 by failing to disclose and mischaracterizing his interest in certain stock and a civil action filed in the Circuit Court of Franklin County, Alabama. Also, Price has given false or misleading testimony regarding his interest in the Tiffin Motor Company stock and the civil action filed in the Circuit Court of Franklin County.

Defendant Frazier filed a motion for summary judgment, December 28, 2005 (ECF Doc. 36).

## II. STATEMENT OF THE FACTS

Price, filed a petition for an order of relief, Chapter 11, March 11, 2002 (ECF Doc. 1). This case was voluntarily converted to a case under Chapter 7, April 24, 2002 (ECF Doc. 18). Susan S. DePaola, the Plaintiff, was appointed interim trustee, May 6, 2002 (ECF Doc. 26).

Before the Chapter 11 petition for relief and the conversion, Frazier was married to Price. This marriage was dissolved with a final decree of divorce dated August 2, 2001, and filed with the Deputy Registrar of the Office of the Circuit Court of Montgomery County, Alabama, August 8, 2001. The instant divorce decree was a marital settlement agreement that provided, in pertinent part, the conveyance of all right, title, and interest to the parties jointly owned residence in Steamboat Springs, Colorado. Also, in the referenced marital settlement agreement, Frazier was awarded a conditional interest in the stock of Tiffin Motor Homes, Inc.

Incident to the conveyance of the parties residence, the Price entered into an agreement to sell the residence and this sale was accomplished on or about September 20, 2001. Although the residence had been listed for $2,800,000.00, it sold for $1,266,000.00. Upon information and belief, it is averred that the first mortgage (deed and trust) for $775,000.00 was paid. Also, it is

believed that expenses relating to the closing have been paid. However, funds totaling $260,000.00, reflecting net proceeds, remained after the payment of liens and costs.

On September 24, 2001, Great Plains Transportation Services, Inc., filed a complaint, and as subsequently amended, with prejudgment relief and, after notice and hearing, the above-referenced funds were ordered placed with the District Court Routt County, Colorado, September 24, 2001.

While counsel for the parties to this litigation were negotiating a division of the proceeds held by the state court in Colorado, Frazier engaged new counsel and reached an agreement, without notice to the Trustee, and, upon information and belief, received and used the balance of proceeds obtained incident to this agreement.

With respect to the Tiffin Motor Company stock, Price apparently purchased or acquired two hundred fifty (250) shares under the will of his mother in 1996. The stock was in a closely held corporation and restricted in alienability. Price, in March 2002, in a written document, offered to sell the stock to Mr. Bob Tiffin for $1,875.00 per share. This offer was subsequently declined. In spite of the referenced offer, the Debtor failed or refused to list the stock in his bankruptcy schedules that were filed March 11, 2002.

Price was also listed or identified as a party plaintiff in civil litigation filed in the Circuit Court of Franklin County, Alabama, in 2001. Upon information and belief, the instant litigation was an attempt by minority shareholders to recover damages and for a declaration of other rights resulting from their stock ownership in Tiffin Motion Company. Price also failed or refused to list this litigation in his bankruptcy disclosures that were filed March 11, 2002. The civil action in the Circuit Court of Franklin County, Alabama has been settled or resolved. However, counsel

for Mr. Thomas E. Baddley, Esq., has suggested that the terms of settlement are confidential and has admonished Plaintiff's counsel not to discuss or allege the terms of settlement.

Notwithstanding, Frazier attempted to asset her rights against the agreed settlement proceeds from the Circuit Court of Montgomery County and the Plaintiff intervened after learning of the recovery anticipated by the Debtor.

Price received a discharge January 10, 2003 (ECF Doc. 55) and the bankruptcy case was closed, June 21, 2004 (ECF Doc. 59). The Trustee filed a motion to reopen the bankruptcy case, December 21, 2004 (ECF Doc. 60) and the case was ordred reopened, February 2, 2005 (ECF Doc. 69).

Frazier filed a motion for relief from the automatic stay, May 19, 2005 (ECF Doc. 71), the Trustee filed an objection, June 8, 2005 (ECF Doc. 73) and this motion was denied in part and granted in part, July 20, 2005 (ECF Doc. 78), pending the filing of the adversary proceeding.

### III. ISSUES AS RAISED BY THE DEFENDANT

1. **Whether The Trustee must Prove a Fraudulent Transfer to Avoid the State Court's Order and Include the Tiffin Stock or the Residence as Property of the Estate.**

2. **Whether any Fraudulent Transfer Action is Barred by the Statute of Limitations.**

### IV. ARGUMENTS AND AUTHORITIES

#### A. Standard Of Review

In bankruptcy courts, summary judgment practice is controlled by Bankruptcy Rule 7056, and therefore governed by Rule 56 of the Federal Rules of Civil Procedure, Fed. R. Bankr. P. Rule 7056; Carey Lumber Co. v. Bell, 615 F.2d 370, 378 (5th Cir. 1980). Under Fed. R. Civ. P. Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. Rule 56(c). A party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact". Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, at 322. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate specific facts showing that there is a genuine issue for trial'". Id. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324 (emphasis added). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", Id. at 322.

After the defendants have properly responded to a proper motion for summary judgment,

o

the court must grant the motion if there is no genuine issue of material fact, and the moving party

is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(c). The substantive law will identify

which facts are material and which are irrelevant. Anderson v. Liberty Lobby. Inc., 477 U.S.

242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party", Id. at 248. "(T)he judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial," Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law", Id. at 251-252; see also, Bill Johnson's

Restaurants Inc. v. N.L.R.B., 461 U.S. 731, 745 n. 11 (1983). However, the nonmoving party

"must do more than show that there is some metaphysical doubt as to the material facts",

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted, Anderson, 477 U.S. at 249 (citations omitted); accord Silence v. Zimmerman, 873 F.2d

256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the

prism of the substantive evidentiary burden," so there must be sufficient evidence on which the

jury could reasonably find for the plaintiff, Anderson, 477 U. S. at 254; Cottle v. Storer Comm.,

Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing

of evidence, and the drawing of inferences from the facts are the function of the jury, and

therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be

drawn in his favor, Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of

every inference but only of every reasonable inference, Brown v. City of Clewiston, 848 F.2d

1534, 1540 n. 12 (11th Cir. 1988).

### B. Generally

The instant complaint was filed as an action under 11 U.S.C. §§ 541 and 542. Cases under §§ 541 and 542 are characterized as turnover proceedings.  Under 11 U.S.C. § 541(a)(1) all property in which a debtor has a legal or equitable interest at the time of bankruptcy comes into the estate.

A turnover proceeding is a "core proceeding" and falls under the jurisdiction of the bankruptcy court, 28 U.S.C. § 157(b)(2)(E); Yaquinto v. Greer, 81 B.R. at 877. For the court to order a turnover, the property sought must be established as estate property. However, before the court could have entered a turnover order, the property in this case must have necessarily been adjudicated as property the Trustee had the authority to use, sell, or lease.

A trustee succeeds to the legal and equitable interests in property the Debtor had on the date the petition was filed, 11 U.S.C. § 323; Jones v. Harrell, 858 F.2d 667, 669 (11th Cir.1988) and the Trustee succeeds to the Debtor's property rights and litigation rights. 11 U.S.C. § 323; Jones, 858 F.2d at 669;

A turnover order, however, does not dispose of any rights of parties claiming an interest in the property beyond the rights of the present possession. In re Julien Co., 128 B.R. 987 (Bankr.W.D.Tenn.1991). Hence, turnover proceedings do not remedy disputed rights to the debtor's property. They determine what is the property of the Debtor's estate, Julien, 128 B.R. at 993. When the property becomes estate property, it may then subsequently be excluded pursuant to bankruptcy law, Goff, 706 F.2d at 578-79.

When a transfer or assignment has been made to a third party, a trustee may, pursuant to the provisions of 11 U.S.C. § 544(2), "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor

holding an unsecured claim that is allowable under section 502 of this title or that is not

allowable only under section 502 (e) of this title. In addition, the trustee in bankruptcy may avoid

the conveyances under Code of Alabama s 8-9-6 (1975)and as provided in Code of Alabama s 6-

2- 33(2) (1975)., In re Hubert L. Bethune, 18 B.R. 418 (N. D. Alabama, 1982).

     Also, pursuant to 11 U.S.C. § 548, (a) (1) a trustee may:

> "avoid any transfer of an interest of the debtor in property, or any
> obligation incurred by the debtor, that was made or incurred on or within
> one year before the date of the filing of the petition, if the debtor
> voluntarily or involuntarily –

> (A) made such transfer or incurred such obligation with actual intent to
> hinder, delay, or defraud any entity to which the debtor was or became, on
> or after the date that such transfer was made or such obligation was
> incurred, indebted

Section 546(a) states that an:

> "action or proceeding under section 544, 545, 547, 548, or 553 of this title
> may not be commenced after the earlier of—

> (1) the later of—

> (A) 2 years after the entry of the order for relief; or

> (B) 1 year after the appointment or election of the first trustee under
> section 702, 1104, 1163, 1202, or 1302 of this title if such appointment
> or such election occurs before the expiration of the period specified in
> subparagraph (A); or

> (2) the time the case is closed or dismissed.

     In addition, with respect to the trustee determining what property actually is property of

the estate and what property the trustee must use the powers of §§ 544 and 548 to recover, the

trustee is obligated to investigate the assets of the Debtor's bankruptcy estate. "The Trustee has

an absolute duty to fully investigate the Debtor's affairs pursuant to 11 U.S.C. § 704, In re Lovitt

, 757 F.2d 1035 (9th Cir.1985). The implication of Lovitt is that the trustee is under a duty to

- 8 -

expeditiously and assiduously investigate the assets of the bankruptcy estate. However, courts have refused to adopt a all-encompassing adoption of Lovitt and have allowed, in some cases, tolling of statutes of limitations, In re Brian McGoldrick, 117 B.R. 554, 558 (C.D. California).

"Statutes of limitation give some certainty to proceedings and discourage stale claims. However, they are not designed to reward conscious fraudulent behavior and devious schemes by safeguarding the acts of those who successfully conceal their wrongful behavior", *id.* A sweeping adoption of the *Lovitt* reasoning to all circumstances is unnecessary, inappropriate and, in the case of willful fraud, completely contrary to the doctrine of equitable tolling espoused by the Supreme Court in *Bailey, id.*

In cases involving fraudulent conduct, the statute of limitations set forth in Section 546(a) may be tolled where the relevant facts have been concealed from the trustee and the trustee has made reasonable and diligent inquiry under the circumstances of the case.

Also, investigation must then be made into whether there was fraudulent conduct on the part of the Defendants. Issues involving a person's state of mind are generally not proper for resolution by summary judgment.

> [f]raud is not generally susceptible to summary judgment. While the Supreme Court has stated that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole," *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), questions involving a person's state of mind "are generally factual issues inappropriate for resolution by summary judgment." *Braxton-Secret v. A.H. Robins Co.,* 769 F.2d 528, 531 (9th Cir.1985). Further, the trial judge must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the evidence on the credibility of witnesses. *Windon Third Oil and Gas v. Federal Deposit Insurance Corporation,* 805 F.2d 342, 346 (10th Cir.1986). Were the Court simply to accept the assertions in the defendant's affidavit, that he committed no fraud, the Court would be improperly weighing the credibility of the witness. Accordingly, the motion for summary judgment will be denied.

Modicon v. Shelnutt, 150 B.R. 436, 438 (ED Ark.1992)

**C. Issue 1 - Whether The Trustee must Prove a Fraudulent Transfer to Avoid the State Court's Order and Include the Tiffin Stock or the Residence as Property of the Estate.**

Price filed a petition for an order of relief one year after Frazier filed her petition for divorce. However, the instant bankruptcy proceeding was filed only seven months after a final decree was entered. In activities incident to this divorce, the Plaintiff avers that Price and Frazier, jointly and severally, wrongfully and intentionally withheld information regarding the stock and the state court litigation and have wrongfully and intentionally asserted claims and exercised dominion over property of the bankruptcy estate. In addition, they have conspired to withhold information and to prevent the trustee from obtaining information regarding the referenced stock and the civil litigation.

