# Appendix 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| STEPHEN L. PRICE, | ) | |
| | ) | 02-30767 |
| Debtor. | ) | CHAPTER 7 |
| _____ | ) | |
| | ) | |
| SUSAN S. DEPAOLA, TRUSTEE, | ) | |
| | ) | ADVERSARY PROCEEDING NO. |
| Plaintiff, | ) | |
| | ) | 05-03063 |
| vs. | ) | |
| | ) | |
| STEPHEN L. PRICE and STARLA | ) | DISTRICT COURT CASE NO. |
| WATSON FRAZER, | ) | |
| | ) | 2:2006mc03317 |
| Defendants. | ) | |

## AFFIDAVIT OF STARLA WATSON FRAZER

STATE OF ALABAMA     )

MONTGOMERY COUNTY    )

Starla Watson Frazer, being duly sworn, says and deposes as follows:

1.   My name is Starla Watson Frazer.  I am over the age of nineteen years and am a resident of Montgomery County, Alabama. This affidavit is given on the basis of my personal knowledge.

2.   I was married to Stephen Price ("Price") for 13 years. We have two minor children.  During our marriage, Price and I jointly owned a trucking company called Cross Country Freight Lines, Inc.  ("Cross Country").  Price ran the trucking company

3715.4

and I raised the children. Upon Price's request, I personally guaranteed certain debts incurred by Cross Country.

3. On December 20, 2000, Price and I moved with our two children from our marital residence in Steamboat Springs, Colorado to Montgomery, Alabama where I was born and raised. Price returned to Colorado to finish packing our belongings, but we separated on January 7, 2001. I have not resided with Price since our separation.

4. In January, 2001, Price asked me for a divorce. I filed for divorce on February 1, 2001. The divorce was contentious and adversary.

5. For approximately six months, Price and I, through our respective legal counsel, engaged in negotiations of the division of our property, child support and alimony. In June of 2001, I also discovered that Price had forged my name to a personal guarantee of debt that Price alone sought from Trans Lease, Inc. A true and correct copy of the forged guarantee is attached hereto as Exhibit A. I would not have personally guaranteed this debt if Price had requested. I also learned that Price forged my signature to two truck/tractor leases from Trans Lease, Inc. True and correct copies of the forged leases are attached hereto as Exhibit B. I would not have personally guaranteed these leases if Price had requested. I threatened to

file civil litigation against Price for his forgeries, which I never pursued.

6.    Through counsel, Price and I finally reached an agreement regarding the division of our property, child support, alimony and the division of obligations for debts and entered into a Marital Settlement Agreement which was executed on August 2, 2001.    A true and correct copy of the Marital Settlement Agreement is attached hereto as Exhibit C.

7.    Judge John C. Capell, Montgomery County Circuit Court, granted a final decree of divorce incorporating the Marital Settlement Agreement which was recorded on August 8, 2001.    A true and correct copy of the Divorce Order is attached hereto as Exhibit D.    Among other things, the Divorce order transferred to me all rights, title and interest to 250 shares of Tiffin Motor Homes, Inc. stock (the "Tiffin Stock") and our marital residence in Steamboat Springs, Colorado (the "Residence").    The Divorce Order also provided that Price was to assume all outstanding and future debts of Cross Country and that he was to indemnify me for any debts that I had guaranteed.

8.    Without my knowledge or consent, I believe that Price hired Thomas Baddley, Esq. of Baddley & Mauro, LLC to represent him in a minority shareholder's action against Tiffin Motor Homes, Inc. with regard to the Tiffin Stock on August 10, 2001

(the "Tiffin Litigation"). I received a copy of the complaint filed in the Tiffin Litigation in September, 2001, from my divorce attorney, John Olszewski. John Olszewski told me that Baddley sent him a copy of the Complaint. Upon information and belief, a true and correct copy of the Tiffin Complaint is attached hereto as Exhibit E.

9. I attempted to obtain possession of the Tiffin Stock certificate from Price immediately after the Divorce. After some delay, Grady Price, Price's father, claimed that he was holding the Tiffin Stock certificate as collateral for an unsupported and undocumented loan Grady Price had allegedly made to Price. Finally, in November 2001, Grady Price released his alleged lien and the Tiffin Stock was delivered to me without any further court intervention. I have had possession of the Tiffin Stock since November of 2001. Attached hereto as Exhibit F is a true and correct copy of my Tiffin Stock Certificate.

10. I married John Frazer in December of 2002. Upon information and belief, Price also remarried.

11. From 2001 through 2004, Price, Grady Price and Tom Baddley, the lawyer representing the minority shareholders in the Tiffin Litigation ("Baddley"), offered to purchase the Tiffin Stock from me for the extremely undervalued amounts of $100,000 - $200,000. I declined each offer.

3715.4                              4

12. On January 15, 2002, Tiffin filed a declaratory judgment action, Case No. CVO2-019 in the Circuit Court of Franklin County against Price and me to determine the rightful owner of the Tiffin Stock. I was dismissed on May 22, 2003 for lack of prosecution.

13. I contacted Thomas Baddley, the attorney representing the minority shareholders (except me) in the Tiffin Litigation and requested to be substituted as the proper plaintiff. Baddley refused and told me that he would not talk to me regarding the Tiffin Litigation. Baddley told me that I had to obtain any information regarding the Tiffin Litigation from Grady Price.

14. On numerous occasions Price assured me each time that I would receive all money paid as a result of the Tiffin Litigation as long as I had possession of the Tiffin Stock certificate. I relied upon Price's representations.

15. During and immediately following the divorce proceeding, I attempted to contact all companies to which I had personally guaranteed debts for Cross Country to notify them that I did not wish to personally guarantee any further debts incurred by Price or Cross Country. Great Plains Trucking, Inc., a factoring company, refused to talk with me. Great Plains purchased the accounts from Price and Price then

contacted those customers and instructed them not to honor Great Plains' assignment, but to pay the funds directly to Price. Because of Price's actions, Great Plains paid Price, but did not receive the funds that were assigned to Great Plains.

16. Price signed over the Deed to the Residence, pursuant to the Divorce Decree in September of 2001. I chose to sell the Residence and offered it for sale at auction on or about September 22, 2001. Shortly thereafter, Great Plains filed suit against me, claiming a lien on the Residence based upon the personal guarantee that I had signed with Great Plains and seeking reimbursement of the funds that Price had converted as discussed in paragraph 15 above. The Residence was sold at auction with the proceeds thereof held in escrow until resolution of the Great Plains suit.

17. As a result of Price's bankruptcy, I have paid approximately $350,000 of debt Price incurred which he agreed to pay in accordance with the Divorce Order. I did not file a proof of claim in Price's or Cross Country's bankruptcy.

18. I believe that in 2002, the Trustee had knowledge that Price had transferred the Tiffin Stock and the Residence to me pursuant to the Divorce Order. The Trustee wrote a letter to William Hibbard, Great Plains' attorney in the Residence Litigation, stating that she had examined the Divorce Order and

3715.4                                    6

Divorce Agreement and that she would make a decision whether to pursue a fraudulent transfer action by July 19, 2002. William Hibbard provided me with a copy of the letter sent from the Trustee. A true and correct copy of the Trustee's letter to William Hibbard is attached hereto as Exhibit G.

19. In April 2003, after Price had refused to pay child support claiming that his salary had been reduced from $24,000 per month to $1,500 per month, and I had learned about the Tiffin Litigation, we agreed to modify the Divorce Order and Agreement to reflect the changes in circumstances. Price works for his new wife's trucking company. Attached hereto as Exhibit J is a true and correct copy of the Divorce Modification.

20. In December, 2004, I learned of the settlement of the Shareholders Action.

21. On April 1, 2004, I notified Baddley & Mauro, LLC, the minority shareholder's lawyers, that I was in possession of the Tiffin Stock Certificate. A true and correct copy of the letter sent to Baddley & Mauro, LLC is attached hereto as Exhibit H.

22. Through my legal counsel, I filed a Motion to enforce the Divorce Order, as modified, so that I could receive the proceeds from the Tiffin Settlement in December, 2004. The hearing was held in the Circuit Court before the Hon. Mark

Anderson on December 21, 2004. The Trustee and her legal counsel appeared and requested a 90 day continuance of the domestic relations case to permit the Trustee to investigate the ownership of the Tiffin Shares, despite that, upon information and belief, the Trustee knew since the inception of Price's bankruptcy that the Tiffin Shares had been transferred to me pursuant to the Divorce Order. The Circuit Court granted the continuance.

23. Upon information and belief, on January 5, 2005, Price executed a Tiffin Stock Purchase Agreement and Release and Settlement Agreement concluding the Shareholders Action.

24. On approximately April 4, 2006, counsel for Tiffin forwarded a copy of lost stock affidavit and assignment of stock, each dated January 7, 2005, to my lawyers. A true and correct copy of the Lost Stock Affidavit and Assignment of Stock sent to my lawyers is attached hereto as Exhibit I. The Lost Stock Affidavit is false as I am, and have been, in possession of the Tiffin Stock certificate since 2001.

Further affiant saith not.

Starla Watson Frazer

5/30/06

**CERTIFICATE OF SERVICE**

0715.4                                   8

I hereby certify that a copy of the above and foregoing Affidavit of Starla Watson Frazer has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Ms. Teresa R. Jacobs
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL  36104

Ms. Susan S. DePaola
1726 West Second Street, Suite B
Montgomery, AL  36106

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1919 3rd Avenue North
Birmingham, AL  35203

This the 30th day of May, 2006.

/s/ David B. Anderson
Of Counsel

# Appendix 2

# Exhibit A

.0

September 22, 2000

# Continuing Guaranty

For Valuable Consideration, the receipt and sufficiency of which are hereby acknowledge, the undersigned

**STEPHEN PRICE**

**STARLA PRICE**

**(The Name of each Guarantor)**

and each of them hereafter called the "Guarantors," do hereby, jointly and severally, guaranty to Trans Lease, Inc., hereinafter called the "Company" that

**CROSS COUNTRY FREIGHTLINE, INC.**          **STEAMBOAT SPRINGS, CO**

**(OBLIGOR)**                                                                      **(City and State)**

Hereinafter called the "Obligor", shall promptly and fully pay any and all liabilites, obligations, which now exist and/or which may hereafter accrue in any manner from said Obligor to said Company, and in the event the said Obligor fails at any time or times to promptly pay any and all obligations which now exist and/or may hereafter accrue from said Obligor to said Company as the same become due, the undersigned and each of them hereby jointly and severally promise to pay any and all such obligations as the same become due from said Obligor to said Company, forthwith, upon demand, and including attorney's fees incurred in enforcing payment under this instrument, all without relief from valuation and appraisement laws.

This is a continuing guaranty and by this instrument the Guarantors guaranty the prompt payment of any and all obligations which now exist and/or may hereafter accrue at any time or times from said Obligor to said Company until the Guarantors have delivered to said Company a notice signed by them at their election not to guaranty any new obligations from said Obligor to said Company which may thereafter accrue. Such notice shall not in any way affect the promise of the Guarantors hereunder to pay any and all obligations from said Obligor to said Company existing at the time such notice is given.

Each of the Guarantors waives all notice of acceptance of this contract by the Company, all notice of the extension of credit from time to time given by said Company to said Obligor, and all notice of the amount of the obligations of the Obligor to the Company which may exist from time to time, and agree that if any one of the undersigned desires at any time to ascertain the amount of liability accrued under this guaranty, he will make inquiry from said Company.

Each of the Guarantors hereby waives presentment for payment, protest and notice of protest and of non-performance of any note or notes made or hereafter made by the Obligor to said Company or of any other items, or obligations held or hereafter held by said Company against said Obligor. Each of the Guarantors further waives all rights which he has or may have by statute or otherwise to require the Company to institute suit against said Obligor or to exhaust its rights or remedies against said Obligor, the Guarantors hereunder and each of them being bound to the payment of each and all obligations of said Obligor to said Company whether now existing or hereafter accruing as fully as if each obligation was directly owing to said Company by him and as fully as if each Guarantor was a joint maker with Obligor upon each note made or hereafter made by said Obligor to said Company. Each of the Guarantors further waive notice of adverse change in Obligor's financial condition or of any other fact which might materially increase Guarantor's risk.

Forbearance on the part of the Company to take steps to enforce the obligations held by it against said Obligor, arising from his default in any respect whatever, or the giving of further time to said Obligor shall in no way release the Guarantors or any of them, but they and each of them shall remain liable hereunder for the prompt payment of all notes signed by said Obligor and made to said Company and all renewals thereof and all other obligations which may now exist and/or may hereafter accrue from said Obligor to said Company.

