IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **SUSAN SHIROCK DEPAOLA, IN HER OFFICIAL CAPACITY OF TRUSTEE FOR THE BANKRUPTCY ESTATE OF STEVEN L. PRICE,** <br><br> Plaintiff, <br><br> v. <br><br> **STEPHEN L. PRICE and STARLA WATSON PRICE FRAZER,** <br><br> Defendants. <br><br> V. <br><br> **BADDLEY & AURO, LLC, and THOMAS E. BADDLEY, SUSAN S. DEPAOLA,** <br><br> Counter Defendants. | Case No 06-03317-MHT |

**BRIEF IN RESPONSE TO ORDER DATED MAY 25, 2006**

**I. SUMMARY AND OVERVIEW**

Steven Price ("Price") and a related company[1] each filed voluntary petitions for relief under Chapter 11, March 11, 2002. Price was not in Chapter 11 very long and within approximately two months filed a motion to convert from Chapter 11 to Chapter 7. This motion was ordered granted, April 24, 2002. Susan S. DePaola ("Trustee") was appointed Interim Trustee, May 6, 2002.

---

[1] Cross Country Freight Lines, Inc., Bankruptcy Case Number 01-07131, Middle District of Alabama

During the administration of Price's Chapter 7 case, Price made statements to the Trustee about the limited or nominal value of his stock interest in Tiffin Motor Homes, Inc. ("Tiffin") and that Tiffin had prevailed in pending state court litigation. At no time did Price suggest that the stock had been conveyed to Starla Price, now Starla Frazer ("Frazer"). Because of the referenced representations, the investigation of the Trustee turned to furniture items and proceeds being held in Colorado from the sale of a home.

Apparently, litigation had been filed in a Colorado state court and a prejudgment order restricted distribution of Frazer's share. Local counsel for Frazer was discussing settlement with the Trustee, however, it was later discovered that Frazer engaged substitute counsel in Montgomery and, with the help of counsel in the state of Colorado, negotiated a settlement that ultimately allowed Frazer to receive all, or at least a portion of the previously restricted proceeds. Upon the Trustee learning of the settlement, an adversary proceeding was discussed and decided against. Based upon this action, the Trustee recommended that the case be closed as a no asset case, June 21, 2004.

The case remained closed until December 21, 2004 when the Trustee filed a motion to reopen. This action was prompted when the Trustee learned that Price has materially omitted and actively misrepresented important information regarding the Tiffin litigation and the value of his stock in Tiffin. Information that came to Trustee suggested a multimillion dollar recovery by the minority shareholders of Tiffin would result in a payment, over time, of over $1,000,000.00 to Price. It was further revealed to the Trustee that the Price's domestic relations case had been reopened to take up this issue. The Trustee intervened and filed the motion to reopen the bankruptcy case.

Subsequent investigations revealed that Price misrepresented material facts during the pendency of his Chapter 7 case and apparently pursued the value of his stock and damages without disclosing

bankruptcy or divorce. Discovery will yet develop the point in time that his trial counsel knew of bankruptcy and divorce. Regardless, as late as January 2005, Price gave his sworn affidavit regarding stock ownership.

The Trustee filed an adversary proceeding, August 12, 2005, to recover the referenced stock or settlement proceeds from the Tiffin. The instant adversary proceeding joined as party Defendants, Steven Price and Starla Frazer. Subsequently, Frazer added Thomas Baddley, state court attorney, and the Trustee as cross-claim or third party Defendants.

## II. STATEMENT OF THE CASE

This matter is before the Court on a complaint filed by the Chapter 7 Trustee, incident to the Chapter 7 bankruptcy case of Price and pursuant to 11 U.S.C. §§ 541 and 542 and alleging that certain settlement proceeds obtained or recovered from a State of Colorado court action are property of the estate and should be turned over or delivered to the Trustee. The Trustee further avers that Price and Frazer, jointly and severally, wrongfully and intentionally withheld information regarding the stock and the state court litigation and have wrongfully and intentionally asserted claims and exercised dominion over property of the bankruptcy estate.

