**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **SUSAN SHIROCK DEPAOLA,** in her official capacity of Trustee for the Bankruptcy Estate of Steven L. Price,  ) ) ) ) ) | |
|       Plaintiff, ) ) | |
| vs. ) ) | |
| **STEPHEN L. PRICE** and **STARLA WATSON FRAZER,** ) ) ) | **Case No. 06-03317-MHT** |
|       Defendants, ) ) | |
| vs. ) ) | |
| **BADDLEY & MAURO, LLC,** and **THOMAS E. BADDLEY, SUSAN S. DEPAOLA,** ) ) ) ) | |
|       Counter Defendants. ) | |

## REPLY TO TRUSTEE'S BRIEF IN RESPONSE TO ORDER DATED MAY 25, 2006

Comes now, Starla Watson Frazer ("Frazer") and for her Reply to the Trustee's Brief in Response to Order Dated May 25, 2006 asserts the following.

## SUMMARY OF ARGUMENT

This case arises out of the Trustee's efforts to avoid the final orders of an Alabama Divorce Court approving and enforcing a property settlement.  As Judge Sawyer has accurately stated, the Bankruptcy Court "would not, absent a showing of collusion or other fraud, upset

[the] distribution [of marital assets]."    Initially, the

Trustee claimed that Tiffin Stock (given to Stephen L.

Price ("Price") during his marriage to Frazer) was property

of Price's bankruptcy estate.    The Trustee did not rely

upon any provision of the Bankruptcy Code; instead, the

Trustee asserted contractual provisions that did not

prohibit transfer, but rather granted options to purchase

in the event of a sale.    Accordingly, the Trustee sought a

"turnover" of "property of the estate" under 11 U.S.C. §

542.    As a consequence of having asserted a statute of

limitations claim on March 13, 2006, the Trustee amended

the Complaint to assert a fraudulent conveyance claim under

Alabama law.    The Trustee now seeks to utilize 11 U.S.C. §

544(b) to apply the Code of Alabama § 8-9A-4 (1975) to

claim the divorce order was collusive.    The Trustee did not

assert any fraudulent conveyance claim under the Bankruptcy

Code 11 U.S.C. § 548.    (Frazer's Amended Motion to

Withdraw the Reference, App. 1, Exh. L, Amended Complaint,

¶¶ 23-26).

      The    undisputed    facts    demonstrate    that    the

Trustee's claims are time barred and the divorce was not

collusive.    Although immaterial, Price was actually not

rendered insolvent by the property settlement.    Frazer was

forced to pay approximately $350,000 of joint debts for

which Price had been ordered to pay. (Frazer's Amended Motion to Withdraw the Reference at ¶ 20). Price fraudulently tried to misappropriate the proceeds of the Tiffin Stock. (Frazer's Amended Motion to Withdraw the Reference at ¶ 29). The Trustee was aware of the transfer of the Residence and the Tiffin Stock (and pending shareholder litigation), but the Trustee claims to have closed Price's bankruptcy case as a no asset case based upon Nick Parnell's representation that the Tiffin Stock had unknown value and that the defendants in the Tiffin Litigation had "in essence won." (Exh. A, Trustee's response to Frazer's Motion for Summary Judgment, Exh. E).

When the litigation with Tiffin took a turn in favor of the shareholders, the Tiffin Litigation was ultimately settled for the fair market value of the stock, an amount the Trustee claims is in excess of the value Nick Parnell had previously represented to the Trustee. When the Trustee learned that Nick Parnell's legal opinion about the likelihood of success of the Tiffin Litigation was no longer true, the Trustee reopened the bankruptcy case and claimed some interest in the Tiffin Stock.

Aside from the fact that the Trustee has no facts to support a fraudulent conveyance claim and aside from the fact that the statute of limitations has expired, Frazer

possesses the absolute right to a jury trial on the effect of alleged fraudulent suppression upon the statute of limitations and the merits of the case. Frazer has sought withdrawal of the reference to the District Court for that purpose. Frazer is entitled to a jury trial under Granfinanciera, 492 U.S. 33.

In a transparent attempt to deprive Frazer of her constitutional right, the Trustee confuses the facts and the law. First, the Trustee argues that withdrawal is improper because the Bankruptcy Court possesses subject matter jurisdiction. This argument is both confusing and erroneous because if the Bankruptcy Court did not have the subject matter jurisdiction that this Court has automatically referred to it, there could never be a request for withdrawal. The fact that subject matter jurisdiction exists in the Bankruptcy Court does not mean that the reference of a case cannot be withdrawn.