It has been alleged, *inter alia*, that Price willfully and fraudulently neglected to discharge his duties under 11 U.S.C. § 521.

A cursory examination of the schedules reveals that Price failed to disclose a stock interest or unliquidated claims in Schedule B; nor did Price seek an exemption (Schedule C) of one or both of these assets in the Statement of Financial Affairs. Price takes great care to list seven lawsuits, but does not list the litigation involving Tiffin Motor Homes, Inc., see item 4 and related exhibit. Also, in the Statement of Financial Affairs (item 10), Price references a conveyance of real estate to his ex-wife, but there is no reference to the Tiffin Stock. The Petition, Schedules, and Statement of Financial Affairs is adopted and incorporated by reference.

Moreover, Price has testified in state court litigation that he offered his shares in Tiffin Motor Homes during the same month he filed his petition for an order of relief. In the same deposition, Price gave no indication of his bankruptcy, or that his ex-wife had any claim to the

- 10 -

referenced shares. The testimony transcript is attached and incorporated by reference (**Exhibit "A"**).

The subterfuge continued when Price convinced his lawyer that Tiffin Motor Homes, Inc., had won the referenced litigation and that there was no value to the stock. See **Exhibit "B"**.

As well, it should be noted in the divorce settlement agreement (**Exhibit "C"**) that if the subject stock was subject to a non-alienation agreement/provision, that Price was only responsible for the value attributed to the shares; see paragraph 19. If the representations in **Exhibit "B"** are correct, the stock was virtually worthless at the time of the instant divorce proceeding. Moreover, the is nothing in the settlement agreement that addresses damages and other matters that relate to the stock but have no relationship to the stock value. Upon information and belief, the state court litigation, either by settlement or agreement, referenced or assessed various amounts to stock value and damages. However, the undersigned counsel has been admonished against disclosing information regarding the settlement.

The Plaintiff would also aver that information regarding the Defendant's behavior, due to the Defendant's concealment and collusion, has gradually, over time, shown a pattern of fraud and misinformation. The Plaintiff reserves the right, with leave of the court to amend the pleadings and allege fraud.

Moreover, this case is distinguishable from <u>In Re: Golden</u>, Chapter 7 Case Number 00-07110-DHW in that in that case, there was no evidence of fraud or collusion between the parties.

### D.  Issue 2 - Whether any Fraudulent Transfer Action is Barred by the Statute of Limitations.

It is undisputed that the Chapter 7 trustee filed  her complaint seeking to set return certain assets, under Sections 541 and 542 on August 12, 2005, more than 3 years, 3 months, and 6 days after her appointment as trustee on May 6, 2002.   A literal interpretation of 544 would preclude

recovery in this case.

However, pursuant to the Alabama Fraudulent Transfer Statute, or that there is an implication of improper behavior on the part of the Defendants, the time limits alleged by the Defendants would either not apply or be tolled until the fraudulent conduct if discovered by the trustee.

The Defendant's motion for summary judgment, neither asserts nor denies that any fraudulent conduct occurred. The motion for summary judgment should be denied for two reasons. First, the Plaintiff has "peeled the onion" on this case since discharge and as time passes, more information is coming to light on a pattern of fraudulent behavior by Price and Frazier and their attempts to conceal property and the transfer of property. Second, as was previously stated, an action that involves fraud is not generally susceptible to summary judgment. Where there are questions involving a person's state of mind and the potential for fraud, these are generally factual issues and are inappropriate for resolution by summary judgment.

The facts of this case, as it has developed, suggests that the Plaintiff be permitted an expanded period of time in which to conduct additional discovery and amend the pleadings accordingly to add counts for fraudulent transfers.   Granting summary judgment on a fraud issue in this particular case prior to an complete discovery period would be inappropriate.

## VI. CONCLUSION

Based upon the foregoing, it is alleged that Price has treated his shares in Tiffin Motor Homes, Inc., as his sole and exclusive property. Moreover, it is further alleged that Price has intentionally and fraudulently failed to disclose his stock interest and entitlement to damages from the bankruptcy court. Therefore, the trustee requests that the instant stock and damages be

treated as estate property and that either Price or Frazier be required to turn over the stock to the

trustee and that Price's lawyer be required to direct the payment of all damages attributable to

Price be turned over to the trustee as well.

Finally, a motion for summary judgment is not appropriate when, under the

circumstances, there is a restrictive and/or non-alienation agreement, and further on the grounds

that the stock must be valued at the time of the divorce decree and damages assessed as of the

settlement that was reached in early 2005.

WHEREFORE, the Defendant respectfully requests this Honorable Court deny the

motion of Defendant, Starla Watson Frazier, for summary judgment.

Respectfully submitted on this the 3rd day of February 2006.

Memory Day & Azar


By: /S/ Von G. Memory
Von G. Memory
ASB-8137-071V

James L. Day
ASB-1256-A55J

Attorneys for Susan S.
DePaola

OF COUNSEL

Memory Day & Azar
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email  vgmemory@memorylegal.com
       jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the

- 13 -

following, by:

    ☑ placing same in the United States Mail, postage prepaid, and properly addressed

    ☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

    ☐ facsimile

    ☐ hand delivery

    ☐ delivered in open court

on February 3, 2006.

David Anderson Esq.
Waller Lansden Dortch & Davis, LLC
AmSouth Harbert Plaza
1901 Sixth Avenue North, STE 1900
Birmingham, AL 35203

                        /S/ Von G. Memory
                        OF COUNSEL

# Appendix 1

# Exhibit K

.0

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 02-30767-WRS
                                                         Chapter 7
STEPHEN L. PRICE,

     Debtor.

SUSAN S. DEPAOLA, TRUSTEE

     Plaintiff,                                       Adv.Pro.No. 05-3063 - WRS

v.

STEPHEN L. PRICE AND STARLA
W. PRICE FRAZIER

## MEMORANDUM DECISION

     This Adversary Proceeding is before the Court upon the Motion for Summary

Judgment on Statute of Limitations, filed by Defendant Starla W. Price Frazier

("Frazier").  (Doc. 36).  Plaintiff, Susan S. DePaola, ("Trustee"), has filed a response

raising the doctrine of equitable tolling as a defense.  (Docs. 45, 46, 47).  Upon

consideration of the briefs submitted by the parties, the Court finds that there are genuine

issues of material fact as to whether the statue of limitations is tolled pursuant to the

doctrine of equitable tolling.  For this reason, Defendant Frazier's motion for summary

judgment is DENIED.  (Doc. 36).

## I.  JURISDICTION

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

## II. FACTS

The Court has previously set forth the facts of this Adversary Proceeding in its Memorandum Decision dated October 14, 2005, denying Defendant Frazier's motion to dismiss, (Docs. 8, 17,) and will briefly restate the facts of this case. This Adversary Proceeding involves two pieces of property that were the subject of a divorce and marital settlement agreement between Stephen L. Price ("Debtor")[1] and Frazier. These two parties were married for a period of thirteen years until Frazier filed for divorce in the Circuit Court of Montgomery County on February 2, 2001. (Doc. 8). The parties entered into a martial settlement agreement on August 2, 2001. Two pieces of property, now at issue in this Adversary Proceeding, were addressed by the marital settlement agreement: (1) 250 shares of common stock in Tiffin Motor Homes, Inc., acquired by the Debtor under his mother's will; and (2) the conveyance of all right, title, and interest to the parties' jointly owned residence in Steamboat Springs, Colorado. It is alleged that Frazier was awarded a conditional interest in the stock of Tiffin Motor Homes, Inc., and all right, title and interest in the Steamboat Springs residence. The residence was eventually sold, with net proceeds in the amount of $260,000.00 remaining after payment

---

[1] The Debtor filed a voluntary Chapter 11 petition in this Court on March 11, 2002. (Case No. 02-30767, Doc. 1). This case was voluntarily converted to a case under Chapter 7 on April 24, 2002. (Case No. 02-30767, Doc. 8). Susan S. DePaola was appointed as interim Trustee by Order of this Court on May 6, 2002. (Case No. 02-30767, Doc. 26). The Debtor received his discharge on January 10, 2003 (Case No. 02-30767, Doc. 55), and this case was closed on June 21, 2004. (Case No. 02-30767, Doc. 59). Upon the Trustee's motion, the Court ordered the case to be reopened on February 2, 2005. (Case No. 02-30767, Doc. 69).

of all liens and costs. (Doc. 1). The Tiffin Motor Homes stock was the subject of a lawsuit in which the Debtor participated as a party plaintiff in a minority shareholder action against Bob Tiffin, in 2001 in the Circuit Court of Franklin County, Alabama. (CV-01-223). The civil action resulted in a settlement of $19,350,000.00, with an individual distribution reserved for the Debtor in the amount of $1,075,000.00.

The Trustee claims that the Debtor and Frazier have conspired to withhold information and to prevent the Trustee from obtaining information regarding the referenced stock and the civil litigation. More specifically, the Trustee alleges that the Debtor failed or refused to list the stock or the litigation involving the stock in his bankruptcy schedules and disclosures filed March 11, 2002. With respect to the residence, the Trustee alleges that incident to the conveyance of the property to Frazier under the marital settlement agreement, Frazier sold the property without notice to the Trustee and received the balance of the proceeds from that transaction. By initiating this Adversary Proceeding the Trustee is now seeking a determination that the settlement proceeds involving the residence are property of the estate, and also that the Tiffin Motor Homes stock is property of the estate as well as the settlement proceeds of the civil action involving that stock. The Court will now turn to the question of whether the Trustee's complaint is time-barred.

### III. DISCUSSION

In her motion for summary judgment Defendant Frazier advances the argument that absent proof of an actionable fraudulent transfer, the Trustee cannot ultimately succeed

on her claims alleging that the Tiffin Stock and the proceeds from the sale of the

residence are property of the Debtor's estate.  Furthermore, Frazier argues that all

fraudulent transfer claims are barred by the applicable statute of limitations, and for that

reason the Trustee's claims are to be dismissed as a matter of law.[2]   The Trustee

contends that the doctrine of equitable tolling applies to toll the statute of limitations.

The law is well settled that where fraud is alleged, statutes of limitations yield to the

doctrine of equitable tolling so as not to reward fraud and deception.  A number of courts

have addressed the doctrine of equitable tolling in the context of tolling deadlines for

discharge revocation pursuant to § 727(e) or avoidance actions pursuant to § 546(a).  See

Fugate v. Pack (In re: Pack), 252 B.R. 701, 708 (Bankr. E.D. Tenn. 2000)(citing White v.

Boston (In re: Boston), 104 B.R. 951, 957 (S.D. Ind. 1989); Dwyer v. Peebles (In re:

Peebles), 224 B.R. 519, 522 (Bankr. D. Mass. 1998); Michaels v. Nat'l Bank of Sussex

County (In re: E-Tron Corp), 141 B.R. 49, 55 (Bankr. D. N.J. 1992); Caughty v. Succa

(In re: Succa), 125 B.R. 168, 174 (Bankr. W.D. Tex. 1991); McGoldrick v. McGoldrick

(In re: McGoldrick), 117 B.R. 554, 559 (Bankr. C.D. Cal. 1990); Martin v. Butcher (In

---

[2] 11 U.S.C. § 546, in relevant part, provides the following:

(a)  An action or proceeding under section 544, 545, 547, or 553 of this title may not be commenced the
earlier of—
    (1)  the later of—
            (A)  2 years after the entry of the order for relief; or
            (B)  1 year after the appointment or election of the first trustee under section
            702, 1104, 1163, 1202, or 1302 of this title if such appointment or such
            election occurs before the expiration of the period specified in
            subparagraph (A); or
    (2)  the time the case is closed.