DOC-10

The Company may take from ...id Obligor any new, additional, or substituted ...curity from time to time without in any way impairing the obligation of the Guarantor nor shall the impairment of the security which said Company may from time to time hold from said Obligor in any way operate to discharge any of the Guarantors in whole or in part, it being specifically agreed that the Company is not required to exercise diligence to enforce its rights against said Obligor. Each of the Guarantors hereby waives for himself, his heirs, executors and personal representatives any rights whatsoever which he may acquire by law or otherwise to any equitable assignment of any or all of any security which the said Company may hold as security for the obligations guaranteed hereby until such time as all obligations guaranteed hereby are paid in full to the said Company.

Each Guarantor agrees that the balance due and unpaid at any time from said Obligor to said Company, as shown by the books of the Company, if approved as correct by the Obligor, shall be received as conclusive evidence of the amount of such obligations owed by said Obligor to the Company as against said Guarantors and shall not be disputed or questioned by any of the undersigned Guarantors and that none of the Guarantors can avail himself of any defense whatever which said obligor may have against said Company other than the payment of said notes, and other obligations. Each of the Guarantors hereby for himself, his heirs, executors and personal representatives waives all defenses given to sureties or Guarantors at law or in equity other than the payment of said obligations, and the fact that certain of said defenses are hereby expressly mentioned does not mean that other defenses are not also waived. It being expressly agreed that said Company cannot prejudice its rights against said Guarantors or any of them by any act or omission on its part with respect to any obligations which may not exist and/or may hereafter accrue from said Obligor to said Company. All remedies or actions for the enforcement by said Company of the payment of such obligations are cumulative and the pursuit of one shall not preclude the enforcement of any other rights or remedies.

This agreement constitutes the entire contract and no waivers or modifications shall be valid unless written upon or attached to this contract.

This agreement shall extend to and bind the heirs, executors, administrators and assigns of each Guarantor hereto.

This contract shall inure to the benefit of all transferees, assignees and/or endorsers of said Company of any part or parts or all of the obligations herein guaranteed.

In the event this instrument is signed by only one person, then the term "Guarantors" herein shall be considered to be in the singular.

IN WITNESS WHEREOF, the said Guarantors have hereunto subscribed their names this **22ND** day of **SEPTEMBER** 2000.

**Witness**

Signature, **STEPHEN PRICE**

Address (City and State)
**STEAMBOAT SPRINGS, CO**

**Witness**

Signature, **STARLA PRICE**

Address (City and State)
**STEAMBOAT SPRINGS, CO**

**Witness**

Signature,

Address (City and State)

2

**Certified Copy of Resoluti**

The undersigned certifies that undersigned is the Secretary of **CROSS COUNTRY FREIGHTLINE, INC.** a **COLORADO** corporation ("this Corporation"), and that as such, undersigned is authorized to execute this Certification on behalf of this Corporation, and further certifies that the following is a true and correct copy of resolutions adopted at a meeting of the Board of Directors, of this Corporation, duly called and held on **9-22-00** at which meeting a quorum was present and acting throughout, and that the proceedings of said meeting were in accordance with the charter and by-laws of this Corporation, and that said resolutions have not been in any way amended, annulled, rescinded or revoked and are in full force and effect:

"WHEREAS", an officer of this Corporation has executed or is about to execute one or more lease or loan agreements with **Trans Lease, Inc.** ("Lessor" or collectively, the "Leases"), pursuant to which this Corporation may lease or finance certain vehicles including, without limitation, automobiles, trucks, tractors, trailers, and semi-trailers from time to time as described therein; and

WHEREAS, the Directors of this Corporation have examined the Lease(s) or Loan and Security Agreement and approved the terms and conditions thereof;

NOW, THEREFORE, BE IT RESOLVED, that we require _one_ signature/s to execute documents on behalf of the corporation, of which the following officers whose signature appears below be, and hereby is authorized to execute the Lease(s) or Loan and Security Agreement on behalf of this Corporation and to perform all acts and execute all instruments and documents as are, in the opinion of such officer, necessary, desirable or proper to carry into effect the purpose of the foregoing resolution, and to effect the performance by this Corporation of its obligations under the Lease(s).

| Name | Title(s) | Sample Signature |
|------|----------|------------------|
| STEPHEN PRICE | President | X |
| ANNA CANTRELL | Vice President | X |
| STARLA PRICE | Treasurer | X |

I do further certify that this Corporation is in good standing in all jurisdictions in which it is required to be qualified to do business and the execution of the lease(s) or Loan and Security Agreements and any other instruments and documents authorized hereunder is not in violation of the charter, by-laws, or any agreements made by this Corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of this Corporation this date.

Date: __9-22-00__

JOHN CANTRELL, Secretary

(CORPORATE SEAL)
DOC-8

# Appendix 2

# Exhibit B

# Schedule "A" Vehicle Description and Payment Terms

## STEPHEN & STARLA PRICE, Lessee

*October 11, 2000*

Schedule No:  (6) SIX

This Schedule and Certification of delivery, Inspection, and Acceptance is executed and delivered under and pursuant to the terms of that certain Lease Agreement number: 01-TR-981102-001, dated 10/09/00 by and between the undersigned Lessor and Lessee.

| Year, Make and Model | Serial Number | Base Location (County, City, State) | Delivery Date |
|---|---|---|---|
| (3) 2001 FREIGHTLINER FLD120 TRACTORS | 1FUPUXZB71PG04553 1FUPUSZB41PG04562 1FUPUXZB01PG02949 | OKLAHOMA, OKLAHOMA CITY, OK | 10/11/00 |

| | | | | | |
|---|---|---|---|---|---|
| 1. | Capitalized Cost | $ 288,450.00 | 8. | Base Lease Monthly Payment | $ 5,493.45 |
| 2. | Security Deposit | $ 0.00 | 9. | Sales/Use Taxes | $ 0.00 |
| 3. | Residual Value | $ 72,112.50 | 10. | State | $ 0.00 |
| 4. | Term (Number of Months) | 54 | 11. | RTD/CD/BD | $ 0.00 |
| 5. | Payment Start Date | 11/24/00 | 12. | City | $ 0.00 |
| 6. | Title and Administration Fee | $ 150.00 | 13. | County | $ 0.00 |
| 7 | Other | | | Total Monthly Lease Payment (Line 8 thru 13) | $ 5,493.45 |

**Ratification and Affirmation of Representations, Warranties and Covenants** - Lessee hereby agrees that its warranties and covenants made in the Lease Agreement are approved, ratified, and affirmed in all aspects as of the date of this Lease Schedule and confirms that the representations made in the Lease Agreement and Statement are, as of the date of this Lease Schedule, true, accurate, and complete in all aspects. Lessor and Lessee hereby characterize this Lease Schedule as a separate Lease with respect to each of the vehicles set forth herein.

Lessee also represents, warrants, and certifies that: (1) the vehicle(s) were delivered to its location and (2) the vehicle(s) were available for use and placed in service by Lessee on the above-described "Delivery date".

Dated:    **10/11/00**

Lessee:    **STEPHEN & STARLA PRICE**

By: _____    By: _____

Title    **PRESIDENT**    Title: _____

Lessor:    **TRANS LEASE, INC. DBA TRANS LEASE, INC; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.**

By: _____

Title    **Vice President**

TRAC

# Delivery and Acceptance Schedule

**MASTER LEASE No. 01-TR-981102-001**

## STEPHEN & STARLA PRICE, Lessee

**Schedule No:  (6) SIX**

With respect to a Lease between Lessor and Lessee dated **10/11/00** Lessee hereby certifies and represents to Owner as follows.

1.    **Certificate of Delivery and Acceptance and Date of Placement in Service**:  Lessee hereby certifies to Lessor that on and as of the date described above as "Delivery date', the vehicle(s) described herein:  (1) are tangible personal property and (2) have been delivered to and are in the possession of the Lessee.

Lessee also represents, warrants, and certifies that:  (1) the vehicle(s) were delivered to its location and (2) the vehicle(s) were available for use and placed in service by Lessee on the above-described "Delivery date".

2.    **Acceptance Acknowledgment**.  Lessee acknowledges that the vehicle(s) was received in good condition and is in good operating condition and acceptable to Lessee.  Lessee approves payment by Lessor to the supplier.

| | |
|---|---|
| Description of Units | (3) 2001 FREIGHTLINER FLD120 TRACTORS |
| Serial Number | 1FUPUXZB71PG04553  1FUPUSZB41PG04562  1FUPUXZB01PG02949 |
| Date of Delivery | 10/11/00 |
| Point of Delivery | OKLAHOMA, OKLAHOMA CITY, OK |

**Dated: 10/11/00**

**Lessee:   STEPHEN & STARLA PRICE**
**By:** _____        **By:** _____

   **Title   PRESIDENT**        **Title** _____

**Lessee:   TRANS LEASE, INC. DBA TRANS LEASE, INC; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.**

**By:** _____

**Title**    Vice President

# Terminal Rental Adjustment Clause

## MASTER LEASE No: 01-TR-981102-001

**STEPHEN & STARLA PRICE, Lessee**

**Schedule No:  (6) SIX**

The following additional terms are a part of a Lease between Lessor and Lessee dated                **10/11/00**

1.    In accordance with Section 7701(h) of the Internal Revenue Code of 1986, under penalty of perjury, Lessee hereby certifies that it intends that more than fifty percent (50%) of the use of the Motor Vehicle(s) is to be in a trade or business of Lessee.

2.    Lessor and Lessee hereby acknowledge that solely with respect to that certain Schedule A dated 10/11/00 and to each of the vehicles set forth therein, the Master Lease Agreement (Lease) dated  between Lessor and Lessee is modified with respect to Paragraph 17 "END OF LEASE TERMINATION LIABILITY' subparagraph 2:

Upon the return of the vehicle (s) as herein provided, Lessor will sell the vehicle(s) at a public or private sale with or without notice to Lessee.  If the amount received from the sale (less sales tax payable, reasonable sales commissions and restoration costs, if any) exceeds the Residual Value of the vehicle(s) as set forth in the Schedule(s), the amount of such surplus shall be paid to Lessee.  If the amount received from the sale (less sales tax payable, reasonable sales commissions and restoration costs, if any) is less than the Residual of the vehicle(s) as set forth in the Schedules(s), Lessee shall be liable for, and shall pay upon demand, the amount of such deficiency to Lessor, except that such deficiency shall not exceed **$72,112.50.**  Lessee acknowledges that the potential benefit or liability contemplated by this Paragraph 2 is not intended to create any equity interest in the vehicle(s) for Lessee, but rather is designed as an incentive for Lessee to properly maintain the vehicle(s) as required by this Lease.

3.    Any amount paid to or by Lessee pursuant to this Schedule shall be the "Terminal Rental Adjustment."

4.    Lessee has been advised that **LESSEE WILL NOT BE TREATED AS THE OWNER OF THE EQUIPMENT FOR FEDERAL INCOME TAX PURPOSES.**

5.    Lessee agrees to indemnify Lessor pursuant to Paragraph 8 of the Lease for any claims, losses, costs, damages, and expenses, of whatsoever kind and nature, including legal fees, resulting from Lessee's breach of the above representation and certification.

6.    Lessee further acknowledges and agrees that all other terms and conditions of said Lease, shall remain in full force and effect.

**Dated:    10/11/00**

**Lessee:    STEPHEN & STARLA PRICE**

**By:** _____    **By:** _____

**Title    PRESIDENT**          **Title** _____

**Lessee:    TRANS LEASE, INC. DBA TRANS LEASE, INC; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.**

**By:** _____

**Title        Vice President**

Rev 12/99                                                    8

# Lease & Finance Facts

**Payments:**  Most first payments are due at the same time your documents are signed, followed by the second payment due within 30 days.  Your first payment is due on 11/24/00.

**Billing Statements:**  Statements are mailed out on or about the 5th of the month for payments due from the 16th to 31st, and again on the 20th for those due from the 1st to 15th.

**Late charges:**  A 10 day grace period is given from your due date until you are charged a late fee.  A 5 % fee on the total amount of your payment will be accessed if not received.  You would be billed for it on you next billing cycle.  A late charge will be accessed on your account if payment is not received by the 4TH.