The Trustee further avers that the Price and Frazer have conspired to withhold information and to prevent the trustee from obtaining information regarding the referenced stock and the civil litigation. Moreover, Price has willfully and fraudulently neglected to discharge his duties under 11 U.S.C. § 521 by failing to disclose and mischaracterizing his interest in certain stock and a civil action filed in the Circuit Court of Franklin County, Alabama. Also, Price has given false or misleading testimony regarding his interest in the Tiffin stock and the civil action filed in the Circuit Court of Franklin County.

After filing a motion to dismiss and two motions for summary judgment, Frazer filed the instant motion to withdraw the reference and it is the motion to withdraw the reference that is the subject of this response.

### III. ISSUES

1. Is withdrawal of the reference proper in this proceeding?

2. The claims of the Plaintiff are core issues, 28 U.S.C. § 157 and therefore non jury issues.

3. The bankruptcy court has subject matter jurisdiction 28 U.S.C. § 1334

4. The Defendant's crossclaim/counterclaim invoke the jurisdiction of the bankruptcy court and a therefore divest the Defendant of a jury trial.

5. The Defendants waived their right to jury by failing to withdraw the reference in a timely manner.

### IV. STATEMENT OF THE FACTS

As appropriate, the Trustee will cite to the case record from the United States Bankruptcy Court for the Middle District of Alabama and the record will be noted according to document number.

Before the Chapter 11 petition for relief and the conversion, and the conversion to Chapter 7, Frazer was married to and subsequently divorced from Price. The marriage was dissolved by final decree, without a trial, August 2, 2001, and filed with the Deputy Registrar of the Office of the Circuit Court of Montgomery County, Alabama, August 8, 2001. The instant divorce decree was a marital settlement agreement that provided, in pertinent part, the conveyance of all right, title, and interest to the parties jointly owned residence in Steamboat Springs, Colorado. Also, in the referenced marital settlement agreement, Frazer was awarded a conditional interest in the stock of Tiffin. In pertinent part, the decree provides as follows:

> The Wife shall be the sole and absolute owner of the stock in Tiffin Motor Homes, Inc. which is presently titled in the Husband's name. The Husband shall immediately execute any and all documents which are necessary to convey all right, title and interest therein to Wife to be her's absolutely. The Husband hereby warrants that there are no restrictions on the transfer or sale of said stock or upon the transfer or sale of said stock by a holder in due course. In the event there is a restriction on the transfer or sale of said stock or any limitations on the Wife's ability to liquidate said stock, the Husband shall pay to the Wife the fair market value of said stock as established by generally accepted accounting principles for the valuation of a closely held corporation.
>
> <u>Price Settlement Agreement</u>, Pages 16 – 17, paragraph 19.

Incident to the conveyance of the parties' residence, the Prices entered into an agreement to sell the residence and the sale was accomplished on or about September 20, 2001. Although the residence had been listed for $2,800,000.00, it sold for $1,266,000.00. Upon information and belief, it is averred that the first mortgage (deed and trust) for $775,000.00 was paid. Also, it is believed that expenses relating to the closing have been paid. However, funds totaling $260,000.00, reflecting net proceeds, remained after the payment of liens and costs.

A few days before the Colorado home was sold, a lawsuit was filed in the District Court, Routt County, Colorado, requesting, among other things, a judgment against Price and Frazer and for a prejudgment writ of seizure regarding the net sale proceeds from the referenced home. Under bond, an order was signed September 18, 2001.

Price filed a petition for an order of relief under Chapter 11, Tile 11, March 11, 2002 (Br Price, ECF Doc. 1[2]). This case was voluntarily converted to a case under Chapter 7, April 24, 2002 (Br Price, ECF Doc. 18). Susan S. DePaola was appointed interim trustee, May 6, 2002 (Br Price, ECF

---

[2] "Br Price, ECF Doc." indicates a document filed in the main bankruptcy case of Stephen Price, Case Number 02-30767

Doc. 26).