Pursuant to Article III of the United States Constitution, jurisdiction over this proceeding begins with the District Court. In the Middle District of Alabama, all cases arising under, arising in and related to title 11 of the United States Code are automatically referred by the District Court to the Bankruptcy Court. See General Order of Reference, April 25, 1985. The Bankruptcy Court's

jurisdiction arises from the District Court's referral of the case to the Bankruptcy Court. For cause, the District Court may withdraw this automatic referral and return the case to the District Court where it originated. 11 U.S.C. § 157(d). Frazer has requested that this Court withdraw the automatic reference of this case based upon her constitutional right to a jury trial. Although the withdrawal is technically considered a permissive withdrawal of the reference, it is, practically speaking, mandatory because the District Court <u>must</u> withdraw the reference if Frazer is entitled to a jury trial and does not consent to that jury trial occurring in the Bankruptcy Court. <u>Northern Pipeline Const. Co. v. Marathon Pipeline Co.</u>, 458 U.S. 50 (1982).

Second, the Trustee disingenuously claims that she is <u>only</u> suing for "turnover of estate property" (a core proceeding), when the law (Divorce Order) finally determined it was <u>not</u> estate property. The Trustee argues that there can never be a jury trial of a core proceeding. Any argument that Congress deprived individuals of the right to a jury trial by designating the proceeding as "core" has been flatly refuted by the United States Supreme Court. <u>Granfinanciera</u>, 492 U.S. 33. It is revealing that the Trustee's Response omits <u>any</u> reference to the recently

asserted (March 2006) fraudulent conveyance claim. The fraudulent conveyance claim and the fraudulent suppression claims form the basis for the withdrawal of the reference. The Trustee's strategy of characterizing this case as only a "turnover" action, rather than a fraudulent conveyance action, was revealed when the Trustee, three days later in the Bankruptcy Court, cut and pasted the same paragraph, <u>adding</u> the fraudulent conveyance claim.

Three days after filing her response to Frazer's Motion to Withdraw the Reference in this Court, the Trustee filed her response to Frazer's Motion for Summary Judgment in the Bankruptcy Court. A close examination of the two documents reveals that the Trustee's summary of her claims is word for word identical, except that the Trustee omitted any reference to her fraud allegations in her summary before this Court. Frazer has bolded only those words that were was added to the Trustee's motion filed three days later in the Bankruptcy Court:

The following is the Trustee's Statement of the Case filed before this Court on June 13, 2006:

## II.  STATEMENT OF THE CASE

This matter is before the Court on a complaint filed by the Chapter 7 Trustee, incident to the Chapter 7 bankruptcy case of Price and pursuant to 11 U.S.C. §§ 541 and 542 and alleging that certain settlement

proceeds obtained or recovered from a State of Colorado court action are property of the estate and should be turned over or delivered to the Trustee. The Trustee further avers that Price and Frazer jointly and severally, wrongfully and intentionally withheld information regarding the stock and the state court litigation and have wrongfully and intentionally asserted claims and exercised dominion over property of the bankruptcy estate. The Trustee further avers that Price and Frazer have conspired to withhold information and to prevent the trustee from obtaining information regarding the referenced stock and the civil litigation.

The following is the Trustee's Statement of the Case filed before the Bankruptcy Court on June 16, 2006, three days later:

## II.   STATEMENT OF THE CASE

This matter is before the Court on a complaint filed by the Chapter 7 Trustee, incident to the Chapter 7 bankruptcy case of Price and pursuant to 11 U.S.C. §§ 541, 542, **544 and 548** and alleging that certain settlement proceeds obtained or recovered from a State of Colorado court action are property of the estate and **proceeds from the Tiffin Litigation** should be turned over or delivered to the Trustee. The Trustee further avers that Price and Frazer jointly and severally, wrongfully and intentionally withheld information regarding the stock and the state court litigation and have wrongfully and intentionally asserted claims and exercised dominion over property of the bankruptcy estate. **In the alternative for actions of actual and constructive fraud, it is averred that the referenced proceeds (home and stock) should be turned over to the Trustee.** The Trustee further avers that Price and Frazer have conspired to withhold

information and to prevent the trustee from
obtaining information regarding the
referenced stock and the civil litigation.
The omission of the Trustee's fraudulent
conveyance claim from the Trustee's Response
with its required application of
<u>Granfinanciera</u> is more than mere oversight.

(Exh. A, Trustee's Response to Frazer's Motion for Summary
Judgment, p. 4).