In the instant case, the order for relief was entered on March 11, 2002.  (Case No. 02-30767, Doc. 1).  Two
years after that date is March 11, 2004.  The Trustee was appointed on May 6, 2002.  (Case No. 02-30767,
26).  The later of these two dates is March 11, 2004.  The bankruptcy case was closed on June 21, 2004
(Case No. 02-30767, Doc. 59).  The earlier of these two dates is March 11, 2004, which means that the
statute of limitations expired on this date.  The Trustee's complaint was not filed until August 12, 2005.
(Doc. 1).

re: Butcher), 72 B.R. 247, 250 (Bankr. E.D. Tenn. 1987). See also Pugh v. Brook (In re: Pugh), 158 F.3d 530, 534-36 (11th Cir. 1998)(concluding that the limitations period prescribed in §§ 546(a) and 549(d) are statutes that are subject to the doctrine of equitable tolling and waiver).

Given the allegations of fraudulent concealment asserted by the Trustee and the case law in this area, the Court finds that it would not be appropriate to grant Frazier's motion for summary judgment. The Court finds disputed facts as to the issue of whether the statute of limitations in this case has actually been tolled. The Court finds that issues regarding the Trustee's knowledge and diligence in pursuing these claims are more appropriately resolved in the context of a trial.

## IV.  CONCLUSION

Finally, for the reasons stated herein, Defendant Frazier's motion for summary judgment is DENIED. (Doc. 36). Additionally, the Trustee has requested more time to conduct additional discovery and to amend the pleadings adding counts for fraudulent transfers. (Doc. 47). The Court will enter an Order consistent with the conclusions reached in this Memorandum Decision and will schedule the Trustee's request for hearing.

Done this 13th day of February, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: David B. Anderson, Attorney for Starla W. Price Frazier
  Von G. Memory, Attorney for Trustee
  Charles N. Parnell, Attorney for Stephen L. Price
  Andre M. Toffel, Attorney for Thomas E. Baddley

# Appendix 1

# Exhibit L

.0

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br><br>**STEPHEN L. PRICE,**<br><br>    **Debtor.** | **CASE NO. 02-30767-WRS**<br><br>**CHAPTER 7** |

| | |
|---|---|
| **SUSAN S. DEPAOLA, TRUSTEE,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**STEPHEN L. PRICE, and STARLA**<br>**WATSON PRICE FRAZIER,**<br><br>    **Defendants.** | **ADVERSARY PROCEEDING**<br>**NO. 05-03063** |

**AMENDED ADVERSARY PROCEEDING FOR DECLARATORY**
**JUDGMENT, FED. R. BANKR. P. R. 7001(1 and 9) and DEMAND FOR**
**TURNOVER OF PROPERTY, 11 U.S.C. §§ 541 and 542**

### PARTIES AND JURISDICTION

1.    The Plaintiff, Susan S. DePaola, was duly appointed as trustee for the bankruptcy estate of Stephen L. Price, May 06, 2002 (ECF Doc. 26).

2.    It is believed that the Defendant, STEVEN L. PRICE, who is over the age of 19 years, is a resident of Montgomery County, Alabama.

3.    It is believed that the Defendant, STARLA W. FRAZIER, who is over the age of 19 years, is a resident of Montgomery County, Alabama.

4.    The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(k). Moreover, this adversary proceeding is commenced pursuant to Rule 7001, Fed. R. Bankr. P. Finally, venue is proper pursuant to 28 U.S.C. § 1409.

## FACTUAL ALLEGATIONS

5. Steven L. Price, ("Debtor"), filed a petition for an order of relief, Chapter 11, March 11, 2002 (ECF Doc. 1). This case was voluntarily converted to Chapter 7, April 24, 2002 (ECF Doc. 18). Susan S. DePaola, the Plaintiff, was appointed interim trustee, May 6, 2002 (ECF Doc. 26).

6. Prior to the original petition for an order of relief and the conversion, Defendant Starla Frazier ("Frazier") was married to the Debtor. This marriage was dissolved with a final decree of divorce dated August 2, 2001, and filed with the Deputy Registrar of the Office of the Circuit Court of Montgomery County, Alabama, August 8, 2001.

7. The instant divorce decree, adopted by reference, a marital settlement agreement that provided, in pertinent part, the conveyance of all right, title, and interest to the parties jointly owned residence in Steamboat Springs, Colorado.

8. Also, in paragraph 21 of the referenced marital settlement agreement, Frazier was awarded a conditional interest in the stock of Tiffin Motor Homes, Inc.

9. Incident to the conveyance of the parties residence referenced in the preceding paragraph, the Debtor entered into an agreement to sell the residence and this sale was accomplished on or about September 20, 2001. Although the residence had been listed for $2,800,000.00, it sold for $1,266,000.00. Upon information and belief, it is averred that the first mortgage (deed and trust) for $775,000.00 was paid. Also, it is believed that expenses relating to the closing have been paid. However, funds totaling $260,000.00, reflecting net proceeds, remained after the payment of liens and costs.

10. On September 24, 2001, Great Plains Transportation Services, Inc., filed a complaint, as amended, with prejudgment relief and, after notice and hearing, the above-referenced funds

were ordered placed with the District Court Routt County, Colorado, September 24, 2001. While counsel for the parties to this litigation were negotiating a division of the proceeds held by the state court in Colorado, Frazier engaged new counsel and reached an agreement, without notice to the Trustee, and, upon information and belief, received and used the balance of proceeds obtained incident to this agreement.

11. Regarding the Tiffin Motor Company stock, the Debtor apparently purchased or acquired two hundred fifty (250) shares under the will of his mother, 1996. The referenced stock was in a closely held corporation and restricted. In March 2002, the Debtor, in a written document, offered to sell the stock to Mr. Bob Tiffin for $1,875.00 per share. This offer was subsequently declined. In spite of the referenced offer, the Debtor failed or refused to list the stock in his bankruptcy documents that were filed March 11, 2002.

12. The Debtor was also listed or identified as a party plaintiff in civil litigation that was filed in the Circuit Court of Franklin County, Alabama, 2001. Upon information and belief, the instant litigation was an attempt by minority shareholders to recover damages and for a declaration of other rights resulting from their stock ownership in Tiffin Motion Company. The Debtor failed or refused to list this litigation in his bankruptcy documents that were filed March 11, 2002.

13. The civil action in the Circuit Court of Franklin County, Alabama has been settled or resolved, however, counsel for Mr. Thomas E. Baddley, Esq., has suggested that the terms of settlement are confidential and has admonished Plaintiff's counsel not to  discuss or allege the terms of settlement.

14. Notwithstanding, Frazier attempted to asset her rights against the agreed settlement proceeds from the Circuit Court of Montgomery County and the Plaintiff intervened after learning of the recovery anticipated by the Debtor.

15. Frazier has filed a motion for relief from the automatic stay and this motion was denied. During the hearing on the motion to obtain relief from the automatic stay, counsel for the Plaintiff referenced this litigation and granted 30 days for the Plaintiff to file same.

## **FIRST CAUSE OF ACTION**
[11 U.S.C. §§ 541 AND 542]

16.  The Plaintiff realleges and adopts paragraphs 1 through 15 above as set out in full herein.

17. The Plaintiff avers that the settlement proceeds obtained or recovered incident to the court action in the State of Colorado, are property of the estate and should be turned over or delivered to the Plaintiff.

WHEREFORE the Plaintiff prays that the Court will enter a judgment determining the amount of money paid to Frazier incident to the state court litigation in Colorado and further finding that the referenced settlement proceeds are estate property and that said property or proceeds must be delivered to the Plaintiff. Finally, the Plaintiff requests such other and different relief to which the Plaintiff may be entitled in these premises.

## **SECOND CAUSE OF ACTION**
[11 U.S.C. §§ 541 AND 542]

18.  The Plaintiff realleges and adopts paragraphs 1 through 15 above as set out in full herein.

19. The Plaintiff avers that the Debtor and Frazier, jointly and severally, have wrongfully and intentionally withheld information regarding the Tiffin Motor Company stock and the state court litigation referenced herein.

20. The Plaintiff avers that the Debtor and Frazier have wrongfully and intentionally asserted claims and exercised dominion over property of the estate.

21. The Plaintiff avers that the Debtor and Frazier have conspired to withhold information and to prevent the trustee from obtaining information regarding the referenced stock and the civil litigation.

22. Moreover, the Debtor has willfully and fraudulently neglected to discharge his duties under 11 U.S.C. § 521 by failing to disclose and mischaracterizing his interest in the Tiffin Motion Company stock and the civil action filed in the Circuit Court of Franklin County.  Also, the Debtor has given false or misleading testimony regarding his interest in the Tiffin Motor Company stock and the civil action filed in the Circuit Court of Franklin County.

### THIRD CAUSE OF ACTION
[11 U.S.C. § 544]

23.  **The Plaintiff realleges and adopts paragraphs 1 through 15 above as set out in full herein.**

24. **The Defendants, Starla Frazier and Steven Price, entered into a plan or design regarding the Tiffin Motor Company stock, and as a result of said plan or design, Steven Price transferred his stock certificates in Tiffin Motor Company to Starla Frazier.**

25. **The above-referenced transfer violated the *Alabama Fraudulent Transfer Act*, Ala. Code  §8-9A-1 (1975) *et seq* and specifically § 8-9A-4.**

26. **The trustee succeeds to the rights and remedies of the above-referenced Alabama Fraudulent Transfer Act under 11 U.S.C. § 544(a).**

- 5 -

WHEREFORE, the Plaintiff prays that this Honorable Court will take jurisdiction of this cause, and upon a final hearing:

1)      Declare the rights, duties, and liabilities of the parties;

2)      Enter an order finding that the Tiffin Motor Company stock referenced herein is property of the estate, 11 U.S.C. § 541;

3)      Enter an order finding that the settlement and recovery of damages, incident to the civil action filed in the Franklin County Circuit Court, are property of the estate, 11 U.S.C. § 541;

4)      **Set aside and avoid the transfer of the stock certificates in Tiffin Motor Company and all rights and entitlements associated therewith.**

5)      Enter an order declaring that Starla Frazier has no claim to the Tiffin Motion Company stock and any of the damages or proceeds recovered from the civil action filed in the Franklin County Circuit Court; and,

6)      Enter such orders, judgments and decrees as may be necessary and proper to give effect to the rights, duties and liabilities of the parties as determined and declared by the Court.

Respectfully submitted March 13, 2006.

Memory & Day

By:     /S/ Von G. Memory
        Von G. Memory
        ASB-8137-071V

        James L. Day
        ASB-1256-A55J

- 6 -

Attorneys for Susan S. DePaola,
Trustee

OF COUNSEL:

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
(334) 834-8000

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☑ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☐ facsimile

☐ hand delivery

☐ delivered in open court

on March 13, 2006.

David Anderson Esq.
Waller Lansden Dortch & Davis, LLC
AmSouth Harbert Plaza
1901 Sixth Avenue North, STE 1900
Birmingham, AL 35203

/S/ Von G. Memory
OF COUNSEL

# Appendix 1

# Exhibit M

.0

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| IN RE: ) | |
| ) | BANKRUPTCY CASE NO. |
| STEPHEN L. PRICE, ) | |
| ) | 02-30767 |
| Debtor. ) | CHAPTER 7 |
| _____ ) | |
| ) | |
| SUSAN S. DEPAOLA, TRUSTEE, ) | |
| ) | ADVERSARY PROCEEDING NO. |
| Plaintiff, ) | |
| ) | 05-03063 |
| vs. ) | |
| ) | |
| STEPHEN L. PRICE and STARLA ) | |
| WATSON PRICE FRAZIER, ) | |
| ) | |
| Defendants. ) | |

## ANSWER, CROSSCLAIM AND COUNTERCLAIM

Starla Frazer ("Starla"), a defendant herein, for her Answer and Crossclaim asserts the following.