**Insurance:**  A certificate with proper coverage is required before any equipment is picked up or delivered.  If you change companies, you must have your new agent contact us to add the correct lienholder and loss payee information.  For exact limits see the Master Lease or Agreement to provide insurance.

**Remittances:**  Rentals / Payments should be mailed to

> TRANS LEASE, INC.
> Po Box 16464
> Denver, CO 80216-0464

**Pre-Authorized Checking (PAC):**  Payments can be automatically deducted from your checking account at any bank.  All you need to do is contact our office to get the paperwork rolling.  Payments come out on your due date.  A set up fee of $15.00 will be billed to your account.

**Equipment damage:**  Any accidents or damage to the equipment you have leased or financed should be reported to your insurance company immediately, and our office.

Dated:      10/11/00

Lessee:  **STEPHEN & STARLA PRICE**

By: _____      By: _____

Title    **PRESIDENT**                Title: _____

Rev 12/99                                13

# Appendix 2

# Exhibit C

.0

<u>EXHIBIT A</u>

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

IN RE THE MARRIAGE OF      )     DOMESTIC RELATIONS DIVISION
                           )
STARLA WATSON PRICE        )
                           )
AND                       )     CASE NO.: DR-2001-126
                           )
STEPHEN LEE PRICE,        )
Husband and Wife.          )

<u>MARITAL SETTLEMENT AGREEMENT</u>

**WHEREAS**, the parties to this Agreement, Stephen Lee Price, sometimes herein referred to as the "Husband", and Starla Watson Price, sometimes herein referred to as "Wife", are parties to an action for divorce in Montgomery County, Alabama and for other relief, and;

**WHEREAS**, it is the desire of the parties hereto to enter into this Agreement in order to settle each of their individual interests, and it is their further desire that this "Marital Settlement Agreement" be made part of and incorporated into the "Final Judgment of Divorce", to be legally binding on both of them and enforceable by either of them;

**NOW, THEREFORE**, in consideration of their mutual promises, covenants and agreements contained herein, and for good and valuable consideration in hand received the receipt and sufficiency of which is hereby acknowledged by and between the parties and counsel, in the event the "Complaint" is granted and this Agreement is approved by the Court, it is mutually promised, covenanted and agreed by and between the parties that the following shall be the terms and conditions of relief in this action, to be incorporated in and made a part of the final judgment of this Court as follows:

1.    **<u>EFFECTIVE DATE:</u>**   This Agreement shall become effective upon approval by the Court evidenced by incorporation of this Agreement into the "Final Judgment of

OF COUNSEL:

*Wanda D. Devereaux*

**WANDA D. DEVEREAUX**
Devereaux & Hamlett, L.L.C.
Post Office Box 103
Montgomery, Alabama 36101-0103
(334) 262-6801
Attorney for the Husband

STATE OF ALABAMA           )
MONTGOMERY COUNTY          )

Before me, the undersigned authority, a Notary Public, in and for said State and

County, personally appeared Starla Watson Price, who, being first duly sworn by me,

deposes on oath and says that she has read this instrument, has been advised of and

understands its nature and effect, and voluntarily executed the same.

**STARLA WATSON PRICE**

Sworn to and subscribed before me on this the 2 nd day of August, 2001.

*Diane K. McIver*

**NOTARY PUBLIC**

OF COUNSEL:

**JOHN OLSZEWSKI (OLS004)**
Minor & Olszewski, L.L.C.
Post Office Box 164
Montgomery, Alabama 36101-0164
(334) 265-6200
Attorney for the Wife

22

Divorce".

2.    **RELATIONSHIP OF PARTIES:**    Neither party shall hereafter do any act, directly or indirectly, to harass, molest, intimidate or bother the other party in any manner whatsoever. Each party shall be free to live at such places as he or she may elect, free from all dominion, control or restraint from the other party in any manner whatsoever.

3.    **EXECUTION OF INSTRUMENTS:**    Each party shall, within thirty (30) days of the "Final Judgment of Divorce", execute and deliver to the other party all instruments which may be necessary, convenient, or appropriate to carry into effect any provision of this Agreement.

4.    **LEGAL CUSTODY:**

a.    That the legal care, custody and control of the minor children of the parties, namely: Stephen Lee Price, Jr. whose date of birth is January 6, 1992 and Margaret Cashion Price, whose date of birth is March 17, 1994, shall be jointly vested in the parties. The best interest of the minor children will be served by awarding the primary physical custody of the minor children to the Wife. The Wife shall be the "custodian" of said children, with the Husband having the right to exercise visitation as provided herein.

b.    The primary residence of the minor children shall be with the Wife who shall be the "primary physical custodian" of said minor children, with the Husband having the right to exercise visitation as provided herein.

c.    "Legal custody" pursuant to law, means a legal status created by the order of a court, which confers on the parents of said minor children the right and duty to protect, train and discipline the minor children, and to provide food, shelter, legal services, education, medical

2

33.    **SEVERABILITY:**    Every provision of this Agreement is intended to be severable.  If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of this Agreement.

**IN WITNESS WHEREOF,** the parties have executed this "Marital Settlement Agreement" by placing their signatures hereon on the date so indicated by their individual acknowledgments.

_____
STEPHEN LEE PRICE

_____
STARLA WATSON PRICE

STATE OF ALABAMA          )
MONTGOMERY COUNTY         )

Before me, the undersigned authority, a Notary Public, in and for said State and County, personally appeared **Stephen Lee Price,** who, being first duly  sworn by me, deposes on oath and says that he has read this instrument, has been advised of and understands its nature and effect, and voluntarily executed the same.

_____
STEPHEN LEE PRICE

Sworn to and subscribed before me on this the ___2d___ day of ___August___ , 2001.

_____
NOTARY PUBLIC

21

and dental care, subject to existing parental rights and responsibilities and the provisions of any court order. The Wife, as primary physical custodian of the minor children herein, shall consult with the Husband relative to all matters concerning health, education and welfare of the minor children; however, in the event of a disagreement, Wife's decision shall be final. Both Husband and Wife shall in good faith consider the input of the other. Both Husband and Wife shall have the right to have meaningful input into all matters relative to the minor children's health, education and welfare. The parties shall keep each other informed of all school, church or other activities in which the minor children may be involved.

d.    Husband and Wife agree to conduct themselves in such a manner as to be conducive to the welfare and best interest of the minor children. Husband and Wife recognize that divorce can be a painful and traumatic event in the lives of the minor children. In order to alleviate the potential harmful effects of such an event, Husband and Wife agree to take all steps reasonably possible to show the minor children the depth and continuing nature of their parental commitment. Husband and Wife also believe it is in the best interest of their children to make this positive statement of intent and purpose concerning the mutual love and commitment which they share toward their children.

e.    The parties each agree to promote a healthy and beneficial relationship with the other parent and will not demean, speak or act negatively in any manner that would damage the natural flow of love, caring and affection between either parent or the minor children.

f.    Neither party shall use their joint legal custody for the purpose of frustrating, denying or controlling, in any manner, the independence of the other parent or his/her ability to lead an autonomous lifestyle as they participate in the joint legal custody of the minor

3

Judgment of Divorce".

30. **DISCLOSURE:**    The parties acknowledge that they are each entitled to the benefit of formal discovery of assets, liabilities and any other information to which they are entitled under the <u>Alabama Rules of Civil Procedure</u> and other applicable laws of the State of Alabama governing divorce and that they have elected not to conduct any type of discovery incident to this divorce proceeding. In connection with this election, the parties further acknowledge that their respective attorneys have not had the benefit of that discovery and therefore have not been in a position to nor have they advised the parties, respectively, concerning their rights nor have they rendered opinions concerning the legal consequences of the provisions of this "Marital Settlement Agreement" nor how these provisions might affect this divorce proceeding. The parties hereby acknowledge that their attorneys have advised them of the risks associated with their decision not to conduct discovery in this matter and they accept the consequences of their decisions.

31. **STIPULATION:**    Pursuant to Rule 29, <u>Alabama Rules of Civil Procedure,</u> the parties hereby stipulate and agree that testimony in this cause may be taken before any person, at any time and place, upon any notice and in any manner. Specifically, any disqualification of a Notary Public pursuant to Rule 28(d), <u>Alabama Rules of Civil Procedure,</u> is hereby waived by the parties.

32. **COLORADO DIVORCE ACTION:**    The Husband shall cause to be dismissed the divorce proceeding currently pending in the State of Colorado. The Husband hereby acknowledges that he was a bona fide resident of the State of Alabama at the time the Wife filed her "Complaint for Divorce" in the State of Alabama.

20

children.

       g.     Husband and Wife understand the need for continuity, predictability and stability in the lives of their minor children. In order to achieve this, Wife, as primary physical custodian of the minor children, shall have the routine daily responsibility to make those decisions which are necessary in the natural course of caring for the children on a daily basis while in Wife's care.

     5.    **CHILD SUPPORT:**

       a.     Beginning August 1, 2001, the Husband shall pay the sum of Three Thousand and No/100 ($3,000.00) Dollars per month as child support for the support and maintenance of the minor children of the parties. Said payments shall be made through the Family Court of Montgomery County, Alabama, on the first day of August, 2001, and continuing on the first day of each subsequent month thereafter until the minor children become nineteen (19) years of age, marry or becomes otherwise self supporting, whichever shall first occur. The Husband shall be responsble for and pay all administrative fees to the Court incident to the payment of said child support. The parties hereby agree that it is in their best interests and the best interests of the minor children that an "Income Withholding Order" not be immediately served upon the Husband's employer.

       b.     The parties have entered into a fair written agreement establishing the award of child support herein and the same is in compliance with Rule 32, <u>Alabama Rules of Judicial Administration</u>. The parties hereby acknowledge that their combined gross incomes exceed the maximum guidelines amount as established by Rule 32, <u>A.R.J.A.</u> The Circuit Court of Montgomery County, Alabama upon acceptance and entry of judgment herein, finds the parties'

4

written stipulation or agreement to revise or modify the "Final Judgment of Divorce", the parties

shall be bound by the law of the State of Alabama with respect to any request to the court to

revise or modify this Agreement and the "Final Judgment of Divorce".

26.    **VOLUNTARY EXECUTION:**    Husband and Wife acknowledge that each

has freely entered into this Agreement. This Agreement was executed free of any duress,

coercion, collusion, or undue influence. In some instances, it represents a compromise of

disputed issues. However, both parties believe the terms and conditions to be fair and reasonable.

27.    **FUTURE INTERPRETATION:**    Paragraph headings are for convenience

only. They are not part of the Agreement of the parties and shall not be used in the construction

thereof. With respect to the form of the Agreement, Husband and Wife assume joint

responsibility for the form and composition of each paragraph, and each further agrees that this

Agreement shall be interpreted as though each of the parties participated equally in the

composition of each and every part thereof. This Agreement is not to be strictly construed for or

against Husband or Wife. This Agreement shall be interpreted simply and fairly to both Husband

and Wife.

28.    **FILING FEES:**    The Wife has previously paid the filing fee associated with

this action.

29.    **INCORPORATION OF AGREEMENT INTO JUDGMENT:**    Husband and

Wife will submit this Agreement to the Court for approval. Husband and Wife request that the

Court incorporate the terms of this Agreement into the "Final Judgment of Divorce" and make

them enforceable as part of said Decree. However, this Agreement shall be null and void and of

no legal force and effect in the absence of court approval and incorporation into the "Final

19

agreement relative to child support to be fair and reasonable under the totality of the circumstances.

6.    **MEDICAL/DENTAL EXPENSES:**

a.    The Husband shall be obligated to provide medical and dental insurance for the benefit of the minor children through either Blue Cross/Blue Shield of Alabama or United Healthcare, to keep the same in full force and effect, pay the premiums thereon, and refrain from allowing said coverage to lapse. Husband's obligation to provide medical and dental insurance shall terminate upon the termination of Husband's obligation to pay child support and/or college education expenses as provided herein. The Husband shall be reasonable for and pay all medical and dental expenses that are not covered by insurance including, but not limited to, all deductibles, co-payments, medical, dental, optical, orthodontic, counseling and prescription drug expenses incurred on behalf of the minor children. This obligation to pay non-covered medical and dental expenses shall continue for as long as the minor children are entitled to receive child support and/or for as long the minor children are entitled to receive college education expenses as provided herein.

b.    The Husband shall reimburse the Wife for all non-covered medical and dental expenses no later than ten (10) days following his receipt of written verification that a non-covered medical expense has been incurred.

c.    The Husband shall provide the Wife, for her personal benefit, with health insurance coverage either through Blue Cross/Blue Shield of Alabama or United Healthcare. The Husband shall pay all premiums associated with obtaining the medical and dental insurance policy for the benefit of the Wife. The Husband shall keep this policy in full force and effect, pay the

refuses to do so, a certified copy of the "Final Judgment of Divorce" may be recorded and/or

utilized with the same force and effect as if a deed, conveyance, transfer, assignment or other such

document had been personally executed, acknowledged and delivered by said party.  Said "Final

Judgment of Divorce" shall constitute a full, present and effective relinquishment and waiver of all

rights to be relinquished and waived.  Should Husband fail to execute the deeds provided for in

this "Marital Settlement Agreement" within thirty (30) days of delivery for execution, then in said

event, the clerk of the Circuit Court, Domestic Relations Division, of Montgomery County,

Alabama, shall be authorized to execute said deeds in their stead.