There were several meetings and hearings with Price and Frazer, and the Trustee. Because of representations regarding the Tiffin stock and pending litigation, the Trustee turned her attention to the proceeds from the sale of the Price home in Colorado, and it was this issue that dominated various meetings and examinations.

While counsel for the parties to this litigation were negotiating a division of the proceeds held by the state court in Colorado, Frazer engaged new counsel and reached an agreement, without notice to the Trustee, and, upon information and belief, received and used the balance of proceeds obtained incident to this agreement.

Subsequently, the Trustee learned that Price had failed to disclose material information regarding his shares in Tiffin. In fact, while Mr. Price's stock was of grave importance and while Mr. Price was involved in state court litigation, Price failed or refused to list and identify his ownership in 250 shares of Tiffin stock in his bankruptcy documents and failed to disclose his bankruptcy case in depositions taken incident to the state court litigation. Also, as late as January 7, 2005, Price gave an affidavit, **Exhibit "A"**, indicating ownership of the referenced shares.

Price apparently purchased or acquired the 250 shares under the will of his mother in 1996. The stock was in a closely held corporation and restricted in alienability. Price, in March 2002[3], in a written document, offered to sell the stock to Mr. Bob Tiffin for $1,875.00 per share. This offer was subsequently declined. In spite of the referenced offer, the Debtor failed or refused to list the stock in his bankruptcy schedules that were filed March 11, 2002.

---

[3] This is the same month that Price filed his bankruptcy petition.

Price was also listed or identified as a party plaintiff in civil litigation filed in the Circuit Court of Franklin County, Alabama, in 2001. Upon information and belief, the instant litigation was an attempt by minority shareholders to recover damages and for a declaration of other rights resulting from their stock ownership in Tiffin. Price also failed or refused to list this litigation in his bankruptcy schedules and disclosures when they were filed March 11, 2002. The civil action in the Circuit Court of Franklin County, Alabama has been settled or resolved. However, counsel for Mr. Thomas E. Baddley, Esq., has suggested that the terms of settlement are confidential and has admonished Plaintiff's counsel not to discuss or allege the terms of settlement. However, upon information and belief, it is averred that a portion of the settlement was apportioned to a stock value and damages.

Notwithstanding, Frazer attempted to asset her rights against the agreed settlement proceeds from the Circuit Court of Montgomery County and the Plaintiff intervened after learning of the recovery anticipated by the Debtor.

Price received a discharge January 10, 2003 (Br ECF Doc. 55) and the bankruptcy case was closed, June 21, 2004 (Br ECF Doc. 59). The Trustee filed a motion to reopen the bankruptcy case, December 21, 2004 (Br ECF Doc. 60) and the case was ordered reopened, February 2, 2005 (Br ECF Doc. 69).

Frazer filed a motion for relief from the automatic stay, May 19, 2005 (Br ECF Doc. 71), the Trustee filed an objection, June 8, 2005 (Br ECF Doc. 73) and this motion was denied in part and granted in part, July 20, 2005 (Br ECF Doc. 78), pending the filing of the adversary proceeding.

The adversary proceeding was filed, August 12, 2005, in the United States Bankruptcy Court for the Middle District of Alabama. Defendant, Starla Frazer filed a motion to dismiss, September 14,

2005 (Ap ECF Doc. 8[4]) alleging the Plaintiff; 1) failed to state a claim upon which relief can be granted; 2) the Tiffin stock was not property of the estate; 3) the Plaintiff did not allege any facts from which collusion could be found; and, 4) the acts of collusion are time barred. This matter was set for hearing, October 14, 2005 (Ap ECF Doc. 18), and the Frazer motion was denied.

The bankruptcy court entered a scheduling order, October 20, 2005 (Ap ECF Doc. 21), however, the bankruptcy court did not provide a trial date in the order.

Defendant Frazer filed her answer to the complaint and also filed a crossclaim and counterclaim, November 8, 2005 (Ap ECF Doc. 26) and included a jury demand requesting "a jury trial on all issues and claims in this adversary proceeding triable by jury".