Third, the Trustee argues that Frazer waived her
right to a jury trial by filing a compulsory counterclaim
in the Bankruptcy Court to retain her stock. An individual
cannot voluntarily and intelligently waive her right to a
jury trial by filing a defensive, declaratory, compulsory
counterclaim in which she seeks no affirmative monetary
recovery from the estate. Frazer could have filed a claim
for the hundreds of thousands of dollars she paid on behalf
of Price. A waiver of a fundamental constitutional right
should not be assumed lightly and all presumptions are in
favor of retaining these rights.

Fourth, the Trustee, who waited from January of
2005 until March of 2006 to assert a fraudulent conveyance
claim, alleges that Frazer's Motion to Withdraw the
Reference is untimely. Frazer filed her Motion within 60
days of the Trustee filing her amended complaint (which
first added the fraud allegations) and within 35 days of
the Bankruptcy Court setting the case for trial on August

21, 2006.   The Bankruptcy Court also recognized the jury trial issue and on April 11, 2005 ordered Frazer to brief her jury demand within 30 days.   The order of the Bankruptcy Court itself demonstrates the timeliness of Frazer's request.

Frazer in her Amended Motion to Withdraw Reference and Transfer to District Court and Memorandum in Support Thereof set forth the factual background of this case, supported by evidence.  (Frazer's Amended Motion to Withdraw the Reference at pp. 3-14).   Noticeably absent from the Trustee's response is any allegation, much less evidence, of any wrongdoing on the part of Frazer. Instead, the Trustee alleges misrepresentations and omissions by Price, generally and to avoid the statute of limitations; and the Trustee illogically concludes that Price's alleged fraud somehow voids the transfer to Frazer. Price's attempt to misappropriate Frazer's property (through the fraudulent execution of a lost stock certificate) is not evidence of collusion.   To the contrary, it is evidence against collusion.   As Judge Sawyer stated in McGregor v. Grace (In re Grace), Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D.Ala. June 22, 2000)(Sawyer, J.):

> [t]hat [the debtor-husband] disobeyed a
> court order did not vest him with a property
> right, lost on January 7, 1997, when the
> divorce decree entered.  That the Trustee
> would attempt to make an argument that the
> estate has a property interest in the house
> by virtue of [the debtor-husband's]
> contemptuous, if not criminal, behavior is
> patently outrageous.

See Davis vs. Cox, 356 F.3d 76, 84 (1st Cir. 2004).  With respect to the Trustee's effort to avoid a final order of divorce, Judge Sawyer has said:

> [t]he state court, however, had neither
> granted the divorce nor made any order
> affecting the distribution of marital assets
> by the time the bankruptcy petition was
> filed.  Had it done so, this court would
> not, absent a showing of collusion or other
> fraud, upset that distribution.  The debtor,
> as of the date of the filing, would no
> longer have had an interest in the property.

McGregor v. Grace (In re Grace), Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D.Ala. June 22, 2000)(Sawyer, J.)

I.    **SUMMARY OF TRUSTEE'S CLAIMS.**

The Counts of the Trustee's complaint, as amended on March 13, 2006 are:

1.    11 U.S.C. §§ 541, 542.

2.    11 U.S.C. §§ 541, 542.

3.    11 U.S.C. § 544.

(Frazer's Amended Motion to Transfer the Reference, App. 1, Exh. L).

The only allegations by the Trustee concerning Frazer are that Frazer withheld or conspired to withhold "information." Frazer and Price:

> jointly and severally, wrongfully and intentionally withheld information regarding the stock and the state court litigation and have wrongfully and intentionally asserted claims and exercised dominion over property of the bankruptcy estate; and (2) Price and Frazer have conspired to withhold information and to prevent the Trustee from obtaining information regarding the referenced stock and the civil litigation.

(Frazer's Amended Motion to Withdraw the Reference, App. 1, Exhs. B, L, Complaint, Amended Complaint). The Trustee has never articulated any basis for any joint and several liability, or conspiracy or an alleged duty to provide information to the Trustee.

<strong><u>ARGUMENT</u></strong>

I.  **THE TRUSTEE'S PRIMARY CLAIMS ARE FOR FRAUDULENT SUPPRESSION OF INFORMATION AND FOR FRAUDULENT TRANSFER.**

Frazer owned the Tiffin Stock and the Residence pursuant to the Divorce Order. (Frazer's Amended Motion to Withdraw the Reference, App. 2, Exhs. C, D). According to Alabama law, the Tiffin Stock and the Residence are not property of Price's bankruptcy estate unless the Divorce Order was collusive. In order to claim collusion, the

Trustee must establish fraudulent suppression or else the claims are time-barred.