## ANSWER

1.  Starla admits the allegations contained in paragraph 1.

2.  Starla admits the allegations contained in paragraph 2.

3.  Starla admits the allegations contained in paragraph 3.

4.  Starla admits the allegations contained in paragraph 4.

689.3

5.    Starla admits the allegations contained in paragraph 5.

6.    Starla admits the allegations contained in paragraph 6.

7.    Starla admits the allegations contained in paragraph 7.

8.    The Divorce Order and incorporated Settlement Agreement speak for themselves. Starla denies any conditions on her ownership of assets transferred by the Divorce Order.

9.    Starla admits the sale of the residence and, in general, the payment of expenses and the existence of net sales proceeds. The precise numbers must be verified.

10.   Starla admits that a creditor seized the proceeds of sale. Starla denies that there were negotiations with Trustee's counsel. Instead, Trustee's counsel was told to commence an action if the Trustee claimed an interest in the residence. The Trustee did nothing.

11.   Starla admits that prior to the entry of the Divorce Order Stephen L. Price ("Price") owned the Tiffin Stock and that after the entry of the Divorce Order Price did not list Starla's Tiffin Stock as being owned by Price. Starla is without information concerning negotiations between Price and Bob Tiffin.

12.   Starla admits the minority shareholder action and that Price did not list the minority shareholder action in his Bankruptcy Schedules or Statement of Affairs.   Starla denies that Price refused to schedule what he did not own.

13.   Starla admits that Tom Baddley, Price's counsel, advised that the settlement of the Tiffin minority shareholder litigation was confidential.

14.   Starla admits that she sought to enforce the Divorce Order and that the Trustee has interviewed and asserted claims.   Starla denies that there was any recovery anticipated by Price.

15.   Starla admits that she sought to enforce the Divorce Order and that the Trustee has interviewed and asserted claims.   Starla denies that there was any recovery anticipated by Price.

16.   Starla repeats and realleges her responses to paragraphs 1 through 15.

17.   Starla denies the allegations of paragraph 17.

18.   Starla repeats and realleges her responses to paragraphs 1 through 15.

19.   Starla denies the allegations contained in paragraphs 19.

20.   Starla denies the allegations contained in paragraphs 20.

21.  Starla  denies  the  allegations  contained  in paragraphs 21.

22.  Starla is without sufficient information to admit or deny the allegations of paragraph 22, except that Starla denies that Price had any interest in the Tiffin Stock after the entry of the Divorce Order.

### FIRST AFFIRMATIVE DEFENSE

The  Trustee's  claims  are  barred  by  the  applicable statute of limitation.

### SECOND AFFIRMATIVE DEFENSE

The  Trustee  is  estopped  by  her  actions  and  by  the actions of her counsel to assert the claims in this Adversary Proceeding.

### THIRD AFFIRMATIVE DEFENSE

The  Trustee  has  waived  the  claims  asserted  in  this Adversary Proceeding.

### FOURTH AFFIRMATIVE DEFENSE

The  Trustee  is  barred  by  the  Divorce  Order  under principles of res judicata or collateral estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Starla  is  entitled  to  offset  or  recoup  amounts  due from Price against any recovery by the Trustee.

## SIXTH AFFIRMATIVE DEFENSE

Starla is entitled to enforce her security interest in the Tiffin Stock prior to any claim of turnover by the Trustee.

## FACTS COMMON TO COUNTERCLAIM AND CROSSCLAIM

1. The Divorce Order awarded the residence and the Tiffin Stock to Starla.

2. Price admits that the residence and Tiffin Stock belonged to Starla after the entry of the Divorce Order.

3. In violation of the Divorce Order, and without the knowledge of Starla, Price hired Tom Baddley to pursue a minority shareholders' action against Tiffin Motor Homes. The majority of the minority shareholder claims were owned by Grady Price, the father of Price, who also retained Tom Baddley to pursue these claims.

4. Grady Price claimed a lien on the Tiffin Stock and attempted to convince Starla to transfer the Tiffin Stock to him. When Starla refused, the Tiffin Stock was delivered to Starla who has had continuous possession of the Tiffin Stock since that time.

5. On January 5, 2005, Price executed a settlement agreement pursuant to which the Tiffin Stock would be sold for cash and an installment obligation.

6. In this Adversary Proceeding the Trustee has alleged that Price's post-petition and post Divorce Order

actions and statements evidence some ownership interest by Price in the Tiffin Stock.

7. The Trustee has alleged that Price committed intentional fraud and has given false testimony in connection with the Bankruptcy Case that comprises evidence of collusion between Starla and Price, on which collusion this Adversary Proceeding is based.

8. Starla has been damaged by the actions of Price.

### COUNTERCLAIM AND CROSSCLAIM

Starla for her Counterclaim against the Trustee and Tom Baddley ("Baddley") and for her Crossclaim against Price asserts the following:

9. Starla incorporates by reference the allegations contained in paragraphs 1 through 9.

10. This Court possesses jurisdiction over this Counterclaim and Crossclaim pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2). It is a claim, plead in the alternative, to determine the extent and priority of liens in the event the Court determines that the Trustee possesses any interest in the Tiffin Stock, which Starla disputes.

11. The Divorce Court granted Starla ownership of and a lien upon the Tiffin Stock before Price retained Baddley to pursue the minority shareholder's claims.

12. Baddley claims an attorney's lien upon the proceeds of sale of the Tiffin Stock pursuant to the Tiffin settlement agreement.

13. The Trustee claims the Tiffin Stock is property of the estate and should be turned over pursuant to 11 U.S.C. § 542.

WHEREFORE, premises considered, Starla requests this Court to enter an order determining that her lien upon the Tiffin Stock is prior to the lien of Tom Baddley and attaches to any interest of the Trustee in the Tiffin Stock.

**CROSSCLAIM**

Starla for her Crossclaim against Price asserts the following:

**COUNT ONE: VIOLATION OF DIVORCE ORDER**

14. Starla repeats and realleges the allegations of paragraphs 1 through 9.

15. Starla is entitled to attorney's fees and damages caused by Price's violations of the Divorce Order.

WHEREFORE, premises considered, Starla demands judgment for expenses, attorney fees incurred herein and such other sanctions as are appropriate for his violations of the Divorce Order.

## COUNT TWO:  INJURIOUS FALSEHOOD

16.  Starla repeats and realleges the allegations contained in paragraphs 1 through 9.

17.  On information and belief, the false statements and other actions taken by Price on a post-petition basis in violation of the Divorce Order were intended to preserve a claim to the Tiffin Stock while Price and his father, Grady Price, attempted to convince Starla to relinquish her interest in the Tiffin Stock.

18.  While the false representations were not made to Starla, they were made to third persons with the specific intent to injure Starla by misrepresenting her interest in the Tiffin Stock.

19.  As a consequence Starla has incurred attorney's fees and other expenses and has suffered mental anguish.

WHEREFORE, premises considered, Starla demands judgment against Price for such compensatory and punitive damages as a jury shall award.  Starla prays for such other and different relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Starla demands a jury trial on all issues and claims in this Adversary Proceeding triable by jury.

Respectfully submitted,

/s/ David B. Anderson
David B. Anderson
Deanna L. Weidner
Attorneys for Starla Frazer

OF COUNSEL:

WALLER, LANSDEN, DORTCH
    & DAVIS, LLC
AmSouth-Harbert Plaza, Suite 1900
1901 6th Avenue North
Birmingham, AL   35203
Phone:  205-214-6380
Fax:   205-214-8787

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Answer and Crossclaim has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Ms. Teresa R. Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ms. Susan S. DePaola
1726 West Second Street, Suite B
Montgomery, AL  36106

689.3                        9

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

This the 8th day of November, 2005.

/s/ David B. Anderson
Of Counsel

689.3                           10

# Appendix 1

# Exhibit N

.0

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                          Case No. 02-30767-WRS
                                               Chapter 7
STEPHEN L. PRICE,

      Debtor

SUSAN SHIROCK DEPAOLA, TRUSTEE,

      Plaintiff                            Adv. Pro. No. 05-3063-WRS

   v.

STEPHEN L. PRICE and STARLA
WATSON PRICE FRAZIER,

      Defendants

### ORDER FOR RESPONSE

On December 13, 2005, Plaintiff Susan S. DePaola filed a motion to strike the demand for jury trial contained in the Counterclaim filed by Starla Watson.  (Doc. 34).

Defendant Starla Watson shall file a response within 30 days from the date of this Order. Her response shall identify all issues which she contends a triable before a jury, with citations as appropriate.  Any other party may file a Reply within 30 days of the filing of Watson's response.

Done this 11th  day of April, 2006.

                 /s/ William R. Sawyer
                 United States Bankruptcy Judge

c: Von G. Memory, Attorney for Plaintiff
   Charles N. Parnell III, Attorney for Stephen Price
   David B. Anderson, Attorney for Starla Frazier
   Andre M. Toffel, Attorney for Thomas E. Baddley

# Appendix 1

# Exhibit O

.0

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| STEPHEN L. PRICE, | ) | |
| | ) | 02-30767 |
| Debtor. | ) | CHAPTER 7 |
| ————————————— | ) | |
| | ) | |
| SUSAN S. DEPAOLA, TRUSTEE, | ) | |
| | ) | ADVERSARY PROCEEDING NO. |
| Plaintiff, | ) | |
| | ) | 05-03063 |
| vs. | ) | |
| | ) | |
| STEPHEN L. PRICE and STARLA | ) | |
| WATSON PRICE FRAZER, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED ANSWER, CROSSCLAIM AND COUNTERCLAIMS

Starla Frazer ("Starla"), a defendant herein, for her Answer, Crossclaim, and Counterclaims asserts the following.

### AMENDED ANSWER

1.   Starla admits the allegations contained in paragraph 1.

2.   Starla admits the allegations contained in paragraph 2.

3.   Starla admits the allegations contained in paragraph 3.

4.   Starla admits the allegations contained in paragraph 4.

2983.2

5.   Starla admits the allegations contained in paragraph 5.

6.   Starla admits the allegations contained in paragraph 6.

7.   Starla admits the allegations contained in paragraph 7.

8.   The Divorce Order and incorporated Settlement Agreement speak for themselves.  Starla denies any conditions on her ownership of assets transferred by the Divorce Order.

9.   Starla admits the sale of the Residence and, in general, the payment of expenses and the existence of net sales proceeds.  The precise numbers must be verified.

10.  Starla admits that a creditor seized the proceeds of sale.  Starla denies that there were negotiations with Trustee's counsel.  Instead, Trustee's counsel was told to commence an action if the Trustee claimed an interest in the Residence.  The Trustee did nothing.

11.  Starla admits that prior to the entry of the Divorce Order Stephen L. Price ("Price") owned the Tiffin Stock and that after the entry of the Divorce Order Price did not list Starla's Tiffin Stock as being owned by Price.  Starla is without information concerning negotiations between Price and Bob Tiffin.

12.  Starla admits the minority shareholder action and that Price did not list the minority shareholder action in his Bankruptcy Schedules or Statement of Affairs.  Starla denies that Price refused to schedule what he did not own.

13.  Starla admits that Tom Baddley of Baddley & Mauro, LLC, Price's counsel, advised that the settlement of the Tiffin minority shareholder litigation was confidential.

14.  Starla admits that she sought to enforce the Divorce Order and that the Trustee has intervened and asserted claims.  Starla denies that there was any recovery anticipated by Price.

15.  Starla admits that she sought to enforce the Divorce Order and that the Trustee has intervened and asserted claims.  Starla denies that there was any recovery anticipated by Price.