22.    **DIVESTING OF PROPERTY RIGHTS:**    Except as otherwise provided for

in this "Marital Settlement Agreement", each party shall be divested of and each party waives,

renounces, and gives up all right, title, and interest in and to the property awarded to the other.

23.    **ENFORCEMENT OF AGREEMENT:**    Any party breaching any term of this

Agreement shall, after a judicial determination that the Agreement has been breached, be

obligated to the other party for the payment of all costs, including attorney's fees, litigation

expenses, and damages, both incidental and consequential, resulting from said breach.

24.    **STIPULATION FOR REVISION/MODIFICATION:**    No oral revisions, oral

modifications or oral amendments shall be effective to revise, modify, amend or waive any terms

or conditions of this Agreement.  Failure of either party to insist upon strict performance of any of

the provisions of this Agreement shall not be construed as a waiver of any subsequent default of

the same or similar nature.  Any written revision or modification of this Agreement shall be

reduced to a stipulated "Order Amending Final Judgment of Divorce".

25.    **REVISION/MODIFICATION BY THE COURT:**    In the absence of a

18

premiums thereon, and refrain from allowing said coverage to lapse. The Husband shall keep this coverage in full force and effect until such time as the Wife obtains replacement medical and dental insurance which is at no cost to her or until her remarriage, whichever shall first occur. The Wife shall have the total and complete discretion as to whether or not she will obtain replacement medical and dental insurance. Said payments are additional property settlement between the parties. Said payments are not periodic alimony and shall not be deductible by Husband for federal and state income tax purposes and shall not be includable by Wife as income for federal and state income tax purposes.

7.    **VISITATION:**

a.    The Husband shall have liberal reasonable rights of visitation with the minor children to be exercised by him at reasonable times and in a reasonable manner, as agreed between the parties with reasonable notice. The parties understand that the Husband no longer resides in Alabama and that his work and travel schedule are such that his access to the minor children must be governed to some extent by these factors. The parties agree to cooperate in working out visitation between the Husband and the minor children to take into consideration the schedules and routines of both parents and minor children in order to allow meaningful time with the children for both parties. If the parties are unable to agree on a plan to accommodate these circumstances, or if it otherwise becomes necessary to implement a visitation schedule, the parties agree to devise and implement a schedule of visitation upon request by either in writing to the other. If the parties are unable to agree on a visitation schedule, the issue shall be submitted to a mutually agreeable mediator prior to petitioning this Court or other court of competent jurisdiction to determine a visitation schedule.

6

name. The Husband shall immediately execute any and all documents which are necessary to convey all right, title and interest therein to Wife to be her's absolutely.  The Husband hereby warrants that there are no restrictions on the transfer or sale of said stock or upon the transfer or sale of said stock by a holder in due course.  In the event there is a restriction on the transfer or sale of said stock or any limitations on the Wife's ability to liquidate said stock, the Husband shall pay to the Wife the fair market value of said stock as established by generally accepted accounting principles for the valuation of a closely held corporation.  In the event there are any costs, expenses, legal fees or legal expenses associated with this stock or its transfer, the Husband hereby agrees to pay all of said fees and expenses and shall hold the Wife harmless therefrom.  In the event the Husband sells or transfers this stock prior to the entry of the "Final Judgment of Divorce", he shall pay the fair market value of said stock as established by generally accepted accounting principles for a closely held corporation or the amount he actually receives, whichever amount is greater, to the Wife.  A judicial lien is hereby established against the Husband and in favor of the Wife for any amount he receives for the sale or transfer of said stock.

20.    **ATTORNEY'S FEES:**

a.    The Husband shall be responsible for the payment of his attorney's fees and litigation expenses incident to these proceedings.

b.    The Wife shall be responsible for the payment of her attorney's fees and litigation expenses incident to these proceedings.

21.    **AGREEMENT TO EXECUTE:**    Upon demand, now or in the future, both parties agree to execute, acknowledge, and deliver all documents which may be necessary to carry out the terms and conditions of this Agreement.  However, if a party is unable, unavailable or

17

b.     Neither party shall have overnight guests of the opposite sex, other than family members, while the parties' minor children are in the home. Further, the Husband shall never have the children in the presence of Jamie Bender. The parties shall notify each other of the whereabouts of the children when they travel out of the city of their residence.

8.     **LIFE INSURANCE**      The Husband shall maintain a minimum of One Million and No/100 ($1,000,000.00) Dollars of life insurance designating the Wife as the beneficiary of said policy. The Wife shall be the owner of said policy or policies. The Husband shall be responsible for keeping this policy in full force and effect until his death. The Husband shall pay all premiums on said policy and shall not cancel or allow said insurance to lapse. Husband shall not mortgage, pledge, or encumber said insurance without the written consent of the Wife. At the request of the Wife, the Husband shall provide proof of said life insurance policies and proof that said premiums are being paid in full on or before the due date. By the execution of this Agreement, the Husband hereby relinquishes all right, title and interest he may have in and to the life insurance policy or policies obtained as a result of this provision. The payment of these life insurance premiums by the Husband for the benefit of the minor children and the Wife are additional property settlement between the parties. Said payments are not periodic alimony and shall not be deductible by Husband for federal and state income tax purposes and shall not be included by Wife as income for federal and state income tax purposes.

9.     **COLLEGE EDUCATION EXPENSES:**

a.     The Husband recognizes a moral obligation and by this Agreement creates a legal obligation to support and maintain his children in pursuit of a college or post high school education. The above obligation includes the following: (1) tuition; (2) books and supplies; (3)

7

(hereinafter referred to collectively as the "business personal property"). The parties shall continue to exercise joint ownership of the business personal property. However, the Husband shall be entitled to the use and possession of said business personal property for as long as any and all debt payments are paid which may be encumbering said business personal property, or for as long as he continues to profitably operate Cross Country Freightlines, Inc. In the event the Husband fails to timely pay the indebtedness encumbering said business personal property or in the event of the bankruptcy of Cross Country Freightlines, Inc. or in the event said corporation fails to operate profitably, said business personal property shall revert to the use and possession of the Wife. The Husband shall maintain said business personal property in good condition, pay any and all indebtedness associated with said business personal property and pay all fees, repairs, maintenance expenses, or any other costs associated with said business personal property.

        c.      The Wife authorizes the Husband to purchase, immediately upon the entry of the "Final Judgment of Divorce" or thereafter, without further notice to the Wife, the interest of Anna Cantrell in the business known as Cross Country Freightlines, Inc. in accordance with the agreement which is attached hereto as Exhibit "A", and subject to this Agreement.

        d.      The Husband shall assume responsibility for the payment of any and all indebtedness and tax liabilities associated with Cross Country Freightlines, Inc., the business personal property, and any other sole proprietorship, corporation, partnership, limited liability company or other business entity in which the parties have an interest and shall indemnify and hold the Wife harmless therefrom.

    19.    **TIFFIN MOTOR HOMES, INC. STOCK:**    The Wife shall be the sole and absolute owner of the stock in Tiffin Motor Homes, Inc. which is presently titled in the Husband's

16

room, lodging and board; (4) reasonable and customary fees charged by the institution; and (5) transportation. The parties acknowledge transportation is an integral part of education expenses.

      b.    The Husband's obligation to provide higher education expenses is conditioned upon the following:

      1.    The respective child has, at the time, the desire, talent and ability to attain such a higher education.

      2.    The child carries the required number of courses or units so that he or she is considered by the school attended to be a "full time student" and the child maintains a passing grade average as prescribed by the school.

    10.   **AUTOMOBILES:**

      a.    The Wife shall be the sole and absolute owner of the 2002 Cadillac Escalade automobile. The Wife shall be responsible for and pay any indebtedness thereon and shall hold the Husband harmless therefrom. The Husband shall be responsible for securing automobile insurance in the name of the Wife and shall be responsible for keeping this automobile insurance in full force and effect for as long as the Wife owns or leases an automobile in her name. Additionally, the Husband's responsibility for securing automobile insurance in the name of the Wife shall only be in place for as long as the Wife remains unmarried. By the execution of this Agreement, the Husband does hereby relinquish all right, title and interest he may have in and to said automobile and shall execute any and all documents necessary to transfer complete title to the Wife within thirty (30) days of the "Final Judgment of Divorce". The payments of the automobile insurance by Husband for the benefit of the Wife are additional property settlement between the parties. Said payments are not periodic alimony and shall not be deductible by Husband for

8

16.    **BANK ACCOUNTS, CASH AND EQUIVALENTS:**

a.    The parties shall immediately close any remaining joint bank accounts including, but not limited to, joint checking and/or savings accounts, and shall equally divide any funds remaining therein.

b.    The Husband shall have as his separate property all checking accounts, savings accounts, cash and equivalents presently in his possession or in his individual name. By the execution of this Agreement, the Wife does hereby relinquish all right, title and interest she may have therein.

c.    The Wife shall have as her separate property all checking accounts, savings accounts, cash and equivalents presently in her possession or in her individual name. By the execution of this Agreement, the Husband does hereby relinquish all right, title and interest he may have therein.

17.    **PERIODIC ALIMONY:**    The issue of periodic alimony for the benefit of the Wife is hereby reserved by the Court for future determination.

18.    **BUSINESS INTERESTS:**

a.    Each party owns a one-fourth (1/4) interest in a business entity known as Cross Country Freightlines, Inc. The Wife hereby relinquishes all right, title and interest in and to the business known as Cross Country Freightlines, Inc. and shall execute such documents as may be required to transfer her interest therein to the Husband within thirty (30) days of the entry of the "Final Judgment of Divorce".

b.    The parties are joint owners in trucks, trailers, other vehicles, equipment and other personal property associated with the operation of Cross Country Freightlines, Inc.

15

federal and state income tax purposes and shall not be includable by Wife as income for federal
and state income tax purposes.

   b.  The Husband, as additional child support, hereby agrees to purchase an
automobile for each child at the time each child turns sixteen (16) years of age. The Husband
shall purchase a vehicle for each child with a minimum "sticker price" of Thirty Thousand and
No/100 ($30,000.00) Dollars for each vehicle. Title to said vehicles shall be in the name of the
Wife until such time as each child reaches the age of majority. In addition, the Husband shall be
responsible for paying all payments, fees, maintenance expenses, insurance, and any other costs
associated with the purchase, operation, and maintenance of said automobiles. The Husband
hereby specifically agrees to hold the Wife harmless from any and all expenses associated with
these automobiles.

   11.  **DEBTS:**

   a.  The Husband has fully disclosed to the Wife all outstanding debts and
liabilities incurred whether in the parties joint or their individual names. The Husband shall be
responsible for all debts incurred during the marriage of the parties, with the exception of the
2002 Cadillac Escalade, and shall hold the Wife harmless therefrom.

   b.  If either party fails to pay any debt or liability, as set forth herein, the other
party shall have the right, but is not obligated, to make any payments due. If paid, the defaulting
party shall be responsible for reimbursement and indemnification to the party who made the
payments, with interest computed at the rate of twelve (12%) percent per annum on the amount
of any payment made by said party.

   c.  With respect to each party's responsibility to pay the debts, liabilities

9

preparation, filing and/or non-filing of any tax returns and that to his knowledge she is an innocent spouse for taxation purposes.

   d.    The Husband shall assume, pay, indemnify and hold the Wife harmless from any and all tax liability accruing to the parties by virtue of the parties' interest in Cross Country Freightlines, Inc., or any other business entity whether sole proprietorship, partnership, corporation, limited liability company or otherwise, both state and federal, including, but not limited to, taxes, interest, penalties, and any other expenses that Wife may incur in responding to or defending a claim relative to potential tax liability or actual tax liability, including reasonable attorney's fees, accountants fees, and costs, relative to any tax audit and/or adjustment.

   e.    The parties agree to cooperate with respect to the securing, copying and furnishing to each other of originals or copies of any tax documents, either federal or state, including substantiating records and papers and tax returns, and providing any other necessary or convenient or appropriate information relative to the parties' taxes or to the taxes related to any business entity in which the parties have an interest.

   e.    The parties acknowledge that they have been advised by their attorneys of record in this case, that there may be certain tax consequences pertaining to this "Marital Settlement Agreement", that their attorneys have not furnished tax advice with respect to this Agreement, that each party has been directed and advised by their attorneys to obtain independent tax advice from qualified tax accountants or tax counsel prior to signing this Agreement and that each party has had the opportunity to do so.

   f    The parties hereby agree to equally divide any "loss carry forwards" or any other loss or tax benefit which have been accrued by the parties during their marriage.