Defendant Frazer filed a motion for summary judgment, December 28, 2005 (Ap ECF Doc. 36) alleging that the claims of the Plaintiff were time barred by the statute of limitations, 11 U.S.C. § 546 (a) and that the state law claims were also subject to § 546 limitations. Briefs were due, extended by the court, February 3, 2006 (Ap ECF Doc. 47). The court denied Defendant Frazer's motion for summary judgment, February 15, 2006 (Ap ECF Doc. 54).

The Plaintiff filed an amended complaint, March 13, 2006 (Ap ECF Doc. 59). The bankruptcy court entered a scheduling order, April 6, 2006 (Ap ECF Doc. 69) and this matter was set for trial, August 21, 2006.

The scheduling order was followed by an amended answer on behalf of Defendant Frazer, April 14, 2006 (Ap ECF Doc. 80) in which she restated a demand for jury trial.

---

[4] "Ap ECF Doc." refers to documents submitted in the bankruptcy adversary proceeding, Case Number 05-3063.

Defendant Frazer also filed a document entitled "Starla Frazer's Motion for Summary Judgment and Memorandum in Support Thereof", May 1, 2006 (Ap ECF Doc. 86). The motion to withdraw the reference was filed May 11, 2006 (Ap ECF Doc. 89).

## V. ARGUMENTS AND AUTHORITIES

### General Order of Reference

Bankruptcy courts are courts of limited jurisdiction, In Re Munford, 97 F.3d 449, 453 (11th Cir, 1996). The jurisdiction of bankruptcy courts is limited to civil proceedings that arise under, arise in, and are related to cases under Title 11, 28 U.S.C. § 1334(b). See also, Johnson, Blakely, Pope, Boker, Ruppel, and Bruns, P.A. v. Alverez (In Re Alverez), 224 F.3d 1273, 1280 (11th Cir. 2000). Arising under proceedings are matters developed and created by the bankruptcy code, Carter v. Rogers, 220 F.3d 1249, 1253 (11th Cir. 2000); Also see Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir. 1995). Arising in proceedings are generally administrative type matters . . . that could arise incident to and only in bankruptcy. Carter, 220 F.3d at 1253; Maitland, 44 F.3d at 1435.

The Eleventh Circuit has also implemented a test to determine if an adversary proceeding is related to a case under Title 11:

> "'[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.'" Lemco Gypsum, Inc., 910 F.2d at 788 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)). In other words, "'[a]n action is [sufficiently] related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)and which in any way impacts upon the handling and administration of the bankrupt estate.'" Lemco Gypsum, Inc.,910 F.2d at 788 (quoting Pacor, Inc., 743 F.2d at 994)

Said another way, for the court to invoke related to jurisdiction, there must be some minimum

bankruptcy connection or nexus between the civil proceeding and a Title 11 proceeding , <u>Continental Nat'l Bank of Miami v. Sanchez</u> (In re Toledo), 170 F. 3d 1340, 1345 (11thCir. 1999). <u>Munford</u>, 97 F.3d at 453 (11th Cir. 1996)(citing <u>In re Lemco Gypsum, Inc.</u>, 910 F.2d 784, 787 (11th Cir. 1990)).

The Middle District of Alabama has adopted a general order of reference which refers all cases arising in, under, or related to Title 11 to the bankruptcy court, *General Order of Reference*, April 25, 1985. This statutory design ensures that "the judicial power of the United States will be ultimately exercised by an Article III Court," <u>In re Parklane/Atlanta Joint Venture</u>, 927 F.2d 532, 538 (11th Cir. 1991).

If a party believes that a particular case should be heard in district court, it may petition the district court to "withdraw the reference" and relieve the bankruptcy court of jurisdiction, 28 U.S.C. § 157 (d). Section 157(d) states: The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. The decision of whether to withdraw the reference belongs solely to the district court judge, Fed. R. Bankr. P. Rule 5011.

There are two distinct types of withdrawal: (1) Mandatory and (2) Permissive. Mandatory withdrawal is required if the proceeding requires consideration of both Title 11 and non-bankruptcy code federal law. However, there are no issues here before the court to imply or indicate that issues of non-bankruptcy federal law are at issue in this proceeding, therefore the instant case must be evaluated as a permissive withdrawal request.