A debtor's estate in bankruptcy is comprised of all property in which the debtor has "legal or equitable interests" at the time the bankruptcy petition is filed. 11 U.S.C. §541(a). Pursuant to the Divorce Order and Divorce Agreement of August 2, 2001, Price did not have a legal or equitable interest in the Tiffin Stock or the Residence on March 11, 2002, the date he filed his petition. (Frazer's Amended Motion to Withdraw the Reference, App. 2, Exh. A at ¶ 19). To the extent the stock remained in Price's name and to the extent Price remained a party in the Tiffin litigation, it was recognized by the Divorce Court to be for the benefit of Frazer. (Frazer's Amended Motion to Withdraw the Reference, App. 2, Exh. J, Divorce Modification).

Absent a showing of collusion, once a divorce decree is entered, the transferor of property no longer has an interest in that property. McGregor v. Grace (In re Grace), Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D.Ala. June 22, 2000)(Sawyer, J.); Moretz v. Moretz, No. 95-41767, 1996 WL 33401174, at *3 (Bankr. S.D.Ga. June 10, 1996) (if a final decree of divorce had been entered at the time the bankruptcy petition was filed,

then the trustee's strong arm power granted in 11 U.S.C. § 544(a) would not prevail); *Davis vs. Cox*, 356 F.3d 76, 84 (1st Cir. 2004).

In the case of *In re Golden*, Ch. 7 Case No. 00-07110-DHW (Bankr. M.D. Ala. June 18, 2004) (No. 200) the parties filed for divorce prior to the husband's petition for bankruptcy. There, Judge Sawyer, speaking for the Middle District of Alabama Bankruptcy Court commented that,

> [t]he state court, however, had neither granted the divorce nor made any order affecting the distribution of marital assets by the time the bankruptcy petition was filed. Had it done so, this court would not, absent a showing of collusion or other fraud, upset that distribution. The debtor, as of the date of the filing, would no longer have had an interest in the property.

*Id*.; *see also In re Marchman*, 263 B.R. 859, 862 (Bankr. M.D. Ala. 2001). "[The non-debtor spouse] seems to be a clear cut winner if the domestic action was initiated and concluded prior to the bankruptcy"]. Trustees Brief Filed by Von G. Memory at 5, *In re Golden*, Ch. 7 Case No. 00-07110-DHW (Bankr. M.D. Ala. June 18, 2004) (No. 191).

In the case of *In re Grace*, a deed to real estate was not executed or recorded until after the husband filed a Chapter 7 case. Judge Sawyer, speaking for the Middle District of Alabama Bankruptcy Court, however, reasoned that "[i]t was entry of the divorce decree and not

execution or recordation of the Clerk's deed which served to transfer title." Id. Therefore, "[a]s that interest was never part of the estate, it follows that there was not a transfer of an interest of property of the estate which may be avoided by the Trustee." Id.

Similarly, the Divorce Order expressly divested title and declared Frazer to "be the absolute owner" of the Tiffin Stock which was delivered to Frazer. The Divorce Order compelled Price to relinquish all rights, title and interest to the Tiffin Stock. As in Grace, Price's attempts to misappropriate the Tiffin Stock did not convert Frazer's property into property of Price's bankruptcy estate. In Grace, Judge Sawyer explained:

> [t]hat [the debtor-husband] disobeyed a court order did not vest him with a property right, lost on January 7, 1997, when the divorce decree entered. That the Trustee would attempt to make an argument that the estate has a property interest in the house by virtue of [the debtor-husband's] contemptuous, if not criminal, behavior is patently outrageous.

McGregor v. Grace (In re Grace), Ch. 7 Case No. 99-2316-WRS, Adv. No. 99-132-WRS (Bankr. M.D.Ala. June 22, 2000)(Sawyer, J.)

## II. FRAZER HAS AN ABSOLUTE RIGHT TO TRIAL BY JURY OF ANY REMAINING FRAUDULENT TRANSFER AND SUPPRESSION ALLEGATIONS.

### A. FRAUDULENT SUPPRESSION.

The Trustee's complaint includes allegations that Frazer and Price "jointly and severally, wrongfully and intentionally withheld information regarding the stock and the state court litigation"; and that "Price and Frazer have conspired to withhold information and to prevent the Trustee from obtaining information regarding the referenced stock and the civil litigation." (Frazer's Amended Motion to Withdraw the Reference, App. 1, Exhs. B, L, Complaint, Amended Complaint). Frazer has an absolute right to a jury trial of all fraudulent suppression allegations. See In re Roberts, 126 B.R. 678, 681 (Bankr. W.D. Pa. 1991) (holding that withdrawal of the reference was appropriate due to the right to a jury trial of the fraud claim).