16.  Starla repeats and realleges her responses to paragraphs 1 through 15.

17.  Starla denies the allegations of paragraph 17.

18.  Starla repeats and realleges her responses to paragraphs 1 through 17.

19.  Starla denies the allegations contained in paragraph 19.

20.  Starla denies the allegations contained in paragraph 20.

21.  Starla denies the allegations contained in paragraph 21.

22.  Starla is without sufficient information to admit or deny the allegations of paragraph 22, except that Starla denies that Price had any interest in the Tiffin Stock after the entry of the Divorce Order.

23.  Starla repeats and realleges her responses to paragraphs 1 through 22.

24.  Starla admits that she and Price entered into the divorce settlement, which was incorporated by reference into the final Divorce Order and transferred the Tiffin Stock to Starla. Insofar as the Trustee's allegations in paragraph 24 are construed to allege an improper or unlawful "plan or design," Starla denies the same.

25.  Starla denies the allegations contained in paragraph 25.

26.  Starla admits that pursuant to 11 U.S.C. § 544(b), the Trustee would have succeeded to the rights and remedies available to a creditor under the Alabama Fraudulent Transfer Act had the Trustee filed her Complaint prior to the expiration of the statute of limitation contained in 11 U.S.C. § 546(a).

2983.2                          4

### FIRST AFFIRMATIVE DEFENSE

The Trustee's claims are barred by the applicable statute of limitation.

### SECOND AFFIRMATIVE DEFENSE

The Trustee is estopped by her actions and by the actions of her counsel to assert the claims in this Adversary Proceeding.

### THIRD AFFIRMATIVE DEFENSE

The Trustee has waived the claims asserted in this Adversary Proceeding.

### FOURTH AFFIRMATIVE DEFENSE

The Trustee is barred by the Divorce Order under principles of res judicata or collateral estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Starla is entitled to offset or recoup amounts due from Price against any recovery by the Trustee.

### SIXTH AFFIRMATIVE DEFENSE

The Trustee is barred from asserting the claims asserted in this adversary proceeding by the doctrine of laches.

### SEVENTH AFFIRMATIVE DEFENSE

Starla is entitled to enforce her security interest in the Tiffin Stock prior to any claim of turnover by the Trustee.

## FACTS COMMON TO COUNTERCLAIM AND CROSSCLAIM

1.    The Divorce Order awarded the Residence and the Tiffin Stock to Starla; and, in the alternative granted Starla a lien upon the Tiffin Stock.

2.    Price admits that the Residence and Tiffin Stock belonged to Starla after the entry of the Divorce Order.

3.    In violation of the Divorce Order, and without the knowledge of Starla, Price hired Tom Baddley of Baddley & Mauro, LLC, to pursue a minority shareholders' action against Tiffin Motor Homes, Inc.    The majority of the minority shareholder claims were owned by Grady Price, the father of Price, who also retained Tom Baddley of Baddley & Mauro, LLC, to pursue these claims.

4.    Grady Price claimed a lien on the Tiffin Stock and attempted to convince Starla to transfer the Tiffin Stock to him.    When Starla refused, the Tiffin Stock was delivered to Starla (pre-petition) and Starla has had continuous possession of the Tiffin Stock since that time.

5.    On January 5, 2005, Price executed a settlement agreement pursuant to which the Tiffin Stock would be sold for cash and an installment obligation.    Starla is informed and believes that, on a past petition basis, Price executed a lost stock certificate in violation of the Divorce Order.

6.    In this Adversary Proceeding the Trustee has alleged that Price's post-petition and post Divorce Order actions and statements in violation of the Divorce order evidence some ownership interest by Price in the Tiffin Stock.

7.    The Trustee has alleged that Price committed intentional fraud and has given false testimony in connection with the Bankruptcy Case that comprises evidence of collusion between Starla and Price, on which collusion this Adversary Proceeding is based.

8.    Starla has been damaged by the false statements and other actions of Price in violation of the Divorce Order.

## COUNTERCLAIM AND CROSSCLAIM

Starla for her Counterclaim against the Trustee, for her Counterclaim against Tom Baddley and Baddley & Mauro, LLC (collectively referred to herein as "Baddley"), and for her Crossclaim against Price asserts the following:

9.    Starla incorporates by reference the allegations contained in paragraphs 1 through 9.

10.    This Court possesses jurisdiction over the Counterclaims and Crossclaim pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2).    It is a claim against the Trustee and Baddley to determine the extent and priority of liens in the event the Court erroneously determines that the Trustee

possesses any interest in the Tiffin Stock, which Starla disputes.

11. The Divorce Court granted Starla ownership of and a lien upon the Tiffin Stock before Price retained Baddley to pursue the minority shareholder's claims.

12. Baddley claims an attorney's lien upon the proceeds of sale of the Tiffin Stock pursuant to the Tiffin settlement agreement.

13. The Trustee claims the Tiffin Stock is property of the estate and should be turned over pursuant to 11 U.S.C. § 542.

WHEREFORE, premises considered, Starla requests this Court to enter an order determining that her lien upon the Tiffin Stock is prior to the lien of Baddley and attaches to any interest of the Trustee in the Tiffin Stock.

## CROSSCLAIM

Starla for her Crossclaim against Price asserts the following:

## COUNT ONE:  VIOLATION OF DIVORCE ORDER

14. Starla repeats and realleges the allegations of paragraphs 1 through 9.

15.   Starla is entitled to damages for contempt of court and attorney's fees and other damages  caused by Price's violations of the Divorce Order.

WHEREFORE, premises considered, Starla demands judgment for expenses, attorney's fees incurred herein and such other sanctions as are appropriate for his violations of the Divorce Order.

### COUNT TWO:  INJURIOUS FALSEHOOD

16.   Starla repeats and realleges the allegations contained in paragraphs 1 through 9.

17.   On information and belief, the false statements and other actions taken by Price on a post-petition basis in violation of the Divorce Order were intended to preserve a claim to the Tiffin Stock while Price and his father, Grady Price, attempted to convince Starla to relinquish her interest in the Tiffin Stock.

18.   While the false representations were not made to Starla, they were made to third persons with the specific intent to injure Starla by misrepresenting her interest in the Tiffin Stock.

19.   As a consequence Starla has incurred attorney's fees and other expenses and has suffered mental anguish.

2983.2

WHEREFORE, premises considered, Starla demands judgment against Price for such compensatory and punitive damages as a jury shall award. Starla prays for such other and different relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Starla demands a jury trial on all issues and claims in this Adversary Proceeding triable by jury.

Respectfully submitted,

/s/ David B. Anderson
David B. Anderson
Deanna L. Weidner
Attorneys for Starla Frazer

OF COUNSEL:

WALLER, LANSDEN, DORTCH & DAVIS, LLP
AmSouth-Harbert Plaza, Suite 1400
1901 6th Avenue North
Birmingham, AL    35203
Phone:  205-214-6380
Fax:  205-214-8787

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Amended Answer, Crossclaim and Counterclaims has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Ms. Teresa R. Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ms. Susan S. DePaola
1726 West Second Street, Suite B
Montgomery, AL  36106

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

This the 14th day of April, 2006.

                    /s/ David B. Anderson
                    Of Counsel

# Appendix 1

# Exhibit P

.0

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                              )
                                    )    BANKRUPTCY CASE NO.
STEPHEN L. PRICE,                   )
                                    )    02-30767
          Debtor.                   )    CHAPTER 7
_____      )
                                    )
SUSAN S. DEPAOLA, TRUSTEE,          )
                                    )    ADVERSARY PROCEEDING NO.
          Plaintiff,                )
                                    )    05-03063
vs.                                 )
                                    )
STEPHEN L. PRICE and STARLA         )
WATSON PRICE FRAZIER,               )
                                    )
          Defendants.               )

## RESPONSE TO ORDER DATED APRIL 11, 2006

Comes Now, Starla Frazer ("Frazer") and responds to this Court's Order dated April 11, 2006 as follows:

## I.    FRAZER POSSESSES THE ABSOLUTE RIGHT TO A JURY TRIAL

The Seventh Amendment to the United States Constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." "Suits at common law" refers to (1) suits involving legal rights, as opposed to equitable rights; and (2) actions brought to enforce statutory rights that are analogous to common law causes of action ordinarily decided

3423.2

in English law courts in the late 18th century.    <u>Granfinanciera</u>
<u>v. Nordberg</u>, 492 U.S. 33, 42 (1989).

Two questions resolve the issue of whether a
particular claim entails a right to trial by jury: first,
whether the action or its analog was historically tried to
juries at the time the Seventh Amendment was adopted in 1791;
and then, second, whether the relief sought is legal or
equitable in nature." <u>Malone</u>, 245 B.R. at 399 (citing <u>Tull v.</u>
<u>United States</u>, 481 U.S. 412 (1987)).

> In <u>Granfinanciera</u>, the Supreme Court articulated
> a two part test for journaling such distinction:
> "First, we compare the statutory action to
> eighteenth century actions brought in the courts
> of England prior to the merger of the courts of
> law and equity. Second, we examine the remedy
> sought and determine whether it is legal or
> equitable in nature."
>
> > <u>RDM Sports Group, Inc. v. Equitex,</u>
> > <u>Inc.</u>, 260 B.R. 915, 919 (N.D. Ga.
> > 2001) (citing <u>Granfinanciera, S.A.</u>
> > <u>v. Nordberg</u>, 492 U.S. 33, 42
> > (1989) (quoting <u>Tull v. United</u>
> > <u>States</u>, 481 U.S. 412, 417-18
> > (1987)).

The Supreme Court also noted that the "second stage of this
analysis the relief sought is more important than the first."
<u>Granfinanciera</u>, 492 U.S. at 42.

The Trustee has sued Starla alleging a fraudulent
transfer of the Tiffin Stock pursuant to the Alabama Fraudulent
Conveyance Act. For her relief, the Trustee requested that the

Bankruptcy Court avoid the transfer and enter judgment for the Trustee awarding the Tiffin Stock Certificate and the funds in Baddley's escrow account to Price's bankrupcty estate. (Case No. 05-3063, Doc. No. 59, Amended Complaint at pp. 5-6.) Frazer has a right to have a jury adjudicate whether Price's transfer of the Tiffin Stock was fraudulent. Granfinanciera, 492 U.S. 33. Additionally, the Trustee seeks a monetary judgment, which also entitles Frazer to a trial by jury.

> Where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to obtain is possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury.
>
> Granfinanciera, 492 U.S. at 46, n. 5.

It is unnecessary to determine whether Frazer is entitled to a jury trial of Counts I and II. In Counts I and II, the Trustee seeks a declaratory judgment that the Tiffin Stock and the Residence are property of Price's Chapter 7 estate and requests a turnover pursuant to 11 U.S.C. § 542. The state court entered and recorded the Divorce Order pre-petition, effectively transferring the Debtor's interest in the Tiffin Stock and the Residence to Starla. Absent proof of an

actionable fraudulent transfer, the Trustee's claims must be dismissed and the state court's order honored.

> "Absent the express consent of all parties to a particular count, the bankruptcy court may not conduct a jury trial as to that count. Here, the plaintiff clearly is entitled to a jury trial as to at least one count of its complaint, a count for breach of contract, and therefore the adversary proceeding must be tried to a jury." (citations omitted)

> > Wilson v. ENC Mortgage Corp. (In re Wilson), Bankruptcy No. 0016925, Adversary No. 04-1276, 2005 WL 3320594, at *1 (October 17, 2005 Bankr. D. Mass.)

> [T]his court finds that debtors are entitled to a jury trial on these causes of action under the Seventh Amendment, and thus, this proceeding must be transferred to the United States District Court.

> > Walton v. AG Credit, ACA (In re Walton), 158 B.R. 939, 942 (Bankr. N.D. Ohio 1993)

Frazer has demanded a jury trial of all claims and issues in this Adversary Proceeding. As such, withdrawal of the reference is mandatory.