14

and/or obligations set forth in this Agreement and to hold the other harmless from any liability thereon whatsoever, the parties intend these specific debts and liabilities to be non-dischargeable under Sections 523(a)(5) and (a)(15) of the Bankruptcy Code.

        d.     Each party acknowledges that the assumption of the obligation to hold the other harmless from any liability upon the debts, liabilities and/or obligations contained in this Agreement is the assumption of a separate and distinct obligation in addition to the obligation to assume and pay said liabilities.

        e.     The Wife shall assume, pay and hold the Husband harmless from the indebtedness owed on the 2001 Cadillac Escalade.

        f.     The Husband shall assume, pay and hold the Wife harmless from the following debts:

        1.     Any and all debts in the individual name of the Husband.

        2.     Any and all debts in the individual name of the Wife with the exception of the 2001 Cadillac Escalade.

        3.     Any and all debts in the joint names of the parties.

        4.     Any and all debts in the name of Cross Country Freightlines, Inc., and any and all debts in the name of any other business entity, however designated. Further, any and all indebtedness which may be in the name of any sole proprietorship, partnership, corporation, or any other business entity, however designated, in which the parties have conducted business.

        5.     Any and all debts which may have been cosigned or guaranteed by the Wife.

not limited to, clothing, jewelry, furs, and personal effects.

c.    The Husband shall be entitled to all of his personal belongings including, but not limited to, clothing, jewelry, and personal effects.  The Husband shall be allowed a reasonable time to remove from the marital residence his clothing, jewelry and personal effects.

d.    Each party is hereby divested of all right, title and interest in and to the property awarded to the other party except as provided herein.

e.    The Husband shall be responsible for and pay any and all costs and/or expenses which are incurred by the Wife in order to move the household furniture, furnishings, fixtures, appliances and her personal belongings from Steamboat Springs, Colorado to Montgomery, Alabama.

15.    **TAXES:**

a.    The Wife shall have the right to claim the minor children as dependents and exemptions for federal and state income tax purposes commencing with the 2000 tax year and continuing each year thereafter.  The Husband shall execute any and all documents necessary for this provision to be given full force and effect.

b.    The Husband shall assume, pay, indemnify and hold the Wife harmless from any and all tax liability accruing to the parties by virtue of any and all income tax returns filed jointly by the parties during their marriage, both state and federal, including, but not limited to, taxes, interest, penalties, and any other expenses that Wife may incur in responding to or defending a claim relative to potential tax liability or actual tax liability, including reasonable attorney's fee, accountants fees and costs, relative to any tax audit and/or adjustment.

c.    Husband acknowledges that Wife has relied on Husband for the

13

g.        Neither party shall hereafter directly or indirectly incur further debts or

credit obligations which would obligate the other party either individually or jointly.  Neither party

shall hereafter charge upon the credit of the other.

12.    **MARITAL RESIDENCE:**

a.        The marital residence of Husband and Wife located in Steamboat Springs,

Colorado, and popularly known as 41600 RCR 38A, Steamboat Springs, Colorado 80487 shall be

the sole and absolute property of the Wife. The Husband shall execute a warranty deed to Wife

conveying all of his right, title and interest therein to Wife to be her's absolutely.  The Husband

shall be responsible for and pay any and all mortgages, taxes, insurance, repair and maintenance

expenses, and utility expenses associated with said residence until such time as it is sold.  By the

execution of this Agreement, the Husband hereby relinquishes all right, title and interest in and to

said residence.  Payments made by the Husband pursuant to this paragraph are additional property

settlement between the parties.  Said payments are not periodic alimony and shall not be

deductible by Husband for federal and state income tax purposes and shall not be includable by

Wife as income for federal and state income tax purposes.

b.        In the event the marital residence is sold, the Wife shall receive all proceeds

from the sale therefrom.  The term "proceeds" is hereby defined as the funds received by the Wife

after the deduction of the payment of the first mortgage indebtedness on the marital residence,

realtor fees and closing costs.  However, in the event the Wife decides to auction the property, the

Husband shall be responsible for paying any and all fees and/or expenses associated with the

auction.  The Husband shall be responsible for all costs of sale associated with the sale of the

marital residence including, but not limited to, auction fees, realtor fees, and closing costs.

11

c.     The Husband shall not further encumber the marital residence by obtaining any loans or liens against the property, such as a second mortgage.   The Husband warrants and represents that there are no loans or liens against the property except for the first mortgage.

13.     **PROPERTY SETTLEMENT:**      The Husband shall pay to the Wife as property settlement the total sum of Seven Hundred Twenty Thousand and No/100 ($720,000.00) Dollars payable in monthly increments of Twelve Thousand and No/100 ($12,000.00) Dollars for a period of sixty (60) months beginning August 1, 2001.  Said payments are additional property settlement between the parties.  Said payments are not periodic alimony and shall not be deductible by Husband for federal and state income tax purposes and shall not be includable by Wife as income for federal and state income tax purposes.  Said payments shall not be modifiable by either party.  Said property settlement shall be an obligation of the Husband's estate in the event of his death.  Further, in the event of the Wife's death, the Wife's estate shall still be entitled to receive said payments for their duration.  With respect to the Husband's responsibility to pay this property settlement, the parties intend this obligation to be non-dischargable under Sections 523(a)(5) and (a)(15) of the Bankruptcy Code.  The Husband hereby acknowledges that this payment to the Wife is in the nature of support and that the payment of this sum is vital to the financial security of the Wife and minor children.

14.     **PERSONAL PROPERTY:**

a.     The Wife shall be the sole and absolute owner of all household furniture, furnishings, fixtures and appliances located at either the marital residence in Steamboat Springs, Colorado or at the residence that the parties are renting in Montgomery, Alabama.

b.     The Wife shall be entitled to all of her personal belongings including, but

12

# Appendix 2

# Exhibit D

.0

<u>**EXHIBIT B**</u>

## IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

IN RE THE MARRIAGE OF      )     DOMESTIC RELATIONS DIVISION
                                )
STARLA WATSON PRICE       )
                                )
AND                              )     CASE NO.: DR-2001-126
                                )
STEPHEN LEE PRICE,       )
Husband and Wife.         )

### <u>FINAL DECREE OF DIVORCE</u>

      This cause coming on to be heard at this term, was submitted upon Petition/Bill of Complaint, and testimony and upon consideration thereof, the Court is of the opinion and finds that the Court has jurisdiction of the parties and of the cause of action, and that the Petitioner/Complainant is entitled to the relief prayed for in said Petition/Bill of Complaint.

      It is therefore ORDERED, ADJUDGED and DECREED by the Court:

      1.      That the bonds of matrimony heretofore existing between the parties to this cause be, and the same are hereby dissolved, and they are each forever divorced from the other.

      2.      That neither of the parties to this cause shall again marry, except to each other, until sixty (60) days after the date of this Decree of Divorce, and if an appeal is taken then neither party shall again marry except to each other during the pendency of the appeal.

      3.      That reference is hereby made to a separate order entitled **"Order of Continuing Income Withholding for Support"**, the entry of which is required of this Court by the provisions of Section 30-3-61 of the Code of Alabama and which is specifically incorporated herein as a part of this decree.



FILED.      That the "Settlement Agreement" entered into between the parties on the

AUG  2  8  2001   day of *August* , 2001, is hereby incorporated and merged into this Order,

Fran Cycmanick
Deputy Register

**IN THE CIRCUIT COURT OF MONTGOMERY COUNTY**
**DOMESTIC RELATIONS DIVISION**

STATE OF ALABAMA                    )

COUNTY OF MONTGOMERY          )

I, _Fran L. Cyzmeieh_____, as Deputy Register of the
Domestic Relations Division of said Court, do hereby certify that the foregoing is a full, true and
correct copy of a Decree rendered by said Court on the _____2_____ day of
_August_____, 2001, in a certain cause pending in said Court wherein
_Starla Watson Price___ and _Stephen Lee Price_____
were parties in this cause as the same appears of record and on file in this office.

Witness my hand and seal of said Court, this the _____1____ day of _Oct_____,
2001.

_Fran L. Cyzmeieh_

As Deputy Register of the Circuit Court of
Montgomery County, Alabama
Domestic Relations Division

the same to be legally binding on both parties and enforceable by either.

5.    That the parties have entered into a fair written agreement, establishing the award of child support made herein, the adequacy of which has been reviewed by the Court and/or a Notice of Compliance form filed in accordance with **Rule 32(a)(1), ARJA.**

6.    That the court costs have been prepaid in this matter.

DONE THIS the _____ day of _____, 2001.

_____
**JOHN CAPELL**
**CIRCUIT JUDGE**

Attorney for Wife:    Honorable John Olszewski
Attorney for Husband:  Honorable Wanda D. Devereaux

# Appendix 2

# Exhibit E

.0

## IN THE CIRCUIT COURT OF FRANKLIN COUNTY, ALABAMA

GRADY PRICE, STEPHEN PRICE ,          )
J.M. PAGE, DARRELL HARP,              )
DAVID D. and, KATHRYN B. DEATON,      )
and ANN VINCENT, individually and as  )
representative of the Estate of Homer )
Vincent.                              )
                                      )
        Plaintiffs.                   )
                                      )
v.                                    )
                                      )
ROBERT A. TIFFIN, JR.an individual,   )
DAVID TIFFIN, an individual,          )
ALEX B. TIFFIN, an individual,  JUDY  )
TIFFIN, an individual, TIMOTHY R.     )
TIFFIN, an individual, VAN L. TIFFIN, )
an individual, TIFFIN MOTOR HOMES,    )
INC. a Delaware corporation,  and A,B & C, )
Those persons, firms or entities, whose  )
identities are unknown to the Plaintiffs, but )
when ascertained will be added by     )
amendment and who are responsible for the )
injuries and damages complained of herein, )
and D, E and F, those persons, firms or )
entitieswhose identities are unknown to the )
Plaintiff, but when ascertained will be )
added by amendment and who are        )
responsible for the injuries and damages )
complained of herein,                 )
                                      )
        Defendants.                   )

*CV-01-223*

01 AUG 10 PM 1:06
J. ...
CIRCUIT CLERK
FRANKLIN CO., ALABAMA

## COMPLAINT

## PARTIES

1.      Plaintiff J.M. Page is a resident of Red Bay, Alabama, over the age of 19

years, and owns 1000 shares of stock in the entity know as Tiffin Motor Homes, Inc.

1/2ɛ

2.    Plaintiff Darrell Harp is a resident of Tremont, Mississippi, over the age of 19 years, and owns 1000 shares of stock in the entity known as Tiffin Motor Homes, Inc.

3.    Plaintiffs David D. and Kathryn B. Deaton are residents of Red Bay, Alabama, both over the age of 19 years, and own 1000 shares of stock in the entity known as Tiffin Motor Homes, Inc.

4.    Plaintiff Grady Price is a resident of Ramer, Alabama, over the age of 19 years, and owns 250 shares of stock in the entity known as Tiffin Motor Homes, Inc. and Plaintiff Stephen Price is a resident of Steamboat Springs, Colorado, over the age of 19 years and owns 250 shares of stock in the entity know as Tiffin Motor Homes, Inc.

5.    Plaintiff Ann Vincent is a resident of Red Bay, Alabama, is over the age of 19 years, and owns 700 shares of stock in the entity known as Tiffin Motor Homes, Inc. In addition, the Plaintiff Ann Vincent also brings claim on behalf of the Estate of Homer Vincent, which owns 300 shares of stock.