### 1. Is Withdrawal of the Reference Proper in this Proceeding?

The threshold issue for determining whether a bankruptcy court has subject matter jurisdiction in a case directs us to 28 U.S.C. § 1334. Section 1334(b) states that a district court has "original, but not exclusive jurisdiction" for "all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." In determining whether a federal court has subject matter jurisdiction, it is important to engage in a careful examination of the pleadings to determine whether bankruptcy law creates the cause of action or if the right to the requested relief is dependent upon a substantial question of bankruptcy law. In re: Johnson, 2002 WL 31084142, at *1 (Bankr. D.S.C. July 31, 2002); see also Pioneer Credit Co. v. Detamore (In re: Detamore), 2005 Bankr. LEXIS 2182, at *4-5 (Bankr. N.D. Ga. Sept. 27, 2005).

In the instant case, the bankruptcy court has subject matter jurisdiction for two separate reasons. First, the instant adversary proceeding is an action to determine if certain properties are assets of the bankruptcy estate and an action to turnover those properties, 11 U.S.C. § 157(b)(2)(E). Second, in that Frazer brought a counterclaim against the Trustee, the referenced adversary proceeding is a claim against the estate, 157(b)(2)(C). These separate issues or matters will be addressed and discussed in greater detail hereafter. Therefore, the matters raised in the pleadings and existing between the parties necessarily **depend upon the resolution of substantial questions of bankruptcy law**.

Further, 28 U.S.C. § 157 classifies matters as either core proceedings, in which a bankruptcy court may "hear and determine" and on which the court "may enter appropriate orders and judgments," § 157(b)(1), or "non-core proceedings," which the bankruptcy court may hear, but for which the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review, § 157(c)(1). Said another way, these are the matters that constitute

and qualify, among other things, the very matters delegated exclusively to bankruptcy courts under Title 11 or arising in Title 11, 11 U.S.C. § 1334 (a and b).

### 2. Core Non-Core Issues

Courts, in determining whether to exercise such discretion, have looked to the factors expressed by the Second Circuit in In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2nd Cir. 1993), which include whether the claim or proceeding is core or non-core, whether it is legal or equitable, judicial efficiency, the prevention of forum shopping, and the economic use of the debtors' and creditors' resources, Id. Section 157(b)(3) envisions that the bankruptcy judge will determine, in the first instance, whether a matter is core or non-core. See 28 U.S.C. § 157(b)(3); In re CIS Corp., No. 92 Civ. 2740(JFK), 1992 WL 176482, at *2 (S.D.N.Y. July 17, 1992) (collecting cases).

28 U.S.C. § 157(b)(1) provides that bankruptcy courts have full judicial power over "core proceedings arising under Title 11, or arising in a case under Title 11." Section 157 equates core proceedings with the categories of "arising under" and "arising in" proceedings. Mich. Empl. Sec. Comm'n v. Wolverine Radio Co. (In re: Wolverine Radio Co.), 930 F.2d 1132, 1144 (6th Cir. 1991).

Moreover, adjudicating the competing claims of creditors to property of the bankruptcy estate is an essential function of this Court, In re: Lunan Family Restaurants, 194 B.R. 429, 440 (Bankr. N.D. Ill. 1996) ("[a]djudicating competing claims of creditors to the property of a bankruptcy is the central function of bankruptcy law").

The Trustee's original complaint and as amended, lists two causes of action under 11 U.S.C. §§ 541 and 542 alleging that certain shares of stock and the interest in property in Colorado were property of the estate and demanding turnover of the instant property. Defendant Frazer has consistently alleged that the actions of the Plaintiff are time barred, 11 U.S.C. § 546(a). However, it should be emphasized

that a trustee's actions to recover property is not time barred as with 11 U.S.C. §§ 547, 548. See 11 U.S.C. § 546.