The Trustee's claims are clearly barred by the statute of limitations, but the Trustee seeks to toll the statute of limitations based upon the equitable tolling doctrine. To equitably toll the statute of limitations, the Trustee must allege and prove that Price and Frazer fraudulently concealed the initial alleged fraudulent transfer. In re Papa's Market Café, Inc., 162 B.R. 519, 524 (Bankr. N.D. Ill. 1993). Frazer has filed a motion for

summary judgment based, in part, upon the statute of limitations wherein Frazer defeats the Trustee's equitable tolling argument.    If the Bankruptcy Court were to deny Frazer's motion for summary judgment and hold that there is a genuine issue of material fact regarding whether Price and Frazer fraudulently concealed an alleged fraudulent transfer, Frazer has an absolute right to a jury trial over those allegedly genuine issues of material fact.  See In re Roberts, 126 B.R. 678, 681 (Bankr. W.D. Pa. 1991).

### B.    FRAUDULENT CONVEYANCE TO DEFEAT STATUTE OF LIMITATIONS.

Frazer is entitled to a jury trial of all fraud allegations.  In Granfinanciera, the leading case regarding a request to withdraw the reference based upon the right to a jury trial, the United States Supreme Court held that although Congress designated fraudulent transfer actions as core bankruptcy proceedings, Congress may not infringe upon an individuals right to a jury trial.  492 U.S. 33.  The Supreme Court held that the Constitution provides the right to trial by jury of fraudulent transfer claims if a jury demand was properly asserted.  Id. at 46.  Frazer properly demanded a jury trial and has a Constitutional right to have a jury adjudicate whether the Divorce Order was collusive and therefore fraudulent.    Granfinanciera, 492

U.S. 33.   Additionally, the Trustee seeks a monetary judgment, which also entitles Frazer to a trial by jury.

### III. FRAZER HAS NOT VOLUNTARILY OR KNOWINGLY WAIVED HER CONSTITUTIONAL RIGHT TO TRIAL BY JURY.

The Trustee argues that Frazer's counterclaim divested Frazer of her constitutional right to a jury trial.  Frazer's counterclaim, however, did not divest her of her right to a jury trial because Frazer's counterclaim does not seek a portion of the res and the counterclaim did not trigger the claims allowance and disallowance process. See Granfinanciera, 492 U.S. 33.  All Frazer seeks to do is to retain the property awarded to her by the Divorce Court.

The term "waiver" is defined as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). "[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver." Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937) (citations omitted); see also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510 (1959) (wherever possible, the constitutional right to a jury trial must be preserved); NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.), 203 B.R. 905, 912-13 (D.Del.1996) ("courts should not be eager to embrace an implied waiver of constitutional rights where there is an

affirmative and timely assertion of those rights"). It is
clear that Frazer did not intentionally relinquish her
constitutional right to a jury trial.

Frazer's counterclaim is protective and pled in
the alternative:

> It is a claim against the Trustee and
> Baddley to determine the extent and priority
> of liens in the event the Court erroneously
> determines that the Trustee possesses any
> interest in the Tiffin Stock, which [Frazer]
> disputes.

(Frazer's Motion to Withdraw the Reference, App. 1,
Pleadings, Exh. O, Amended Answer, Crossclaim and
Counterclaim, p. 7-8, ¶10).

Frazer is not seeking any portion of the res.
While the Trustee contends that the Tiffin Stock is
property of Price's bankruptcy case, it cannot be so unless
the Divorce Order was a fraud upon the court. Frazer's
counterclaim seeks to protect and preserve her state law
property rights.

The Trustee cites three cases, each of which is
inapposite because the defendant in each case sought a
monetary payout from the estate. First, in Peachtree Lane
Assoc., LTD v. Granader, the defendants sought a portion of
the bankruptcy res. The defendants demanded actual
damages, punitive damages and attorney's fees from the

estate.    175  B.R.  232,  234  (Bankr.  N.D.  Ill.  1994).

Moreover,  in  Peachtree,  the  defendants  waived  their  right

to  a  jury  trial  by  successfully  moving  for  an  extension  of

the  bar  date  so  that  the  Bankruptcy  Court  could  treat  their

counterclaims  as  proofs  of  claim  against  the  estate.  Id.  at

234-35,  n.4.