## II.  FRAZER HAS NOT VOLUNTARILY RELINQUISHED A KNOWN RIGHT TO A JURY TRIAL.

It is anticipated that the Trustee will allege that Frazer has magically converted the Trustee's legal claims into equitable claims by filing a compulsory counterclaim against the Estate in Bankruptcy Court and has thereby consented to a trial without a jury.

"[L]egal claims are not magically converted into equitable issues by their presentation to a court of equity," *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be brought there or taken to an administrative tribunal.

<u>Granfinanciera</u>, 492 U.S. at 52.

Congress may only deny a party its constitutional right to a jury trial if the legal cause of action involves public rights. <u>Id.</u> at p. 2796. "If the right to a jury trial depends upon the forum which Congress has chosen, Congress could utterly destroy the right by always providing for administrative resolution." <u>Beard v. Braunstein</u>, 914 F. 2d 434, 440 (3rd Cir. 1990). "Waivers of valid jury demands are not to be lightly inferred, and waivers should be scrutinized with utmost care." <u>Haynes v. W.C. Cave & Co., Inc.</u>, 52 F.3d 928 (11th Cir. 1995).

### A. **Frazer's Counterclaim Is Not Equivalent to a Proof of Claim**

Frazer's counterclaim is not equivalent to a proof of claim. First, one's voluntary assertion of a proof of claim against the Estates is a voluntary submission to the bankruptcy court's jurisdiction. <u>Langenkamp v. Culp</u>, 498 U.S. 1042, 44 (1990). A proof of claim is voluntary, but a compulsory counter-claim is not. A waiver of constitutional rights must be both knowing and voluntary. <u>See</u> <u>e.g.</u>, <u>Parke v. Raley</u>, 506 U.S. 20, 28-29 (1992); <u>In re NDEP Corp.</u>, 203 B.R. 905 (D.Del. 1996); In

<u>re Data Compass Corp.</u>, 92 B.R. 575, 578 (Bankr. E.D.N.Y. 1988).
Congress cannot force Frazer to choose between a valid defense,
which she asserted as a declaratory counterclaim, and her
Constitutional right to a jury trial.

Second, Frazer's counterclaim is not a request for any
portion of the res.   Frazer is not seeking an affirmative
recovery from Price's bankruptcy estate.   Frazer's counterclaim
is comparable to an affirmative defense:

> "It is a claim against the Trustee and Baddley to
> determine the extent and priority liens <u>in the</u>
> <u>event the Court erroneously determines</u> that the
> Trustee possesses any interest in the Tiffin
> Stock, which Starla disputes."
>
> > (Case No. 05-3063, ECF Doc. No.
> > 80, Amended Answer, Crossclaim and
> > Counterclaim, p. 7-8, ¶10.)

The Divorce Order states that if the stock is not
effectively transferred to Frazer, Frazer has a judicial lien
upon the Tiffin Stock and any funds payable to Price from the
Tiffin litigaiton.  (Case No. 02-30767, ECF Doc. No. 71, Frazer
Motion for Relief of Automatic Stay, Exh. A)  It would have been
malpractice for Frazer's attorneys to fail to allege that the
adjudication of the fraudulent transfer is unnecessary because
Frazer has a judicial lien on the Tiffin Stock.

Moreover, Frazer's counter-claim did not trigger the
process of allowance and disallowance of claims.

"[W]hen a proof of claim is filed, the process of allowance and disallowance of claims is triggered. On the contrary, when the trustee or debtor files an action and there is a timely jury demand along with the assertion of counterclaims, then those counterclaims are part of the "the jury process" rather than the process of allowance and disallowance of claims.

<u>In re NDEP Corp.</u>, 203 B.R. 905.

The filing of a proof of claim is a necessary condition for the claims allowance process to begin. <u>In re NDEP Corp.</u>, 203 B.R. 905, 912 (citing <u>Germain v. Connecticut Nat'l Bank</u> 988 F.2d 1323, 1327 (2d Cir. 1993). Congress created the claims allowance process for the purpose of efficient and expedient processing of claims. A party that enjoys the benefit of having a more efficient and expedient adjudication of their claims against an estate has voluntarily and knowingly submitted to bankruptcy jurisdiction and waived its right to a jury trial. <u>See</u> <u>Id.</u> Frazer's adjudication of her compulsory counterclaim (which is defensive in nature) has not been efficient or expedient.

Frazer paid approximately $350,000 of joint debt that the Divorce Order required price to pay. Frazer did not file a proof of claim for those pre-petition debts.

**B.    <u>Frazer's Counterclaim Was Compulsory and Therefore Was Not a Voluntary Relinquishment of Her Right to a Jury Trial.</u>**

It is anticipated that the Trustee will claim that Frazer submitted to the jurisdiction of the bankruptcy court by

filing a compulsory counterclaim against the Trustee, thereby waiving her Seventh Amendment right to a jury trial. Congress may not force a party to choose between waiving a valid claim or defense or waiving her right to a jury trial. Beard v. Braunstein, 914 F. 2d 434, 440 (3rd Cir. 1990). "The better rule… is that defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim." Id. (citing 6 Wright, Miller & Kane, Federal Practice and Procedure Civil 2d § 1416 at 125 (1990)); In re Kaiser Steel Corp. v. Frates, 911 F.2d 380 (10th Cir. 1990). "A finding that a defendant has waived his objections to jurisdiction and venue by interposing a compulsory counterclaim "is something less than fair play." Id. (citing Dragor Shipping Corp. v. Union Tank Car Corp., 378 F. 2d 241, 244 n. 4 (9th Cir. 1967).

Fed. R. Bankr. 7013 provides that F. R. Civ. P. 13 regarding compulsory counterclaims applies in adversary proceedings when a party is sued by a trustee and the claim arose post-petition. The Trustees have sued Starla to recover for Price's allegedly fraudulent transfer of the Tiffin Stock. Frazer counterclaimed against the Trustee for a declaratory judgment that Frazer's judicial lien upon the Tiffin Stock defeats any fraudulent transfer claim by the Trustee. Frazer's counterclaim against the Trustee could not arise pre-petition, because the estate that the Trustee seeks to supplement with

Frazer's property was not in existence pre-petition.  Frazer's counter-claim is compulsory.  If the "conversion theory" is applicable, Congress has abridged Frazer's Seventh Amendment right by forcing Frazer to choose between a valid claim for which she utilized as a defense and her Constitutional right to a jury trial.

The right to a jury trial is not waived unless it is voluntary.  The 11th Circuit has not decided whether the filing of a counterclaim impliedly waives the fundamental right to a jury trial.  The lower courts' decisions are in a state of flux, thus the filing of a counterclaim cannot be a knowing and intelligent relinquishment of a constitutional right.


/s/ David B. Anderson_____
David B. Anderson
Deanna L. Weidner
Attorneys for Starla Frazer

OF COUNSEL:

WALSTON, WELLS, ANDERSON & BIRCHALL, LLP
One Federal Place
1819 5th Avenue North, Suite 1100
Birmingham, AL  35203
Phone:  205-244-5200
Fax:  205-244-5400


## CERTIFICATE OF SERVICE


I hereby certify that a copy of the above and foregoing Response to Order Dated April 11, 2006 has been duly

served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Ms. Teresa R. Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ms. Susan S. DePaola
1726 West Second Street, Suite B
Montgomery, AL  36106

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

This the 11th day of May, 2006.

/s/ David B. Anderson_____
Of Counsel

# Appendix 1

# Exhibit Q

.0

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 03-30337-WRS
                                                   Chapter 7

STEPHEN L. PRICE,

          Debtor.


SUSAN S. DEPAOLA, TRUSTEE,

          Plaintiff,                               Adv. Pro. No. 05-3063-WRS


     v.


STEPHEN L. PRICE and STARLA
WATSON PRICE FRAZIER,

          Defendants.

### SCHEDULING ORDER

        As announced from the bench on October 12, 2005, the following is the schedule of
events in this adversary proceeding:

        Pursuant to Fed. R. Bankr. Proc 7026(a)(1), plaintiff's initial disclosures are due no later
than **November 18, 2005.**   Defendant's disclosures are due no later than **December 5, 2005.**

        Discovery shall be completed no later than **March 31, 2006.**

        Amendments to the pleadings are due no later than **January 15, 2006.**

        Dispositive motions are due to be filed no later than **April 30, 2006.**  Responses to the
motions are due not later than **May 31, 2006.**  Replies are due no later than **June 15, 2006.**

        Prior to trial, all exhibits to be offered at trial shall be marked for identification.  Copies
shall be made available to the court at the trial.

        Done this 20th day of October, 2005.

                                              /s/ William R. Sawyer
                                              United States Bankruptcy Judge

c:  Von G. Memory, Attorney for Plaintiff
    David B. Anderson, Attorney for Defendant Starla Watson Price Frazier
    Charles N. Parnell III, Attorney for Defendant Stephen L. Price

# Appendix 1

# Exhibit R

.0

DschDebt, REOPENED

# U.S. Bankruptcy Court
## Middle District of Alabama (Montgomery)
## Bankruptcy Petition #: 02-30767

*Assigned to:* William R. Sawyer
Chapter 7
Previous chapter 11
Voluntary
No asset

*Date Filed:* 03/11/2002
*Date Converted:* 04/24/2002
*Date Reopened:* 02/02/2005
*Date Discharged:* 01/08/2003

**Stephen L. Price**
P.O. BOX 241806
MONTGOMERY, AL 36124
SSN: xxx-xx-8848
*Debtor*
*AKA*
**Cross Country Freight Lines, Inc.**

represented by  **Charles N. Parnell, III**
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102
334 832-4200
Email: bkrp@parnellcrum.com

**Teresa R Jacobs**
U.S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104
334-954-3900
*Bankruptcy Admin.*

**Susan S. DePaola**
1726 West Second Street
Suite B
Montgomery, AL 36106
334 262-1600
*Trustee*

represented by  **Von G. Memory**
Memory & Day
P. O. Box 4054
469 S.McDonough St.
Montgomery, AL 36101
334-834-8000
Fax : 334-834-8001
Email:
vgmemory@memorylegal.com

| Filing Date | # | Docket Text |
|---|---|---|
| 03/11/2002 | 1 | VOLUNTARY petition under chapter 11 , [RK], ORIGINAL NIBS DOCKET ENTRY #1 Additional attachment(s) added on 12/9/2003 (RK, ). Modified to attach correct image to docket entry on 12/9/2003 (RK, ). (Entered: 03/12/2002) |
| 03/11/2002 | 2 | SCHEDULES and Statement of Affairs , [RK], ORIGINAL NIBS DOCKET ENTRY #2 Additional attachment(s) added on 12/9/2003 (RK, ). (Entered: 03/12/2002) |
| 03/11/2002 | 3 | LIST of Creditors Holding 20 Largest Unsecured Claims , [RK], ORIGINAL |