6.    Defendant Robert A. Tiffin, Jr. is over the age of 19 years and a resident of Florence, Alabama.

7.    Defendant David Tiffin, is over the age of 19 years and a resident of Red Bay, Alabama.

8.    Defendant Alex B. Tiffin is over the age of 19 years and a resident of Red Bay, Alabama.

9.    Defendant Timothy R. Tiffin is over the age of 19 years and is a resident of Red Bay, Alabama.

2/26

10.    Defendant Van L. Tiffin is over the age of 19 years and is a resident of Red Bay, Alabama.

11.    Defendant Judy Tiffin is over the age of 19 years and is a resident of Red Bay, Alabama.

12.    That the Defendant Tiffin Motor Homes, Inc. is an Alabama corporation with its principal place of business in Franklin County, Alabama.  On September 15, 1972, Tiffin Motor Homes, Inc. was incorporated in the State of Alabama.  Subsequently, on September 12, 1985, it was re-incorporated in the State of Delaware, however on December 13, 1991, it was re-incorporated or merged pursuant to Alabama law.  Based upon the best knowledge, information and belief known to the Plaintiff, at the time of the filing of this complaint, Tiffin Motor Homes, Inc. is an Alabama corporation.  Tiffin Motor Homes, Inc. is added as a necessary party for the purposes of appointing a receiver to either dissolve the corporation or for sale as set out hereinafter with more particularity.

13.    Upon information and belief, the Defendants, Robert A. Tiffin, Jr., David Tiffin and Alex Tiffin currently serve on the Board of Directors of Tiffin Motor Homes, Inc., and have for at least 10 years prior to the filing of this complaint.  The Defendants Timothy R. Tiffin, Judy Tiffin, and Van L. Tiffin, to the best knowledge, information and belief of the Plaintiffs are officers or directors of Tiffin Motor Homes, Inc.

14.    The Plaintiffs, as set out hereinabove, own a minority interest in Tiffin Motor Homes, Inc., and the remainder of the stock, totaling 5,500 shares are owned by the Defendants, and relatives and family members of the Defendants, herein referred to as the "Tiffin family."  Together, the Defendants, along with members of their family, own 55 percent of the outstanding shares of Tiffin Motors Homes, Inc.  The ownership interest

3/26

of the Plaintiffs and Defendants have been relatively the same at all times herein, and there has been no material change in the ownership interest of the Defendants.

15.    At all times relevant to this action, the Defendants have constituted the Board of Directors of Tiffin Motors Homes, Inc., and are officers and Chief Executive Officers of Tiffin Motors Homes, Inc. Further, numerous family members and relatives of the Tiffin family are employed or have been employed as Executive Officers of Tiffin Motor Homes, and at no times have the Plaintiffs been employed by Tiffin Motor Homes, Inc., or served on that corporation's Board of Directors.

16.    That the Plaintiffs bring this action individually as well as derivatively on behalf of Tiffin Motor Homes, Inc. against said Defendants.

17.    This action is brought against these Defendants in both their official and individual capacities, seeking a judgment against their personal assets based on the wrongdoing set forth hereinafter. At all times herein, the Defendants as directors and shareholders of Tiffin Motor Homes, Inc. owed a fiduciary duty as defined by Alabama law to both Tiffin Motor Homes, Inc. and to the shareholders, including the Plaintiffs.

18.    This action is brought by the Plaintiffs individually and under Rule 23.1, Alabama Rules of Civil Procedure, on behalf of Tiffin Motor Homes, Inc., and the individual Plaintiffs to enforce its derivative claim. The Plaintiffs further aver that they were shareholders at the time of the matters alleged herein upon which this action is based. Plaintiffs seek to recover damages on their own behalf, and damages from the individual Defendants and fictitious parties, to be paid to Tiffin Motor Homes, Inc., and for the appointment of a receiver for Tiffin Motor Homes, Inc.

## FACTS

19.    In approximately 1972, Tiffin Motor Homes, Inc. (hereinafter "the corporation") was formed and the Plaintiffs were solicited to be and did become shareholders in the firm by making a monetary investment. Over the years, the Plaintiffs have worked in their own jobs and have not been involved in the day to day operations of the business of Tiffin Motor Homes, Inc., but instead have trusted and relied upon the Officers and Directors of Tiffin Motor Homes, Inc. to at all times protect and act in the corporation's best interest, and to enhance shareholders' value.

20.    The corporation is a Delaware corporation, headquartered in Red Bay, Alabama and is in the business of manufacturing and selling motor homes. In addition, Tiffin Motor Homes, Inc. has historically purchased a wide variety of different goods and services from various vendors, such as cabinets, windows, doors, electronics, and also paid vendors who supplied other goods and services such as advertising and the like, at competitive prices.

21.    Over the years, the corporation's sales have risen substantially, so that in 1999, the sales realized by Tiffin Motor Homes, Inc. were approximately 130 million. However, the corporation's cost of goods sold has risen in dramatic proportions, wherein in 1999, the cost of goods sold was approximately 121 million. Therefore, while the corporation's sales have increased considerably, the net profits have been relatively modest and have varied from year to year.

22.    Over the past several years, Tiffin Motor Homes, Inc., pursuant to the Defendants' instructions, paid the shareholders modest dividends, without any explanation by the Defendants as to the amount which was solely based upon the

5/26

discretion of the Defendants.  Further, at various times, the Defendants failed or refused to provide financial information on a timely basis and withheld certain information that was material in fact from the shareholders.

23.    In approximately 1998, the Plaintiffs began to have discussions with the Defendants regarding their desire to sell their shares in Tiffin Motor Homes.  In connection with these discussions, various experts were engaged both by the Plaintiff and Defendants to give advice to the parties relative to the fair price of the stock in this closely held corporation, and in other matters.  During the course of those discussions, the experts engaged by the Plaintiffs examined certain records of Tiffin Motor Homes, Inc., including but not limited to corporate records regarding transactions with separate entities.  For the first time, the Plaintiffs learned that numerous related entities had been formed which were owned in whole or in part by members of the Tiffin family, and further that Tiffin Motor Homes, Inc. had changed historical practices of doing business with vendors on a competitive basis, and began doing business with the related entities owned in whole or in part by the Tiffin family members.  In the course of the investigation, the Plaintiffs learned for the first time, that for approximately seven (7) years prior to the filing of this complaint, purchases of goods and services from entities with ties to the Tiffin family have increased dramatically, and in numerous instances, Tiffin Motor Homes, Inc. paid more for goods and services than would have been obtained from unrelated parties at competitive rates.  Further, business opportunities that would have been available to the Plaintiffs as minority shareholders of the corporation were usurped by the Defendants.

6/26

24.   As an example of waste and usurpation of corporate opportunity, the Plaintiffs discovered that the Tiffin family owed in whole or in part separate entities, such as Camper's Choice, Allegro Club, Drive Away, and Wynne Enterprises. In addition, in contradiction of applicable law, the Defendants engaged in transactions which placed them in a direct conflict of interest involving Tiffin Supply and Tiffin Advertising. Further, because of the increased amounts of monies paid by the corporation for the goods and services, the effect has been to decrease the profitability of Tiffin Motor Homes, Inc., dilute shareholder value and decrease the worth of Tiffin Motor Homes, Inc. Based on information and belief, purchases of goods and services from entities with connections to the Tiffin family increased over the years, and the corporation paid to entities such as Tiffin Supply, HHH Electronics, Tiffin Door, Tiffin Advertising and Wynne Enterprises amounts higher than prices that could have been obtained on a competitive basis.

25.   The named and fictitious defendants have engaged in a systematic scheme to siphon profits from the corporation, which would have accrued to the benefit of the corporation or its shareholders, and diverted those profits to Tiffin controlled enterprises. The Defendants have usurped corporate opportunity, suppressed material information and material facts from the Plaintiffs and diverted business opportunities that properly belonged to Tiffin Motor Homes, Inc. Further, the Defendants concealed the scheme or design from its minority shareholders. All of this was done to the benefit of the Defendants and their family members and to the detriment of the Plaintiffs.

## DERIVITIVE CLAIMS

26.    Pursuant to Rule 23.1 Alabama Rules of Civil Procedure, the Plaintiff asserts on behalf of Tiffin Motor Homes, Inc., the following derivative claims against the individuals named herein and the fictitious defendants who are either officers or directors of the corporation.  The individual named and fictitious Defendants are liable to the corporation for the causes of action set forth in Counts 1 - 9 of this complaint.  Plaintiff further avers that it has made demand on the directors and on the Defendants of Tiffin Motor Homes, Inc., and in that regard, a litigation committee was appointed, and independent counsel retained.  However, it is evident that any demand would be futile in that in order for the directors and officers of Tiffin Motor Homes to address the allegations herein, and to remedy the wrongs alleged in this complaint, Defendants and their family members would have to take actions adverse to themselves, which they would not do.  Therefore, Plaintiff asserts that it would be futile to make any further demand and that since the corporation's directors are charged with wrongdoing, there is no one that could be reasonably expected to objectively evaluate a demand and act in the corporation's best interest.  Further, certain claims of the Plaintiff may be subject to the defense of the statute of limitations, therefore the immediate filing of this suit is necessary and is satisfactory under Alabama law

## COUNT ONE

### (Breach of Fiduciary Duty)

27.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

8/26

28.    Defendants owed a fiduciary duty, the highest standard of duty imposed by law, to their shockholders. This fiduciary duty required the Defendants to exercise due diligence, good faith, special confidence and candor in all matters involving the corporation. Defendants breached that fiduciary duty which has caused injury to the corporation, by allowing or causing the corporation to pay excessive prices for goods and services to entities connected to the Tiffin family, by usurping business opportunities, and by diverting incomes and profits to other related companies, all of which resulted in damages to the corporation. Tiffin Motor Homes, Inc. has been damaged by the Defendants' actions in that it has lost profits and has been deprived of potential business opportunities and other such damages as will be articulated subsequently.

29.    As a result of the breach of fiduciary duty by the Defendants, the corporation has suffered the following injuries and damages: (a) it lost profits, (b) its shares of stock were depressed, (c) the corporation was denied business opportunity, (d) such other and further damages as will be enumerated hereinafter.

30.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## COUNT TWO

### (Negligence, Willfulness and Wantonness)

31.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

32.    The individual and fictitious Defendants negligently, willfully and/or wantonly performed their duties to The corporation, in that they caused or allowed it to

pay excessive prices for goods and services to entities related to the Tiffin family, they allowed business opportunities to be diverted to those entities, and willfully, negligently, and/or wantonly violated their duties to the corporation by failing to monitor or supervise the corporation's agents, servants or employees to the detriment of The corporation.

33.    As a result of the negligence, willfulness and/or wantonness of the actions of the Defendants, Tiffin Motor Homes, Inc. has been materially damaged as follows (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d) such other and further damages as will be enumerated hereinafter.

34.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants and in favor of The corporation in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## COUNT THREE

### (Fraud)

35.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

36.    That the individual named and fictitious Defendants who are officers or directors of The corporation, fraudulently represented to the corporation and its shareholders that the transactions with the Tiffin controlled entities were "arms length" transactions, and were on the best terms available to the corporation.  Further, the individual named and fictitious Defendants represented that the transactions with the Tiffin controlled entities were to the benefit of The corporation, when in fact, the Defendants caused the corporation to pay excessive prices for goods and services to the

10/26

related entities, and diverted business opportunities to those entities. The Defendants made such fraudulent representations with the intent that the Plaintiffs and The corporation rely on the representations. The Plaintiffs and the corporation did rely on the representations of the Defendants, all to their detriment. The Defendants, both named and fictitious, engaged in the fraudulent scheme or enterprise to siphon profits or business opportunities from The corporation and to divert them to other business entities and to the Tiffin family members.

37.    As a result of the fraud of the Defendants, the Plaintiffs have suffered the following injuries and damages: (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d) such other and further damages as will be enumerated hereinafter.

38.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants and in favor of The corporation in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## COUNT FOUR

### (Fraudulent Suppression)

39.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

40.    That the named and fictitious Defendants fraudulently suppressed material facts, that is, that The corporation was doing business with business enterprises controlled and owned in whole or in part by the Tiffin family, and that they were paying inflated prices, and that they lost business opportunities.

41/26

41.    As a result of the fraudulent suppression by the Defendants, the Plaintiffs and The corporation suffered the following injuries and damages; (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d)  such other and further damages as will be enumerated hereinafter.