Moreover, in the conclusory statement in its memorandum decision, March 20, 2006, in response to the motion to Dismiss filed by Defendant Thomas E. Baddley, the bankruptcy court specifically ruled "In summary, the Court concludes that it **has subject matter jurisdiction and also that this matter is a core proceeding**", Page 6, ¶ 1, (Ap ECF Doc. 60), [**emphasis added**].

### 3. Counterclaims Invoke Bankruptcy Court's Jurisdiction

Courts have construed counterclaims filed in an adversary proceeding as claims against the bankruptcy estate. So, by filing a counterclaim, a defendant in an adversary proceeding is divested of the right to a jury trial, Peachtree Lane Assoc., Ltd. v. Granader, 175 B.R. 232, 236 (N.D.Ill.1994) In re Automationsolutions Intern., LLC  2003 WL 22945651, *1
(Bkrtcy.N.D.Cal.) (Bkrtcy.N.D.Cal.,2003)

A creditor, who files a claim against the bankruptcy estate, triggers the process of allowance and disallowance of claims thereby subjecting itself to the bankruptcy court's equitable powers. "If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims allowance process, which is triable only in equity.  In other words, the creditor's claim and the ensuring preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." Langenkamp, 498 U.S. at 44-45, 111 S.Ct. 330.

In Frazer's amended answer, she filed a counterclaim and crossclaim against the Trustee. This claim added an additional core issue to the case.

### 4. Timeliness of Withdrawal

"The reason for the timeliness requirement is to prevent parties from forum shopping, stalling, or otherwise engaging in obstructionist tactics." <u>In re Holcomb Health Care Services, LLC</u>, 329 B.R. 622, 645 (M.D. Tenn. 2004); <u>In re Matter of LissnerCorp.</u>, 115 B.R. 604, 608-612 (N.D. Ill.1990); <u>In re Giorgio</u>, 50 B.R. 327, 328-329 (D.R.I.1985). Unfortunately § 157 (d) does not provide a clear rule on what is timely or untimely. What may be timely for one movant will not be timely for another. Courts have differed, however only slightly, on the definition of "timeliness" with respect to withdrawal. <u>Security Farms v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers</u>, 124 F.3d 999,1007 n.3 (9th Cir. 1997) (motion to withdraw is timely "if it was made as promptly as possible in light of the developments in the bankruptcy proceeding"); <u>In re Sevko, Inc.</u>, 143 B.R. 114, 116(N.D. Ill. 1992) (motion to withdraw reference is either as soon as possible, or at the first reasonable opportunity after the moving party has notice of the grounds for withdrawal, depending on the facts of each case); <u>Burger King Corp v. B-K of Kan., Inc.</u>, 64 B.R. 728,730-31 (D. Kan.1986) (holding that a ten-month delay in filing a motion to withdraw reference was "timely," albeit at "the outer limit"); <u>Laine v. Gross</u>, 128 B.R. 588, 589 (D. Me.1991) (a motion to withdraw the reference that was filed six months after the time from which "it was clear that grounds for withdrawal existed" was not timely filed).

"Despite the absence of a statutory definition, courts are in general agreement that a motion is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding, or, more simply, if it was made at the first reasonable opportunity." <u>United States v. Kaplan</u>, 146 B.R. 500, 503.

When evaluating a motion for withdrawal, the court is required to examine the circumstances of the underlying bankruptcy proceeding. In this case, Frazer has been a enthusiastic and willing

participant in nearly nine months (272 days) of litigation in the bankruptcy court, two answers with jury demands (in which an amendment was filed listing a crossclaim and counterclaim), multiple telephonic hearings, two issuances of summons, one execution of summons, three responses, and participation in multiple motions, all without mention of moving the proceedings to district court. Although Frazer did demand a jury trial in their answers to the Trustee's complaint, she has been silent on the issue. It has been clear for months that this case was scheduled for a bench trial. Frazer has waited almost until a bench trial in the bankruptcy court and just after their motion for summary judgment was denied, to file her motion for withdrawal.

## VI. CONCLUSION

The narrow matter before the court is restricted to the issue of whether the reference incident to the adversary proceeding filed by the Trustee against Steven Price and Starla Frazer should be withdrawn. The issues seem clearly drawn and there is ample law covering this issue.