Similarly,  in  the  unreported  case  of  In  re

Automation  Solutions  International,  LLC,  2003  WL  22945651,

No.  01-11951,  A.P.  03-1141  at  *1  (Bankr.  N.D.  Cal.  2003)

the  defendant's  counterclaim  alleged  that  the  estate  was

indebted  to  him  for  over  $500,000  based  upon  a  promissory

note.    The  defendant  was  clearly  seeking  a  portion  of  the

res.    The  court  explained  that  the  defendant  waived  his

right  to  a  jury  trial  because  the  defendant's  intent  was  to

recover  money  from  the  estate.    Id.

In  Langenkamp  v.  Culp,  498  U.S.  42,  43  (1990)  the

debtor  had  promised  to  repay  money  that  the  defendant

invested.    The  debtor  repaid  some  of  the  money  and  then

filed  Chapter  11.    Id.    The  investor  filed  a  proof  of  claim

for  the  money  that  was  not  paid.  Id.  Some  time  later,  the

trustee  filed  an  adversary  proceeding  to  avoid  the  money

the  debtor  paid  pre-petition  to  the  investor  as

preferential  payments.    Id.    The  Court  held  that  because

the  investor  filed  a  proof  of  claim  seeking  money  from  the

estate, the investor had submitted to the Bankruptcy Court's jurisdiction and waived its right to a jury trial. Id. at 44-45. If the investor had not sought money from the estate, the investor would not have submitted to the Bankruptcy Court's jurisdiction over the preference action and would not have waived its right to a jury trial.  Id.

Frazer is not seeking money from Price's bankruptcy estate.  Frazer has paid approximately $350,000 of Price's debt and did not file a proof of claim to collect that money from Price's estate.  Rather, Frazer's counterclaim was filed because the Trustee initially argued that a stock transfer agreement attached to the stock and prevented the Divorce Order from validly transferring the Tiffin Stock to Frazer.  The Stock Transfer Agreement is merely a right of first refusal of which the conditions have been met.  Frazer disputes that the Stock Transfer Agreement prevented transfer of the Tiffin Stock to Frazer. In the alternative, Frazer's counterclaim simply notified the Bankruptcy Court that even if the Stock Transfer Agreement did preclude transfer to Frazer, Frazer has a judicial lien upon the stock.

Frazer's counterclaim did not trigger the claims allowance process.  "The very phrase 'claims allowance process' suggests that the resolution of the dispute in

which a jury trial is sought must affect the allowance of the creditor's claim in order to be part of that process." Germaine v. The Connecticut National Bank, 988 F.2d 1323, 1327 (2d Cir. 1993). Frazer seeks a jury trial of the Trustee' fraud claims, which do not affect the allowance or disallowance of any creditor's claim. Frazer has not sought allowance of claims against the estate and her counterclaim does not affect the allowance of claims against the estate. A judicial lien passes through bankruptcy unaffected because it is a property right. In order to avoid Frazer's lien, the Trustee would have to file an adversary proceeding. See Fed. R. Bankr. 7001.

Frazer's counterclaim does not seek money from Price's bankruptcy estate and Frazer's counterclaim does not trigger the claims allowance process of the Bankruptcy Court. Frazer has not voluntarily submitted to the Bankruptcy Court's jurisdiction. Therefore, Frazer has not waived her right to a jury trial.

## IV. FRAZER'S MOTION TO WITHDRAW THE REFERENCE AND TRANSFER TO DISTRICT COURT WAS TIMELY.

The Trustee has delayed this proceeding for over nine months and the basis for her claim that the Residence and the Tiffin Stock are property of Price's bankruptcy estate is still unclear. (cf. Trustee's Response to Order

Dated May 25, 2006 at p. 3 <u>and</u> Exh. A, Trustee response to Frazer's Motion for Summary Judgment at p. A). Frazer spent nearly a year attempting to force the Trustee to articulate her argument and has provided case law and factual support which defeats each and every possible argument the Trustee could assert. The only possible path to void the valid Divorce Order which was entered and recorded pre-petition is to allege and prove that Frazer and Price together committed fraud upon the Divorce Court. The Trustee did not assert her fraud allegations until March 13, 2006. Frazer has an absolute right to a jury trial of any allegations of fraud.