| | | |
|---|---|---|
| | | NIBS DOCKET ENTRY #3 Additional attachment(s) added on 12/9/2003 (RK, ). (Entered: 03/12/2002) |
| 03/11/2002 | 4 | NOTICE of 341 meeting on 04/23/02 at 02:00 P.M. at Courtroom 2, U.S. Bankruptcy Court, One Court Square,Montgomery, AL, [RK], ORIGINAL NIBS DOCKET ENTRY #4 (Entered: 03/12/2002) |
| 03/11/2002 | 5 | CLAIMS Bar Date due on 06/24/02, [RK], ORIGINAL NIBS DOCKET ENTRY #5 (Entered: 03/12/2002) |
| 03/11/2002 | 6 | ATTORNEY Statement of Compensation , [RK], ORIGINAL NIBS DOCKET ENTRY #6 (Entered: 03/12/2002) |
| 03/20/2002 | 7 | ORDER on Filing Plan & Diclosure Stmt. & Coop. of BA due by 07/09/02, [RK], ORIGINAL NIBS DOCKET ENTRY #7 (Entered: 03/21/2002) |
| 03/22/2002 | 8 | CERTIFICATE of Mailing [Charles N. Parnell] Re: Item # 4, [RK], ORIGINAL NIBS DOCKET ENTRY #8 (Entered: 03/25/2002) |
| 03/26/2002 | 9 | NOTICE of Appearance [Robert J. Solomon For Conseco Finance Servicing Corp.] , [DH], ORIGINAL NIBS DOCKET ENTRY #9 (Entered: 03/26/2002) |
| 03/26/2002 | 10 | MOTION for Relief from Stay [Conseco Finance Servicing Corp.]receipt# 02002863 [Disposed], [DH], ORIGINAL NIBS DOCKET ENTRY #10 (Entered: 03/26/2002) |
| 03/29/2002 | 11 | ORDER Setting Hearing on 04/22/02 at 10:00 A.M. at Courtroom 1, U.S. Bankruptcy Court, One Court Square, Montgomery, AL Re: Item # 10, [RK], ORIGINAL NIBS DOCKET ENTRY #11 (Entered: 04/01/2002) |
| 04/09/2002 | 12 | NOTICE of Appearance And Request For Notice [Robert Grawl, Jr. for Financial Federal Credit, Inc.] , [RK], ORIGINAL NIBS DOCKET ENTRY #12 (Entered: 04/09/2002) |
| 04/15/2002 | 13 | NOTICE of Appearance / Request For Service [Richard M. Haines for The fifth Third Leasing Co.] , [RK], ORIGINAL NIBS DOCKET ENTRY #13 (Entered: 04/15/2002) |
| 04/16/2002 | 14 | MOTION for Examination of Debtor Under 2004 [First Finance, Inc.] [Disposed], [RK], ORIGINAL NIBS DOCKET ENTRY #14 (Entered: 04/16/2002) |
| 04/16/2002 | 15 | NOTICE of Appearance And Request For Notices [Jann J. Rice for First Finance, Inc.] , [RK], ORIGINAL NIBS DOCKET ENTRY #15 (Entered: 04/16/2002) |
| 04/18/2002 | 16 | MOTION for Relief from Stay [Financial Federal Credit, Inc.] Receipt #02003697 [Disposed], [RK], ORIGINAL NIBS DOCKET ENTRY #16 |

| | | |
|---|---|---|
| | | (Entered: 04/19/2002) |
| 04/19/2002 | 17 | MOTION to convert from chapter 11 to chapter 7 [Debtor] [Receipt #02004001] [Disposed], [RK], ORIGINAL NIBS DOCKET ENTRY #17 (Entered: 04/22/2002) |
| 04/24/2002 | 18 | ORDER converting chapter 11 to chapter 7 Re: Item # 17, [RK], ORIGINAL NIBS DOCKET ENTRY #18 (Entered: 04/25/2002) |
| 04/24/2002 | 19 | NOTICE of 341 meeting on 05/31/02 at 01:30 P.M. at Courtroom 2, U.S. Bankruptcy Court, One Court Square,Montgomery, AL [Rescheduled], [RK], ORIGINAL NIBS DOCKET ENTRY #18A (Entered: 05/06/2002) |
| 04/24/2002 | 20 | COMPLAINTS Deadline due on 07/30/02, [RK], ORIGINAL NIBS DOCKET ENTRY #18B (Entered: 05/06/2002) |
| 04/24/2002 | 21 | NOTICE of Discharge Hearing on 05/31/02 at 01:30 P.M. at Courtroom 2, U.S. Bankruptcy Court, One Court Square,Montgomery, AL, [RK], ORIGINAL NIBS DOCKET ENTRY #18C (Entered: 05/06/2002) |
| 04/25/2002 | 24 | MEMORANDUM [Case has converted; motion is granted effective 45 days to allow Chapter 7 trustee to bring objection] Re: Item # 10, [RK], ORIGINAL NIBS DOCKET ENTRY #21 (Entered: 05/01/2002) |
| 04/26/2002 | 22 | ORDER GRANTING Relief from Stay Conditionally Re: Item # 16, [DX], ORIGINAL NIBS DOCKET ENTRY #19 (Entered: 04/26/2002) |
| 04/29/2002 | 23 | ORDER GRANTING MOTION To Withdraw Re: Item # 14, [RK], ORIGINAL NIBS DOCKET ENTRY #20 (Entered: 04/30/2002) |
| 04/30/2002 | 25 | ORDER GRANTING Relief from Stay CONDITIONALLY Re: Item # 10, [RK], ORIGINAL NIBS DOCKET ENTRY #22 (Entered: 05/01/2002) |
| 05/06/2002 | 26 | ORDER Appointing Interim Trustee and Approving Standing Bond , [RK], ORIGINAL NIBS DOCKET ENTRY #23 (Entered: 05/06/2002) |
| 05/07/2002 | 27 | SCHEDULES FILED [For Chapter 7] Receipt #02004283 Re: Item # 18, [RK], ORIGINAL NIBS DOCKET ENTRY #24 (Entered: 05/08/2002) |
| 05/09/2002 | 28 | CERTIFICATE OF SERVICE for 341 Meeting & Discharge Hearing , [RK], ORIGINAL NIBS DOCKET ENTRY #25 (Entered: 05/09/2002) |
| 05/13/2002 | 29 | CERTIFICATE of Service Re: Item # 19, [RK], ORIGINAL NIBS DOCKET ENTRY #26 (Entered: 05/15/2002) |
| 06/04/2002 | 30 | 341 meeting was continued [proceeding memo] Re: Item # 19, [RK], ORIGINAL NIBS DOCKET ENTRY #27 (Entered: 06/05/2002) |
| 06/11/2002 | 31 | 341 meeting was continued [proceeding memo] Re: Item # 19, [RK], |

| | | |
|---|---|---|
| | | ORIGINAL NIBS DOCKET ENTRY #28 (Entered: 06/17/2002) |
| 06/17/2002 | 32 | NOTICE of Appearance /Request For Service [Brian A. Lawton for Case Credit Corp.] , [RK], ORIGINAL NIBS DOCKET ENTRY #29 (Entered: 06/19/2002) |
| 06/24/2002 | 33 | MOTION to Amend Schedules [Schedule D & Schedule F] Receipt #02-5767 , [RK], ORIGINAL NIBS DOCKET ENTRY #30 Modified term date on 2/7/2003 (RK, ). (Entered: 06/25/2002) |
| 07/02/2002 | 34 | TRUSTEE'S ABANDONMENT Of Property , [RK], ORIGINAL NIBS DOCKET ENTRY #31 (Entered: 07/03/2002) |
| 07/03/2002 | 35 | 341 meeting was continued [proceeding memo] Re: Item # 19, [RK], ORIGINAL NIBS DOCKET ENTRY #32 (Entered: 07/03/2002) |
| 07/19/2002 | 39 | Proceeding Memo for *341 Meeting of Creditors - Held* Filed by Susan S. Depaola. (RK, ) Additional attachment(s) added on 7/31/2002 (HB, ). (Entered: 07/28/2002) |
| 07/26/2002 | 36 | Notice of Appearance and Request for Notice by James L. Day Filed by James L. Day on behalf of TrustBank. (Day, James) (Entered: 07/26/2002) |
| 07/26/2002 | 37 | Motion to Extend Time *to File Adversary Proceeding* Filed by James L. Day on behalf of TrustBank. (Day, James) (Entered: 07/26/2002) |
| 07/26/2002 | 38 | Motion for 2004 Examination Filed by James L. Day on behalf of TrustBank. (Day, James) (Entered: 07/26/2002) |
| 08/01/2002 | 42 | Order Setting Hearing On Motion by TrustBank to Extend Time to File Adversary Proceeding, Entered On 8/1/2002 (related document(s)37). Hearing scheduled for 8/13/2002 at 10:00 AM at Courtroom 4D, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (RO, ) (Entered: 08/08/2002) |
| 08/02/2002 | 40 | Order Granting Motion for 2004 Examination (Related Doc # 38) Entered On 8/2/2002. (AWB, ) (Entered: 08/05/2002) |
| 08/02/2002 | 41 | Order Setting Hearing On Motion to Extend Time to File Adversary Proceeding Filed by James L. Day on behalf of TrustBank, Entered On 8/2/2002 (related document(s)37). Hearing scheduled for 8/21/2002 at 10:00 AM at Courtroom 4D, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (RO, ) (Entered: 08/08/2002) |
| 08/06/2002 | 44 | Objection to *Motion To Expand Time To File Complaint and Objection To Request For Rule 2004 Examination by TrustBank.,* Filed by Charles N. Parnell III on behalf of Stephen L. Price (related document(s)37, 38). (DS, ) (Entered: 08/12/2002) |
| | | |

| 08/12/2002 | 43 | Joint Motion to Continue/Reschedule Hearing On *August 13, 2002* Filed by James L. Day on behalf of TrustBank. (Day, James) Modified text on 8/15/2002 (RK, ). (Entered: 08/12/2002) |
|---|---|---|
| 08/13/2002 | 45 | Proceeding Memo (related document(s)37). Hearing continued to 8/20/2002 at 10:00 AM at Courtroom 4D, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (BL, ) (Entered: 08/15/2002) |
| 08/15/2002 | 46 | Order Granting Joint Motion to Continue/Reschedule Hearing On August 13, 2002 (Related Doc # 43) Entered On 8/15/2002. Hearing scheduled for 8/20/2002 at 10:00 AM at Courtroom 4D, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (RO, ) (Entered: 08/16/2002) |
| 09/04/2002 | 47 | Motion for Relief from Stay. Receipt Number CC 02-7914, Fee Amount $75. Filed by Leonard Norman Math on behalf of Trans Lease, Inc.. (Attachments: # 1 Exhibit) (Math, Leonard) Modified RECEIPT on 9/5/2002 (DH, ). (Entered: 09/04/2002) |
| 09/04/2002 | 49 | Order Granting Motion to Extend Time to File a Complaint (extended to 10/21/02) (Related Doc # 37) Entered On 9/4/2002. (RK, ) (Entered: 09/06/2002) |
| 09/05/2002 | 48 | Order Conditionally Granting Motion For Relief From Stay. (Related Doc # 47) Entered On 9/5/2002. Objections due by 9/24/2002. (BL, ) (Entered: 09/05/2002) |
| 10/22/2002 | 50 | Trustee's Application to Employ Professional Person(s) Von G. Memory as Attorney Filed by Susan S. DePaola. Responses due by 11/13/2002. (RK, ) (Entered: 10/22/2002) |
| 10/29/2002 | 51 | Response to *Motion to Employ Professional* (related to motions(s)50) Filed by Teresa R. Jacobs. (Fritz,Sr., Aty for BA, Michael) (Entered: 10/29/2002) |
| 10/31/2002 | 52 | Order Granting Application to Employ Professional Person(s) Von G. Memory (Related Doc # 50) Entered On 10/31/2002. (RK, ) (Entered: 11/01/2002) |
| 12/18/2002 | 53 | Motion *Requesting the Court Enter Discharge* Filed by Charles-CS Parnell on behalf of Parnell & Crum, P.A.. (Parnell, Charles-CS) (Entered: 12/18/2002) |
| 01/08/2003 | 54 | Discharge Order Requested Discharging Debtor (Image of order will be displayed in the Certificate of Service, which will be filed within 5 days) Entered On 1/8/2003. (RK, ) (Entered: 01/08/2003) |
| 01/10/2003 | 55 | Discharge Debtor and BNC Certificate of Service Service Date 01/10/03. (Related Doc # [54]) (Admin.) (Entered: 01/11/2003) |
| 04/23/2003 | | Case Reviewed on 4/23/2003. Case could not be closed because possible |