42.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants and in favor of The corporation in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

### COUNT FIVE

### (Breach of Duty of Loyalty)

43.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

44.    That the individual named and fictitious Defendants breached their duty of loyalty to Tiffin Motor Homes, Inc. and that breach was intentional and willful and was designed to profit and benefit the Defendants and members of their immediate family.

45.    As a result of the Breach of Duty of Loyalty of the Defendants, the Plaintiffs suffered the following injuries and damages; (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d)  such other and further damages as will be enumerated hereinafter.

46.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants and in favor of The corporation  in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

12/26

## COUNT SIX

### (Theft of Corporate Opportunity)

47.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

48.    That the individual named and fictitious Defendants willfully, wantonly or negligently converted business opportunities that properly belonged to Tiffin Motor Homes, Inc., by diverting them to other entities owned or controlled by the Tiffin family.

49.    As a result of the theft of corporate opportunity by the Defendants, the Plaintiffs and The corporation suffered the following injuries and damages; (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, and (d) such other and further damages as will be enumerated hereinafter.

50.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants and in favor of The corporation in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## COUNT SEVEN

### (Violation of § 10-2B-8.30, Ala. Code 1975)

51.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

52.    That the individual named and fictitious Defendants and directors of Tiffin Motor Homes, Inc. intentionally, willfully, wantonly or negligently violated the duties of the corporation imposed by § 10-2B-8.30, Ala. Code 1975.

53.    As a result of the violation of §10-2B-8.30, Ala. Code 1975 by the Defendants, the Plaintiffs have suffered the following injuries and damages: (a) they lost

13/26

profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d) they suffered emotional distress and mental anguish, and (e) such other and further damages as will be enumerated hereinafter.

54.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## COUNT EIGHT

### (Violation of §10-2B-8.42, Ala. Code, 1975)

55.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

56.    That the individual named and fictitious Defendants and directors of Tiffin Motor Homes, Inc. intentionally, willfully, wantonly or negligently violated the duties of the corporation imposed by §10-2B-8.42, Ala. Code 1975.

57.    As a result of the violation of §10-2B-8.42, Ala. Code 1975 by the Defendants, the Plaintiffs have suffered the following injuries and damages: (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, and (d) such other and further damages as will be enumerated hereinafter.

58.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants and in favor of The corporation in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

14/26

## COUNT NINE

(Violation of §10-2B-8.60-8.63, Ala. Code 1975)

(Intentional Engagement in Conflicting Interest Transactions within the meaning of the Code)

59.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

60.    That the individual named and fictitious Defendants and directors of Tiffin Motor Homes, Inc. intentionally, willfully, wantonly or negligently violated the duties of the corporation imposed by §10-2B-8.60 – 8.63, Ala. Code 1975.

61.  .    As a result of the violation of §10-2B-8-60 – 8.63, Ala. Code by the Defendants, the Plaintiffs and The corporation have suffered the following injuries and damages: (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, and (d) such other and further damages as will be enumerated hereinafter.

62.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants  and in favor of The corporation in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## MINORITY SHAREHOLDER'S CLAIMS

63.    In addition to the derivative claims asserted hereinabove on behalf of The corporation, the Plaintiffs have been individually damaged by the Defendants' actions in that they have been deprived of their just share of the corporate gains.  The Defendants

15/26

siphoned off and diverted profits and dividends from Tiffin Motor Homes, Inc., and diverted them to other entities for their own personal benefit. Further, the Defendants have engaged in a systematic scheme or design to "squeeze out" the minority shareholders of Tiffin Motor Homes, Inc. and have committed the tort of oppression to deprive them of their ownership interest in the corporation.

## COUNT TEN

### (Oppression of Minority Shareholders)

64.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full

65.    The individually named and fictitious Defendants are liable to the Plaintiffs for the claim of minority shareholder oppression. Defendants have used their collective ability to control the activities of Tiffin Motor Homes, Inc. to deprive the Plaintiffs of their fair share of the corporation's profits and opportunities, while at the same time concealing their actions in that regard.

66.    As a result of the oppression by the Defendants, the Plaintiffs have suffered the following injuries and damages: (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d) they suffered emotional distress and mental anguish, and (e) such other and further damages as will be enumerated hereinafter.

67.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

16/26

## COUNT ELEVEN

### (Violation of §10-2B-8.32, Ala. Code, 1975)

68.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full

69.    That the individual named and fictitious Defendants and directors of Tiffin Motor Homes, Inc. intentionally, willfully, wantonly or negligently violated the duties of the corporation imposed by §10-2B-8.32, Ala. Code 1975.

70.    As a result of the violation of §10-2B-8.32, Ala. Code by the Defendants, the Plaintiffs have suffered the following injuries and damages: (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d) they suffered emotional distress and mental anguish; and (e) such other and further damages as will be enumerated hereinafter.

71.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## COUNT TWELVE

### (Fraud)

72.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full

73.    That the Defendants, collectively and individually, fraudulently represented to the Plaintiffs that they were acting in the best interest of Tiffin Motor Homes, Inc. and that the purchases of goods and services for the corporation were "arms length" transactions and were on competitive terms for the benefit of the corporation. In

17/26

fact, the corporation paid excessive prices for goods and services to entities related to the Tiffin family, and the Defendants defrauded the Plaintiffs by making those representations with the intent that the Plaintiffs rely thereon. The Plaintiffs relied on the representations of the Defendants , all to their detriment.

74.    As a result of the fraud by the Defendants, the Plaintiffs have suffered the following injuries and damages: (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d) they suffered emotional distress and mental anguish, and (e) such other and further damages as will be enumerated hereinafter.

75.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## COUNT THIRTEEN

### (Fraudulent Suppression)

76.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full

77.    That the Defendants, collectively and individually, fraudulently suppressed and concealed the scheme and design herein described from the Plaintiffs.

78.    As a result of the fraudulent suppression by the Defendants, the Plaintiffs have suffered the following injuries and damages: (a) they lost profits, (b) their shares of stock were depressed, (c) they were denied business opportunity, (d) they suffered emotional distress and mental anguish, and (e) such other and further damages as will be enumerated hereinafter.

18/26

79.    WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## COUNT FOURTEEN

(Request for a Receiver)

80.    Plaintiffs adopt and reallege each and every foregoing paragraph of the complaint as if set out herein in full.

81.    The Plaintiffs have added the Defendant Tiffin Motor Homes, Inc. as a necessary party solely to protect the Plaintiffs' and the corporation's interests, and to request that this Court appoint a receiver to take over the operations of Defendant Tiffin Motor Homes, Inc., and to act in the best interests of the Plaintiffs and all parties concerned, including but not limited to liquidation of the business, dissolution of the business, or negotiating a sale for the best possible price, and for such other, further and different relief as to which the Plaintiffs herein may be entitled.

## RELIEF SOUGHT

81.    That the Plaintiffs requests the following relief;

A.    As to the derivative claims as set out in Counts 1 – 9, brought by the Plaintiffs, that Tiffin Motor Homes, Inc., be realigned and named as a party plaintiff.

B.    That as to the derivative claims stated hereinabove in paragraph 79A, that Tiffin Motor Homes, Inc. receive a judgment for compensatory and punitive damages in an amount to be assessed by a jury.

19/26

C.      That of any amount awarded to Tiffin Motor Homes, Inc., pursuant to the derivative claims, that the Court order these amounts be distributed to the Plaintiff shareholders on a pro rata basis  in accordance with their ownership interest, but not to the individual defendants found liable herein.

D.      That as to the individual claims, Counts Ten through Twelve, that the Plaintiffs receive a judgment for compensatory and punitive damages in an amount to be assessed by a jury at a trial of this cause.

E.      That the Court impose a constructive trust on the operation of Tiffin Motor Homes, Inc., and to appoint a receiver to oversee operations and to make timely financial reports and recommendations to the Court.

F.      That the Court enjoin the Defendants and those acting in concert with them from continuing to engage in the misconduct alleged in the complaint.

G.      For such other, further and different relief as to which the Plaintiffs may otherwise be entitled.

## VERIFICATION

COME now the undersigned, individually and on behalf of Tiffin Motor Homes, Inc., and  verify that they have read the allegations contained in the Complaint, that they are true and correct according to their information and belief.

20/26

_Grady Price_ (signature)          Date: 8/9/01
**GRADY PRICE**

STATE OF ALABAMA        )
        MONTGOMERY COUNTY)

    Before me, the undersigned authority, personally appeared Grady Price  who is
Known to me and who, after being duly sworn, read the contents of the above document
And stated that the facts contained therein are true and correct.

    Sworn to and subscribed before me this _____9th_____ day _August_, 2001.

_Anita S. Harris_ (signature)
Notary Public

My Commission Expires: _01/15/03_

21/26

_____          Date: _8/9/01_
STEPHEN PRICE

STATE OF ILLINOIS          )
_Richland_ COUNTY )


    Before me, the undersigned authority, personally appeared Stephen Price, who is known to me and who, after being duly sworn, read the contents of the above document and stated that the facts contained therein are true and correct.

    Sworn to and subscribed before me this ___9th___ day of _August_, 2001.


_____
Notary Public

My Commission Expires: _10-18-03_


```
"OFFICIAL SEAL"
VIRGINIA SEILER
Notary Public, State of Illinois
My Commission Expires 10-18-03
```

22/26

*J.M. Page* _____    Date: *Aug. 10, 2001*

J.M. PAGE

STATE OF ~~ALABAMA~~) *Alabama*
JEFFERSON ~~COUNTY~~ ) *Franklin JR*

    Before me, the undersigned authority, personally appeared J. M. Page, who is known to me and who, after being duly sworn, read the contents of the above document and stated that the facts contained therein are true and correct.

    Sworn to and subscribed before me this _____*16th*_____ day of *August*, 2001.

*Mildred Phillips* _____
Notary Public
My Commission Expires: *03-16-05*

_____
DARRELL HARP    Date: _____

STATE OF ALABAMA)
JEFFERSON COUNTY )

    Before me, the undersigned authority, personally appeared Darrell Harp, who is known to me and who, after being duly sworn, read the contents of the above document and stated that the facts contained therein are true and correct.

    Sworn to and subscribed before me this _____ day of _____, 2001.

_____
Notary Public

My Commission Expires: _____

23/26

# Appendix 2

# Exhibit F

.0

EXHIBIT C



The sale or transfer of this certificate is subject to the terms and conditions of an Agreement dated the _13th_ day of _May_, 19_83_, as may be amended from time to time, a copy of which is on file with the Secretary of the Corporation and may be reviewed upon request. By acceptance of this certificate, the holder hereof agrees to be bound by the terms of said Agreement.



The following abbreviations, when used in the inscription on the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations. Additional abbreviations may also be used though not in the list.

| | | |
|---|---|---|
| TEN COM | — as tenants in common | UNIF GIFT MIN ACT — ...............Custodian...............(Minor) |
| TEN ENT | — as tenants by the entireties | under Uniform Gifts to Minors Act...............................(State) |
| JT TEN | — as joint tenants with right of survivorship and not as tenants in common | |

PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE

*For value received, the undersigned hereby sells, assigns and transfers unto* ...........................................

------------------------------------------------------------------

PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF ASSIGNEE

------------------------------------------------------------------

..............................................................................................................._Shares_

*represented by the within Certificate, and hereby irrevocably constitutes and appoints*...............................

..........................................................................................._Attorney to transfer the said_

*shares on the books of the within-named Corporation with full power of substitution in the premises.*

*Dated,*............................................

      *In presence of*      ..................................................................

------------------------------------------------------------------

NOTICE: The signature to this assignment must correspond with the name as written upon the face of the certificate, in every particular, without alteration or enlargement, or any change whatever.

# Appendix 2

# Exhibit G

.0

# SAMFORD & DePAOLA, P.C.

## ATTORNEYS & COUNSELORS AT LAW

William James Samford, Jr.*
Susan Shirock DePaola

\* Also Admitted in D.C.

One Commerce Street • Suite 601
Montgomery, Alabama 36104
Telephone (334) 262-1600
Facsimile (334) 262-1638

July 8, 2002

William Hibbard
PO Box 773959
Steamboat Springs, CO  80477

### RE: STEPHEN PRICE          BR: 02-30767

Dear Mr. Hibbard,

　　　This letter is written to follow-up on our telephone conversation of today's date regarding the above-captioned matter. As I indicated to you, I have been examining the divorce settlement agreement pursuant to which Mr. Price transferred all of his rights to the marital residence to Starla Price. I am of the opinion that this transfer is due to be set aside pursuant to 11 U.S.C. §548 and/or 547, thus justifying the Estate's claim to a portion of the funds deposited in Court as a result of your Writ of Attachment. As I indicated to you, Mr. Price will be returning to Court on July 19 and I will make a final determination on these issues at that time.

　　　I understand that Mr. Price has not been served and that you have taken no action to serve him by publication or otherwise become entitled to a default judgment against him. At this time, the automatic stay provided by the Bankruptcy Code would prohibit any such action. In the event the parties, including Mrs. Price's attorney and you on behalf of Great Plains, wish to enter into settlement discussions—clearly all of these issues can be resolved—with bankruptcy Court approval.

　　　In the interim, the facts you presented to me do not indicate any reason for the continuing expenses associated with a cash bond. Unless there are applicable defenses that would justify some recovery in the Price's favor over and above the amount deposited in Court, I cannot see that a bond is necessary. I believe that Mrs. Price's interest and the Trustee's interest would be aligned in that regard and in the event her attorney is willing to have the bond released I certainly would not oppose such a decision. I will get back in touch with you after July 19, 2002 to let you know how I intend to proceed.

Very Truly Yours,
SAMFORD & DePAOLA, P.C.

By:

SUSAN SHIROCK DEPAOLA

C: James Oliphant

# Appendix 2

# Exhibit H

.0

# John A. Frazer

---

**1839 Croom Drive,   Montgomery, Alabama 36106**           **phone 334.272.0896**

---

April 1, 2004

Mr. Jeffrey P. Mauro
2545 Highland Avenue, Suite 201
Birmingham, AL 35205

RE: Starla Frazer & Tiffin shareholder litigation

Dear Mr. Mauro,

I appreciate the time you took to speak to me and my wife, Starla, this week. Although I do not fully understand why Mr. Baddley will require my wife to get her information from Dr. Price instead of receiving progress reports directly from the firm as you and I agreed, I will contact Dr. Price to let him know your position. I will reiterate that Starla and the Price family are not always on the best terms with their relationship, and that not receiving information from your firm regarding the progress of the Tiffin litigation will compromise Starla's ability to maintain accurate and timely knowledge of the litigation's progress. Would you agree to copy Starla on shareholder updates as an interested party if Starla has a signed statement from Dr. Price stating it is agreeable to him?

I do expect that your firm will not distribute any funds from a potential settlement to anyone other than Starla Frazer. You have received Starla's and Mr. Price's divorce order dated August 2, 2001 and the modification to that same order dated April 17, 2003. In addition you should be aware that Starla is in possession of the stock certificate #24 which is presently in Stephen Price's name. Starla will surrender the stock certificate at the time of settlement to your firm. Please let us know if we can expect your firm's cooperation in this matter.

As always, if you have any questions please contact me at 334.272.0896.

Sincerely,

John A. Frazer

# Appendix 2

# Exhibit I

.0

STATE OF ___Alabama___)

COUNTY OF ___Jefferson___)

### AFFIDAVIT

Before me, the undersigned Notary Public, in and for the County and State aforesaid, personally appeared the undersigned (hereinafter referred to as "Affiant"), who is known to me and, being by me first duly sworn, deposes and says:

That Affiant is the legal and beneficial owner of Two Hundred Fifty (250) shares of the Common capital stock of **Tiffin Motor Homes, Inc.** (the "Corporation"), a corporation organized and existing under the laws of the State of Alabama, represented by Certificate No. 24;

That the Certificate for said shares has been lost and was not endorsed;

That Affiant is entitled to the full and exclusive possession of the said Certificate;

That the circumstances concerning the loss of the Certificate are unknown and that every effort has been made to locate the Certificate;

That Affiant shall immediately surrender to the Corporation the lost Certificate if it hereafter comes into the possession of Affiant;

That Affiant knows of no reason that would influence the Corporation to make transfer to any person holding the lost Certificate;

That Affiant does hereby indemnify and hold harmless the Corporation, its successors and assigns, from and against, and to reimburse it for any and all claims, suits, actions, losses, damages, liabilities, costs expenses and deficiencies, including interest, penalties and attorneys' fees reasonably incurred by the Corporation relating to any action brought against the Corporation for failing to transfer, exchange or pay for the lost Certificate; and

That the information contained in this Affidavit is true and correct to Affiant's best knowledge.

Dated this __7__ day of __JAN__, 200_5_.

_____
Stephen Price, Affiant

Sworn to and subscribed before
me on this the __3rd__ day of
__January__, 2005.

_____
Notary Public
My Commission Expires:
__4-17-0 8__

DOCSBHM\1231642\1\

## ASSIGNMENT SEPARATE FROM CERTIFICATE

FOR VALUE RECEIVED, I, the undersigned, hereby sell, assign, transfer, and set over

unto **TIFFIN MOTOR HOMES, INC., Two Hundred Fifty and No/100 (250.00)** shares of the

Common Capital Stock of **TIFFIN MOTOR HOMES, INC.** ("the Corporation"), standing in my name

on the books of the Corporation represented by **Certificate No. 24** herewith, and do hereby irrevocably

constitute and appoint Joseph S. Bluestein as attorney to transfer the said stock on the books of the

Corporation with full power of substitution in the premises.

DATED the ___7___ day of ___JAN___, 200_5_.

_____
**Stephen Price**

IN PRESENCE OF:

# Appendix 2

# Exhibit J

.0

### IN THE CIRCUIT COURT OF
### MONTGOMERY COUNTY, ALABAMA
### DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| In Re the Marriage of | ) |
| | ) |
| STARLA WATSON PRICE(FRAZER) | ) |
| | ) |
| and | )      **CASE NO.: DR-2001-126** |
| | ) |
| STEPHEN LEE PRICE. | ) |
| | ) |
| Wife and Husband. | ) |

### JOINT PETITION TO MODIFY SETTLEMENT AGREEMENT

COMES NOW, **Starla Watson Price (Frazer) and Stephen Lee Price**, pro se, in the above-styled matter and petitions this Honorable Court to request modification of the Final Judgment of Divorce for said reasons and states the following:

1.    That on August 2, 2001 this Honorable Court entered a Full Judgment of Divorce in the above cause.

2.    That Paragraph 5 of the Final Judgment of Divorce states that the husband shall pay the following:

        a.    Beginning August 1, 2001, the Husband shall pay the sum of Three Thousand and No/100 ($3,000.00) Dollars per month as child support for the support and maintenance of the minor children of the parties. Said payments shall be made through the Family Court of Montgomery County, Alabama, on the first day of August, 2001, and continuing on the first day of each subsequent month thereafter until the minor children become nineteen (19) years of age, marry or becomes otherwise self-supporting, whichever shall first occur. The Husband shall be responsible for and pay all administrative fees to the Court incident to the payment of said child support. The parties hereby agree that it is in their best interests and the best interests of the minor children that and "Income Withholding Order" not be immediately served upon the Husband's employer.

FILED

APR 17 2003

Fran Cyomanick
Deputy Register

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
DOMESTIC RELATIONS DIVISION

In re the Marriage of            )
                                 )
STARLA WATSON PRICE (FRAZER)     )
                                 )
and                              )    Case No. DR 2001-126.02
                                 )
STEPHEN LEE PRICE                )
                                 )
Formerly Husband and Wife        )

## ORDER

This matter is before the Court on the parties' joint petition to modify. Having reviewed the same, it is **ORDERED, ADJUDGED AND DECREED** as follows:

1. That the Final Decree of Divorce is modified in accordance with the parties' Joint Petition to Modify Settlement Agreement.

2. That copies of this Order be furnished to Mr. Leavell and to Mrs. Cole.

**DONE** this 17th day of April, 2003.

_____
W. MARK ANDERSON III
Circuit Judge

Shawn Junkins Cole

Barry C. Leavell



FILED

APR 1 7 2003

Fran Cyzmanick
Deputy Register

93.

3.    That since the date of the Final Judgment of Divorce, there has been a material change in circumstances in that there has been an extreme decrease in the Husband's financial situation and he is currently unable to pay the amount of child support previously agreed upon.

4.    The Husband has always paid his obligations to his children for the support due but the parties were under the understanding that this amount could be paid directly to the Wife. Said sums were paid directly to the Wife until such time as a written agreement was entered into between the parties to better reflect the inability to pay directly to the Wife.

5.    The agreement is attached and incorporated to this document *as Exhibit "A."*

6.    Currently, Husband's salary is only $1500.00 per month. Husband is no longer in a financial position to meet the current financial obligations that are a part of the original settlement agreement.

7.    The Husband will pay $895.00 per month directly to Holy Cross School for the benefit of his minor children for as long as minor children are enrolled. Tuition for the 2003-2004 calendar year is $895.00 per month and is subject to change which Husband will address and pay. This money shall constitute child support and will supercede and replace the former agreement regarding child support. This money shall not be paid into the Court and shall not be taken directly out of Husband's pay check. This payment will begin on May 1, 2003. Husband shall further pay One Hundred Five and 00/100 dollars ($105.00) directly to Wife for support and maintenance of the minor children. The total amount payable under this paragraph, $1000, shall constitute child support and shall be increased or reduced according to Husband's and Wife's income and upon either or both children reaching the age of majority or otherwise losing their eligibility for child support.

8.    That Husband shall be financially obligated for all medical and dental insurance coverage of the minor children. Wife's current Husband shall carry the minor children on his health

STEPHEN LEE PRICE

STATE OF ALABAMA                    )

MONTGOMERY COUNTY                   )

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large, personally appeared Stephen Lee Price, being known to me and first duly sworn, acknowledged that after reading the above agreement and with full understanding of the terms and effects thereof, he executed the same as his free and voluntary act and deed for the use and purposes therein expressed.

Sworn to and Subscribed before me on this the 15ᵗʰ day of April 2003.

NOTARY PUBLIC
My Commission Expires: 1-18-04

SHAWN JUNKINS COLE,
Attorney for Husband

OF COUNSEL:
Hill, Hill, Carter, Franco, Cole & Black, P.C.
425 South Perry Street
Montgomery, Alabama 36104

and dental insurance for so long as a group health insurance policy is available for the children. Should Wife's current Husband no longer have the option to carry the minor children on his group health policy, Husband (father of the children) shall then assume the obligation to provide said coverage for the minor children. This agreement shall supercede and replace Paragragh 6 of the original marital settlement agreement and will stay in effect as long as a group policy plan is accessible through Wife's current husband's employer.

9.    Husband shall obtain and keep into effect a life insurance policy in the amount of $350,000 naming the Wife as beneficiary. Husband shall keep said policy in full force and effect until such time as the youngest child reaches the age of 25 years of age.

10.    These modifications to child support, life insurance and health insurance coverages are mutually agreed upon and will be reviewed informally on an annual basis with Husband's and Wife's disclosure of year-end W-2 or 1099 statements. Execution of this agreement constitutes waiver of all child support payments prior to this date.

11.    This agreement resolves all issues regarding child support, life insurance and health insurance and all other issues raised in the pending Petitions are hereby reserved for future consideration at such time as the parties may petition this Honorable Court for consideration of any issues raised before this Court.

12.    This agreement is made between the parties and based upon both parties making a full and correct representation to one another.

13.    Husband agrees to notify his attorney and/or Wife's attorney as soon as litigation regarding the stock is resolved. Husband understands that any payments to Husband for said stock that is at issue in this matter is not to be used for his personal benefit but instead belongs solely to

Wife and Husband will sign whatever documents are necessary to assist in transferring all stock to Wife upon release of said stock.

The parties request that this Honorable Court amend the settlement agreement entered into by the parties as set out above.

Respectfully submitted this the *16* day of April, 2003.

STARLA WATSON PRICE (FRAZER)

STATE OF ALABAMA          )

MONTGOMERY COUNTY )

Before me, the undersigned authority, a Notary Public in and for the State of Alabama at Large, personally appeared Starla Watson Price (Frazer), being known to me and first duly sworn, acknowledged that after reading the above agreement and with full understanding of the terms and effects thereof, she executed the same as his free and voluntary act and deed for the use and purposes therein expressed.

Sworn to and Subscribed before me on this the *16* day of *April*, 2003.

NOTARY PUBLIC
My Commission Expires: *2-21-07*

BARRY LEAVELL.
Attorney for Wife

OF COUNSEL:
Barry C. Leavell
Attorney and Counselor at Law
205 Madison Avenue, Suite A
Montgomery, Alabama 36104