28 U.S.C. § 1334(a) grants original and exclusive jurisdiction of all cases under Title 11. But the referenced subsection is modified by suggesting that, "…the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising **under** Title 11, or **arising in** or **related to** cases under Title 11". Under a letter of reference issuing from this court, bankruptcy judges have handled all matters arising under and arising in Chapter 11. In instances where parties cannot agree for a bankruptcy judge handling a "related to" matter[5], such matters are routinely submitted to the bankruptcy court for a proposed order containing findings of fact and conclusions of law.

> "Section 157 classifies matters as either "core proceedings," which the bankruptcy court may "hear and determine" and on which the *1101 court "may enter appropriate orders and judgments," § 157(b)(1), or "non-core proceedings," which the bankruptcy

---

[5] Frequently involving non-core issues and matters and third parties not directly involved in bankruptcy.

> court may hear, but for which the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for *de novo* review, § 157(c)(1)."
>
> In re Orion Pictures Corporation, 1100-1101

However, in an instance where a bankruptcy court is handling a related to matter, the bankruptcy court still has subject matter jurisdiction.

In the present case, the Trustee has filed a adversary proceeding to recover estate property. Frazer, in an answer and counterclaim, has denied that the Tiffin stock is property of the estate. Regardless, under 28 U.S.C. § 157 these actions (recovery of estate property and responding to claims against the estate) are clearly matters that arise in and under the bankruptcy code. Therefore, the bankruptcy court has proper jurisdiction under the letter of referral referenced herein.

Moreover, the request for jury trial is not appropriate in that jury trials are routinely disallowed for matters arising in and under Title 11. But in addition, the jury demand must be denied as having been pursued and insisted upon untimely.

It will be useful to compare the fact patterns and procedural actions of the present case to a case recently decided by Hon. W. Harold Albritton, in the case of Curtis C. Reding, v. Michael T. Gallagher, Et Al., Case Number 06- 3295-WHA, United States District Court for the Middle District of Alabama (**Exhibit "B"**). The underlying fact pattern of the two cases is somewhat dissimilar, in that the Reding case involved actions by Trustees to recover damages against several out of state attorneys. However, when Mr. Gallagher recently attempted to withdraw the reference, Judge Albritton directed his attention to some of the underlying facts but generally restricted his findings and conclusions to procedural and jurisdictional issues. In fact, the procedural similarities between the Trustee's case and

this case in Judge Albritton's court proliferate. Consequently, Judge Albritton denied the motion to withdraw the reference.

WHEREFORE, it is respectfully requested that Frazer's motion for withdrawal of reference and transfer of adversary proceeding to district court be denied.

Respectfully submitted on this the 13th day of June 2006.

                 Memory Day & Azar


              By: /S/ James L. Day
                 James L. Day
                 ASB-1256-A55J

                 Von G. Memory
                 ASB-8137-071V

                 Attorneys for Susan S.
                 DePaola, Trustee

OF COUNSEL

Memory Day & Azar
P.O. Box 4054
Montgomery, AL 36013
Tel (334) 834-8000
Fax (334) 834-8001
vgmemory@memorylegal.com
jlday@memorylegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☑ placing same in the United States Mail, postage prepaid, and properly addressed

☐ facsimile

☐ hand delivery

☐ delivered in open court

on June 13, 2006.

David B. Anderson, Esq.
Waller Lansden Dortch & Davis, LLC
AmSouth Harbert Plaza, Suite 1900
Birmingham, AL 35203

Deanna L. Weidner, Esq.
Waller Landsden Dortch & Davis, LLP
1901 6th Avenue North
Suite 1400
Birmingham, AL 35203

Charles Nichols Parnell, III, Esq.
Parnell & Crum, PA
PO Box 2189
Montgomery, AL 36102-2189

Andre M. Toffel, Esq.
Andre' M. Toffel, P. C.
1929 Third Avenue North, Suite 400
Birmingham, AL 35203

/S/ James L. Day