28 USC § 157(d) provides that "[t]he District Court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party." While the statute provides no guidance as to when a motion is timely, courts range from requiring a motion under § 157(d) to be made "at the first reasonable opportunity" after the moving party has notice of the grounds for withdrawing the reference to holding that a motion to withdraw the reference is premature until the case is ready for trial. <u>Cf</u>. <u>In re Sevko, Inc.</u>, 143 B.R. 114, 116 (N.D. Ill. 1992) <u>and</u> <u>City Fire Equipment Co., Inc. v. Ansul Fire Protection Wormald</u>

U.S., Inc., 125 B.R. 645 (N.D. Ala. 1999) (en banc). Even in the courts where the most stringent requirements are applied, the determination whether a party has invoked § 157(d) at the first reasonable opportunity must be made upon the particular facts of each case. In re Chateaugay Corp., 104 B.R. 622, 623-24 (S.D.N.Y. 1989).

Timeliness is assessed from the time the grounds for withdrawing the reference first become apparent. United States v. Kaplan, 146 B.R. 500, 503 (D. Mass 1992). For instance, in In the Matter of Lissner Corp., 115 B.R. 604 (N.D. Ill. 1990), timeliness was assessed relative to the filing of a motion creating grounds for withdrawal, and not the filing of the initial complaint, even though it was clear to both parties months prior to the motion for withdrawal of the reference that the suit would eventually involve other Federal laws, constituting the grounds for withdrawal. The court ruled that timeliness should be assessed relative to the filing of the motion because prior to the Trustee's filing of a motion implicating other Federal laws, there would have been no cognizable dispute constituting grounds for withdrawal. Id.

Similarly, here, timeliness should be assessed relative to March 13, 2006, the date the trustee filed her amended complaint, which first contained the fraudulent

transfer claim. Because timeliness should be assessed relative to the filing of the amended complaint on March 13, 2006, the time span and sequence of events listed on p. 15 of Trustee's Response to Order Dated May 25, 2006 are irrelevant.

**A.    FRASER FILED HER MOTION TO WITHDRAW AT THE FIRST REASONABLE OPPORTUNITY.**

May 11, 2006, less than two months after the grounds for withdrawal became apparent, was Frazer's "first reasonable opportunity" to file the motion based upon the circumstances of this case. First, the judge's order for response entered on April 11, 2006, and before Frazer's Answer to the Trustee's Amended Complaint was due, concerned the right to a jury trial and involved significant overlap with Frazer's motion for withdrawal of the reference. It was appropriate to file the response to the Bankruptcy Court's order and the Motion to Withdraw the reference simultaneously, and both the response and motion were filed within the time allotted by the court.

In _In re Sevko, Inc._, 143 B.R. 114 (N.D. Ill. 1992), a five-month delay in filing a motion to withdraw was still timely in part because of a pending motion to dismiss the claim. The court reasoned that filing a motion to withdraw prior to resolution of the motion to dismiss

and other issues would have been imprudent. Similarly, here, because of the Trustee's vague and unclear allegations, and causes of action, it would have been imprudent to move to withdraw the reference prior to this point.

Following is a brief procedural history which establishes that Frazer filed her Motion to Withdraw the Reference upon the first reasonable opportunity. The Trustee's initial attempt to recover the Tiffin Stock occurred in December of 2004, several months after the statute of limitations had passed. (Frazer's Amended Motion to Withdraw the Reference, ¶ 26). The Trustee first requested the Divorce Court to grant her 90 additional days to investigate the transfers to Frazer. Several months passed, but the Trustee did nothing further. (Frazer's Amended Motion to Withdraw the Reference, ¶ 27). Finally, Frazer filed her Motion for Relief From Automatic Stay which the Bankruptcy Court conditionally denied so long as the Trustee filed her complaint within 30 days. (Frazer's Amended Motion to Withdraw the Reference, ¶ 32). On August 12, 2005, the Trustee finally filed her original complaint. (Frazer's Amended Motion to Withdraw the Reference, ¶ 33).

The Trustee's original complaint merely alleged that the Residence and the Tiffin Stock were property of

the estate, without challenging the Divorce Order. Frazer
filed a motion to dismiss, establishing that the Residence
and the Tiffin Stock could not be property of the estate
absent allegations and eventually proof of collusive fraud.
(Frazer's Amended Motion to Withdraw the Reference, ¶ 34).
The Bankruptcy Court allowed the Trustee until January 15,
2006 to amend the pleadings.

Without motion by the Trustee, the Bankruptcy
Court, sua sponte, extended the deadline for amending
pleadings and found that there were genuine issues of
material fact concerning whether the statute of limitations
applicable to fraud should be equitably tolled, despite the
fact that the Trustee had not yet alleged fraud and had
provided no evidence in support of any equitable tolling
argument.    (Frazer's Amended Motion to Withdraw the
Reference, ¶ 35).

Finally, on March 13, 2006, the Trustee amended
her complaint to include state law fraudulent transfer
allegations, without specificity as required by Fed. R.
Civ. P. 9, as incorporated into Bankr. R. P. 7009.
(Frazer's Amended Motion to Withdraw the Reference, ¶ 36).
Before Frazer answered the Trustee's Amended Complaint, the
Bankruptcy Court, sua sponte, apparently decided that
withdrawal of the reference may be appropriate and ordered

Frazer to brief her basis for her jury demand, with citation by May 11, 2006. (Frazer's Amended Motion to Withdraw the Reference, ¶ 37). Frazer filed her Motion to Withdraw the Reference and Transfer to District Court simultaneously with her response to the Bankruptcy Court's order to support to her jury demand.

      **B.**    **THE TRUSTEE WILL NOT BE PREJUDICED IF THIS COURT WITHDRAWS THE REFERENCE AND UPHOLDS FRAZER'S CONSTITUTIONAL RIGHT TO TRIAL BY JURY.**

Courts consider prejudice to the other party when assessing the timeliness of a motion to withdraw the reference. Burger King Corp. v. B-K of Kansas, Inc., 64 B.R. 728, 730 (D. Kan. 1986) (holding that a delay of 10 months was timely where there was no prejudice to nonmovant). In re Sevko, Inc., 143 B.R. 114 (N.D. Ill. 1992) (five-month delay in filing motion was timely, and there was no unfair prejudice to nonmovant). A delay of less than two months in filing the motion does not prejudice the Trustee. The Trustee has not claimed that she has been prejudiced. Frazer filed her motion within 35 days of the Bankruptcy Court setting the trial date, which is well in advance of trial. Withdrawal in this case involves no needless expense or duplication of effort. Further, the Trustee was aware that Frazer would move to

withdraw the reference in the event that grounds for withdrawal should surface, because Frazer has consistently demanded a jury trial throughout this litigation.

A delay of less than two months also does not run afoul of the purpose of the timeliness requirement, which is to avoid needless expense and prevent stalling tactics. United States v. Kaplan, 146 B.R. 500, 503 (D. Mass. 1992). Withdrawal of the reference would cause no needless expense, and there is nothing to suggest, nor has the Trustee argued, that Frazer is simply stalling. Frazer has not moved to stay the bankruptcy proceeding, which evinces not tactical maneuvering, but merely insistence on a constitutional right. Frazer's Motion to Withdraw the Reference is timely. In re IQ Telecommunications, Inc., 70 B.R. 742 (N.D. Ill. 1987) (motion to withdraw timely after a delay of eleven weeks); In the Matter of Lissner Corp., 115 B.R. 604 (N.D. Ill. 1990) (motion to withdraw timely after delay of seven weeks); Burger King Corp. v. B-K of Kansas, Inc., 64 B.R. 728 (D. Kan. 1986) (motion to withdraw timely after delay of ten months).

## CONCLUSION

The Alabama Divorce Court awarded Frazer absolute ownership of the Tiffin Stock and granted Frazer a lien

upon its value to the extent any contractual provisions prohibited transfer.   The Trustee's recent claims of fraudulent suppression and fraudulent conveyance present jury trial issues.   Frazer has not waived her right to a jury trial and the reference is due to be withdrawn for that purpose.

/s/ David B. Anderson_____
David B. Anderson
Deanna L. Weidner
Attorneys for Starla Frazer

OF COUNSEL:

WALLER, LANSDEN, DORTCH  & DAVIS, LLP
AmSouth-Harbert Plaza, Suite 1400
1901 6th Avenue North
Birmingham, AL   35203
Phone:  205-214-6380
Fax:  205-214-8787


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Reply to Trustee's Brief in Response to Order Dated May 25, 2006 has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Mr. Von G. Memory
Mr. James L. Day
Mr. William D. Azar
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

Mr. Charles N. Parnell, III
Parnell & Crum, P.A.
P. O. Box 2189
Montgomery, AL 36102

Mr. André M. Toffel
Toffel & Altmann
Farley Building, 4th Floor
1929 3rd Avenue North
Birmingham, AL  35203

This the 20th day of June, 2006.

/s/ David B. Anderson_____
David B. Anderson