| | | |
|---|---|---|
| | | asset case. Close Case Follow Up Review due on 5/23/2003. (RK, ) (Entered: 04/23/2003) |
| 05/28/2003 | | Case Reviewed on 5/28/2003. Case could not be closed because Possible Asset Case. Close Case Follow Up Review due on 7/27/2003. (RK, ) (Entered: 05/28/2003) |
| 07/28/2003 | | Case Reviewed on 7/28/2003. Case could not be closed because Possible Asset Case. Close Case Follow Up Review due on 8/27/2003. (RK, ) (Entered: 07/28/2003) |
| 08/28/2003 | | Case Reviewed on 8/28/2003. Case could not be closed because Possible Asset Case. Close Case Follow Up Review due on 9/29/2003. (RK, ) (Entered: 08/28/2003) |
| 09/30/2003 | | Case Reviewed on 9/30/2003. Case could not be closed because Possible Asset Case. Close Case Follow Up Review due on 10/29/2003. (RK, ) (Entered: 09/30/2003) |
| 11/05/2003 | | Case Reviewed on 11/5/2003. Case could not be closed because Possible Asset Case. Close Case Follow Up Review due on 12/5/2003. (RK, ) (Entered: 11/05/2003) |
| 12/09/2003 | | Case Reviewed on 12/9/2003. Case could not be closed because Possible Asset Case (RE: related document(s) Close Case Follow Up Review - Cannot Close Case, Close Case Follow Up Review - Cannot Close Case, Close Case Follow Up Review - Cannot Close Case). Close Case Follow Up Review due on 2/9/2004. (RK, ) (Entered: 12/09/2003) |
| 12/12/2003 | 56 | Notice of Substitution of Counsel and Request for Notice Filed by Brian Giles, Alan J. Statman on behalf of Fifth Third Bank. (DW, ) Modified on 12/18/2003 (DW, ). (Entered: 12/18/2003) |
| 02/10/2004 | | Case Reviewed on 2/10/2004. Case could not be closed because Possible Asset Case (RE: related document(s) Close Case Follow Up Review - Cannot Close Case, ). Close Case Follow Up Review due on 3/11/2004. (RK, ) (Entered: 02/10/2004) |
| 03/12/2004 | | Case Reviewed on 3/12/2004. Case could not be closed because Possible Asset Case (RE: related document(s) Close Case Follow Up Review - Cannot Close Case). Close Case Follow Up Review due on 4/12/2004. (RK, ) (Entered: 03/12/2004) |
| 04/13/2004 | | Case Reviewed on 4/13/2004. Case could not be closed because Possible Asset Case (RE: related document(s) Close Case Follow Up Review - Cannot Close Case). Close Case Follow Up Review due on 6/13/2004. (RK, ) (Entered: 04/13/2004) |
| 06/14/2004 | | Case Reviewed on 6/14/04. Case could not be closed because Possible Asset Case (RE: related document(s) Close Case Follow Up Review - Cannot |

| | | |
|---|---|---|
| | | Close Case). Close Case Follow Up Review due on 7/14/2004. (HN, ) (Entered: 06/14/2004) |
| 06/15/2004 | 57 | Trustee's Final Report of No Distribution: The trustee states upon present information and belief there is no property available for distribution to creditors from the estate. The trustee requests this report be approved; the estate be closed; the trustee be discharged from office, and the bond of the trustee be canceled concurrent with the surety or sureties on the bond being released from further liability on said bond. (Non-Image Entry) Filed by Trustee Susan S. DePaola (RE: related document(s)4 Notice (View Image for Details.)). (DePaola, Susan-HP) (Entered: 06/15/2004) |
| 06/21/2004 | 58 | Order Discharging Trustee, Releasing Bond Liability and Closing Case. The estate of the above named Debtor having been fully administered, it is ORDERED that: The accounts and report of the Trustee are hereby filed;The Trustee be and is hereby discharged as trustee of the estate of the above named debtor and the bond is cancelled;and the Chapter 7 case of the above named Debtor is closed. U.S. Bankruptcy Judge (Non-Image Entry). (DW, ) (Entered: 06/21/2004) |
| 06/21/2004 | 59 | Bankruptcy Case Closed (Non-Image Entry). (DW, ) (Entered: 06/21/2004) |
| 12/21/2004 | 60 | Trustee's Motion to Reopen Chapter 7 Case. Fee Amount $155. Filed by Von G. Memory on behalf of Susan S. DePaola. (Memory, Von) (Entered: 12/21/2004) |
| 12/21/2004 | 61 | Receipt of Motion to Reopen Chapter 7 Case(02-30767) [motion,mreop7] ( 155.00) filing fee. Receipt number 1220780, amount $ 155.00. (U.S. Treasury) (Entered: 12/21/2004) |
| 12/28/2004 | 62 | Notice of Hearing Set (RE: related document(s)60 Motion to Reopen Chapter 7 Case). Hearing scheduled for 1/11/2005 at 10:00 AM at Courtroom 4D, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (JPC, ) (Entered: 12/28/2004) |
| 12/30/2004 | 63 | BNC Certificate of Service - Hearing - (RE: related document(s)62 Hearing (Bk)). No. of Notices: 4. Service Date 12/30/2004. (Admin.) (Entered: 12/31/2004) |
| 01/07/2005 | 64 | Agreed Motion to Continue/Reschedule Hearing On *January 11, 2005, 10:00 AM* Filed by Von G. Memory on behalf of Susan S. DePaola (RE: related document(s)62 Hearing (Bk)). (Memory, Von) (Entered: 01/07/2005) |
| 01/11/2005 | 65 | Hearing Continued from 1/11/05 on matter filed by Von G. Memory of Memory & Day (RE: related document(s)60 Motion to Reopen Chapter 7 Case, 64 Motion to Continue/Reschedule Hearing). Hearing scheduled for 1/25/2005 at 10:00 AM at Courtroom 4D, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (BL, ) (Entered: 01/11/2005) |
| 01/13/2005 | 66 | Order Granting Motion To Continue/Reschedule Hearing On (Related Doc # |

| | | |
|---|---|---|
| | | 64) Entered On 1/13/2005. Hearing scheduled for 1/25/2005 at 10:00 AM at Courtroom 4D, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (RK, ) (Entered: 01/13/2005) |
| 01/15/2005 | 67 | BNC Certificate of Service - See Image Attached - (RE: related document(s) 66 Order on Motion to Continue/Reschedule Hearing). No. of Notices: 3. Service Date 01/15/2005. (Admin.) (Entered: 01/16/2005) |
| 01/16/2005 | 68 | BNC Certificate of Service - See Image Attached - (RE: related document(s) 66 Order on Motion to Continue/Reschedule Hearing). No. of Notices: 4. Service Date 01/16/2005. (Admin.) (Entered: 01/17/2005) |
| 02/02/2005 | 69 | Order Granting Motion To Reopen Chapter 7 Case (Related Doc # 60) Entered On 2/2/2005. (RK, ) (Entered: 02/02/2005) |
| 02/04/2005 | 70 | BNC Certificate of Service - See Image Attached - (RE: related document(s) 69 Order on Motion to Reopen Chapter 7 Case). No. of Notices: 4. Service Date 02/04/2005. (Admin.) (Entered: 02/05/2005) |
| 05/19/2005 | 71 | Motion for Relief from Stay *and Memorandum in Support Thereof*. Fee Amount $150. Filed by David B. Anderson on behalf of Starla Frazer. Responses due by 6/13/2005. (Attachments: # 1 Exhibit A (Divorce Agreement)# 2 Exhibit B (Divorce Order)# 3 Exhibit C (Tiffin Stock Certificate)# 4 Exhibit D (Stock Transfer Agreement)# 5 Exhibit E (Modification Agreement)) (Anderson, David) (Entered: 05/19/2005) |
| 05/19/2005 | 72 | Receipt of Motion for Relief From Stay(02-30767) [motion,mrlfsty] ( 150.00) filing fee. Receipt number 1403728, amount $ 150.00. (U.S. Treasury) (Entered: 05/19/2005) |
| 06/08/2005 | 73 | Objection to *Motion for Relief from Automatic Stay* Filed by Von G. Memory on behalf of Susan S. DePaola (RE: related document(s)71 Motion for Relief From Stay, filed by Interested Party Starla Frazer). (Memory, Von) (Entered: 06/08/2005) |
| 06/10/2005 | 74 | Notice of Hearing Set (RE: related document(s)71 Motion for Relief From Stay,, 73 Objection). Hearing scheduled for 7/12/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (BL, ) (Entered: 06/10/2005) |
| 06/12/2005 | 75 | BNC Certificate of Service - Hearing - (RE: related document(s)74 Hearing (Bk)). No. of Notices: 1. Service Date 06/12/2005. (Admin.) (Entered: 06/13/2005) |
| 06/20/2005 | 76 | Hearing Continued by Agreement on Objection to MTLS filed by Von G. Memory of Memory & Day (RE: related document(s)73 Objection). Hearing scheduled for 7/19/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (BL, ) (Entered: 06/21/2005) |

| 07/12/2005 | 77 | Notice of Appearance and Request for Notice Filed by Andre M. Toffel on behalf of Baddley & Mauro, LLC. (Toffel, Andre) (Entered: 07/12/2005) |
|---|---|---|
| 07/20/2005 | 78 | Order Conditionally Denying in part and Conditionally Granting in part Motion For Relief From Stay (Related Doc # 71) Entered On 7/20/2005. (RK, ) (Entered: 07/20/2005) |
| 07/22/2005 | 79 | BNC Certificate of Service - See Image Attached - (RE: related document(s) 78 Order on Motion For Relief From Stay). No. of Notices: 5. Service Date 07/22/2005. (Admin.) (Entered: 07/23/2005) |
| 08/12/2005 | 80 | 454 (Recover Money/Property): Complaint against Stephen L. Price, Starla Watson Price Frazier. Fee Amount $150. Filed by Von G. Memory, James L. Day, Susan S. DePaola, Trustee, Starla Watson Price Frazier on behalf of Susan S. DePaola, Trustee. (Attachments: # 1 Supplement Summons# 2 Supplement Adversary Cover Sheet) (Memory, Von) (Entered: 08/12/2005) |
| 10/14/2005 | 82 | Opinion / Memorandum Decision Entered On 10/14/2005 (RE: related document(s)71 Motion for Relief From Stay, filed by Interested Party Starla Frazer, 73 Objection filed by Trustee Susan S. DePaola). (RK, ) (Entered: 10/14/2005) |
| 10/14/2005 | 83 | Order on Motion to Dismiss and Order Denying Motion For Relief From Stay (Related Doc # 71, 73) Entered On 10/14/2005. (RK, ) (Entered: 10/14/2005) |
| 10/16/2005 | 84 | BNC Certificate of Service - Notice to File Claim (Ch 7) - (RE: related document(s)81 Possible Asset). No. of Notices: 184. Service Date 10/16/2005. (Admin.) (Entered: 10/19/2005) |
| 10/16/2005 | 85 | BNC Certificate of Service - See Image Attached - (RE: related document(s) 82 Opinion). No. of Notices: 5. Service Date 10/16/2005. (Admin.) (Entered: 10/19/2005) |
| 10/16/2005 | 86 | BNC Certificate of Service - See Image Attached - (RE: related document(s) 83 Order on Motion For Relief From Stay). No. of Notices: 5. Service Date 10/16/2005. (Admin.) (Entered: 10/19/2005) |
| 01/13/2006 | 87 | Clerk's Notice of Claims Bar Date Expiration - The 90 day period for filing proof of claims in this case is expired. The trustee should review the CM/ECF claims register for classification purposes and indicate what action will be taken. (RE: related document(s)84 BNC Certificate of Service - Notice to File Claim (Ch 7), 81 Possible Asset). (RK, ) (Entered: 01/13/2006) |

## PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 05/30/2006 20:16:32 | | | |
| **PACER Login:** | wl0023 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 02-30767 Fil or Ent: Fil Doc From: 0 Doc To: 99999999 Term: y Links: n Format: HTMLfmt |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |