# EXHIBIT A

## Price Property Settlement

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

IN RE THE MARRIAGE OF            )        DOMESTIC RELATIONS DIVISION
                                 )
STARLA WATSON PRICE              )
                                 )
AND                              )        CASE NO.: DR-2001-126
                                 )
STEPHEN LEE PRICE,               )
Husband and Wife.                )

## MARITAL SETTLEMENT AGREEMENT

**WHEREAS,** the parties to this Agreement, Stephen Lee Price, sometimes herein referred to as the "Husband", and Starla Watson Price, sometimes herein referred to as "Wife", are parties to an action for divorce in Montgomery County, Alabama and for other relief, and;

**WHEREAS,** it is the desire of the parties hereto to enter into this Agreement in order to settle each of their individual interests, and it is their further desire that this "Marital Settlement Agreement" be made part of and incorporated into the "Final Judgment of Divorce", to be legally binding on both of them and enforceable by either of them;

**NOW, THEREFORE,** in consideration of their mutual promises, covenants and agreements contained herein, and for good and valuable consideration in hand received the receipt and sufficiency of which is hereby acknowledged by and between the parties and counsel, in the event the "Complaint" is granted and this Agreement is approved by the Court, it is mutually promised, covenanted and agreed by and between the parties that the following shall be the terms and conditions of relief in this action, to be incorporated in and made a part of the final judgment of this Court as follows:

1.    **EFFECTIVE DATE:**    This Agreement shall become effective upon approval by the Court evidenced by incorporation of this Agreement into the "Final Judgment of

137

Divorce".

2.    **RELATIONSHIP OF PARTIES:**  Neither party shall hereafter do any act, directly or indirectly, to harass, molest, intimidate or bother the other party in any manner whatsoever.  Each party shall be free to live at such places as he or she may elect, free from all dominion, control or restraint from the other party in any manner whatsoever.

3.    **EXECUTION OF INSTRUMENTS:**        Each party shall, within thirty (30) days of the "Final Judgment of Divorce", execute and deliver to the other party all instruments which may be necessary, convenient, or appropriate to carry into effect any provision of this Agreement.

4.    **LEGAL CUSTODY:**

a.    That the legal care, custody and control of the minor children of the parties, namely: Stephen Lee Price, Jr. whose date of birth is January 6, 1992 and Margaret Cashion Price, whose date of birth is March 17, 1994, shall be jointly vested in the parties.  The best interest of the minor children will be served by awarding the primary physical custody of the minor children to the Wife.  The Wife shall be the "custodian" of said children, with the Husband having the right to exercise visitation as provided herein.

b.    The primary residence of the minor children shall be with the Wife who shall be the "primary physical custodian" of said minor children, with the Husband having the right to exercise visitation as provided herein.

c.    "Legal custody" pursuant to law, means a legal status created by the order of a court, which confers on the parents of said minor children the right and duty to protect, train and discipline the minor children, and to provide food, shelter, legal services, education, medical

2

138

and dental care, subject to existing parental rights and responsibilities and the provisions of any court order. The Wife, as primary physical custodian of the minor children herein, shall consult with the Husband relative to all matters concerning health, education and welfare of the minor children; however, in the event of a disagreement, Wife's decision shall be final. Both Husband and Wife shall in good faith consider the input of the other. Both Husband and Wife shall have the right to have meaningful input into all matters relative to the minor children's health, education and welfare. The parties shall keep each other informed of all school, church or other activities in which the minor children may be involved.

      d.    Husband and Wife agree to conduct themselves in such a manner as to be conducive to the welfare and best interest of the minor children. Husband and Wife recognize that divorce can be a painful and traumatic event in the lives of the minor children. In order to alleviate the potential harmful effects of such an event, Husband and Wife agree to take all steps reasonably possible to show the minor children the depth and continuing nature of their parental commitment. Husband and Wife also believe it is in the best interest of their children to make this positive statement of intent and purpose concerning the mutual love and commitment which they share toward their children.

      e.    The parties each agree to promote a healthy and beneficial relationship with the other parent and will not demean, speak or act negatively in any manner that would damage the natural flow of love, caring and affection between either parent or the minor children.

      f.    Neither party shall use their joint legal custody for the purpose of frustrating, denying or controlling, in any manner, the independence of the other parent or his/her ability to lead an autonomous lifestyle as they participate in the joint legal custody of the minor

3

139

children.

g.    Husband and Wife understand the need for continuity, predictability and stability in the lives of their minor children. In order to achieve this, Wife, as primary physical custodian of the minor children, shall have the routine daily responsibility to make those decisions which are necessary in the natural course of caring for the children on a daily basis while in Wife's care.

5.    **CHILD SUPPORT:**

a.    Beginning August 1, 2001, the Husband shall pay the sum of Three Thousand and No/100 ($3,000.00) Dollars per month as child support for the support and maintenance of the minor children of the parties. Said payments shall be made through the Family Court of Montgomery County, Alabama, on the first day of August, 2001, and continuing on the first day of each subsequent month thereafter until the minor children become nineteen (19) years of age, marry or becomes otherwise self supporting, whichever shall first occur. The Husband shall be responsible for and pay all administrative fees to the Court incident to the payment of said child support. The parties hereby agree that it is in their best interests and the best interests of the minor children that an "Income Withholding Order" not be immediately served upon the Husband's employer.

b.    The parties have entered into a fair written agreement establishing the award of child support herein and the same is in compliance with Rule 32, Alabama Rules of Judicial Administration. The parties hereby acknowledge that their combined gross incomes exceed the maximum guidelines amount as established by Rule 32, A.R.J.A. The Circuit Court of Montgomery County, Alabama upon acceptance and entry of judgment herein, finds the parties'

4

140

agreement relative to child support to be fair and reasonable under the totality of the
circumstances.

6.    **MEDICAL/DENTAL EXPENSES:**

a.    The Husband shall be obligated to provide medical and dental insurance for
the benefit of the minor children through either Blue Cross/Blue Shield of Alabama or United
Healthcare, to keep the same in full force and effect, pay the premiums thereon, and refrain from
allowing said coverage to lapse. Husband's obligation to provide medical and dental insurance
shall terminate upon the termination of Husband's obligation to pay child support and/or college
education expenses as provided herein.  The Husband shall be reasonable for and pay all medical
and dental expenses that are not covered by insurance including, but not limited to, all
deductibles, co-payments, medical, dental, optical, orthodontic, counseling and prescription drug
expenses incurred on behalf of the minor children.  This obligation to pay non-covered medical
and dental expenses shall continue for as long as the minor children are entitled to receive child
support and/or for as long the minor children are entitled to receive college education expenses as
provided herein.

b.    The Husband shall reimburse the Wife for all non-covered medical and
dental expenses no later than ten (10) days following his receipt of written verification that a non-
covered medical expense has been incurred.

c.    The Husband shall provide the Wife, for her personal benefit, with health
insurance coverage either through Blue Cross/Blue Shield of Alabama or United Healthcare.  The
Husband shall pay all premiums associated with obtaining the medical and dental insurance policy
for the benefit of the Wife.  The Husband shall keep this policy in full force and effect, pay the

5

premiums thereon, and refrain from allowing said coverage to lapse. The Husband shall keep this

coverage in full force and effect until such time as the Wife obtains replacement medical and

dental insurance which is at no cost to her or until her remarriage, whichever shall first occur.

The Wife shall have the total and complete discretion as to whether or not she will obtain

replacement medical and dental insurance. Said payments are additional property settlement

between the parties. Said payments are not periodic alimony and shall not be deductible by

Husband for federal and state income tax purposes and shall not be includable by Wife as income

for federal and state income tax purposes.

      7.    **VISITATION:**

        a.      The Husband shall have liberal reasonable rights of visitation with the

minor children to be exercised by him at reasonable times and in a reasonable manner, as agreed

between the parties with reasonable notice. The parties understand that the Husband no longer

resides in Alabama and that his work and travel schedule are such that his access to the minor

children must be governed to some extent by these factors. The parties agree to cooperate in

working out visitation between the Husband and the minor children to take into consideration the

schedules and routines of both parents and minor children in order to allow meaningful time with

the children for both parties. If the parties are unable to agree on a plan to accommodate these

circumstances, or if it otherwise becomes necessary to implement a visitation schedule, the parties

agree to devise and implement a schedule of visitation upon request by either in writing to the

other. If the parties are unable to agree on a visitation schedule, the issue shall be submitted to a

mutually agreeable mediator prior to petitioning this Court or other court of competent

jurisdiction to determine a visitation schedule.

6

102

b.     Neither party shall have overnight guests of the opposite sex, other than family members, while the parties' minor children are in the home.  Further, the Husband shall never have the children in the presence of Jamie Bender.  The parties shall notify each other of the whereabouts of the children when they travel out of the city of their residence.

8.     **LIFE INSURANCE**     The Husband shall maintain a minimum of One Million and No/100 ($1,000,000.00) Dollars of life insurance designating the Wife as the beneficiary of said policy.  The Wife shall be the owner of said policy or policies.  The Husband shall be responsible for keeping this policy in full force and effect until his death.  The Husband shall pay all premiums on said policy and shall not cancel or allow said insurance to lapse.  Husband shall not mortgage, pledge, or encumber said insurance without the written consent of the Wife.  At the request of the Wife, the Husband shall provide proof of said life insurance policies and proof that said premiums are being paid in full on or before the due date.  By the execution of this Agreement, the Husband hereby relinquishes all right, title and interest he may have in and to the life insurance policy or policies obtained as a result of this provision.  The payment of these life insurance premiums by the Husband for the benefit of the minor children and the Wife are additional property settlement between the parties.  Said payments are not periodic alimony and shall not be deductible by Husband for federal and state income tax purposes and shall not be included by Wife as income for federal and state income tax purposes.

9.     **COLLEGE EDUCATION EXPENSES:**

a.     The Husband recognizes a moral obligation and by this Agreement creates a legal obligation to support and maintain his children in pursuit of a college or post high school education.  The above obligation includes the following: (1) tuition; (2) books and supplies; (3)

7

143

room, lodging and board; (4) reasonable and customary fees charged by the institution; and (5) transportation. The parties acknowledge transportation is an integral part of education expenses.

b.    The Husband's obligation to provide higher education expenses is conditioned upon the following:

1.    The respective child has, at the time, the desire, talent and ability to attain such a higher education.

2.    The child carries the required number of courses or units so that he or she is considered by the school attended to be a "full time student" and the child maintains a passing grade average as prescribed by the school.

10.    **AUTOMOBILES:**

a.    The Wife shall be the sole and absolute owner of the 2002 Cadillac Escalade automobile. The Wife shall be responsible for and pay any indebtedness thereon and shall hold the Husband harmless therefrom. The Husband shall be responsible for securing automobile insurance in the name of the Wife and shall be responsible for keeping this automobile insurance in full force and effect for as long as the Wife owns or leases an automobile in her name. Additionally, the Husband's responsibility for securing automobile insurance in the name of the Wife shall only be in place for as long as the Wife remains unmarried. By the execution of this Agreement, the Husband does hereby relinquish all right, title and interest he may have in and to said automobile and shall execute any and all documents necessary to transfer complete title to the Wife within thirty (30) days of the "Final Judgment of Divorce". The payments of the automobile insurance by Husband for the benefit of the Wife are additional property settlement between the parties. Said payments are not periodic alimony and shall not be deductible by Husband for

8

144

federal and state income tax purposes and shall not be includable by Wife as income for federal and state income tax purposes.

b.    The Husband, as additional child support, hereby agrees to purchase an automobile for each child at the time each child turns sixteen (16) years of age. The Husband shall purchase a vehicle for each child with a minimum "sticker price" of Thirty Thousand and No/100 ($30,000.00) Dollars for each vehicle. Title to said vehicles shall be in the name of the Wife until such time as each child reaches the age of majority. In addition, the Husband shall be responsible for paying all payments, fees, maintenance expenses, insurance, and any other costs associated with the purchase, operation, and maintenance of said automobiles. The Husband hereby specifically agrees to hold the Wife harmless from any and all expenses associated with these automobiles.

11.    **DEBTS:**

a.    The Husband has fully disclosed to the Wife all outstanding debts and liabilities incurred whether in the parties joint or their individual names. The Husband shall be responsible for all debts incurred during the marriage of the parties, with the exception of the 2002 Cadillac Escalade, and shall hold the Wife harmless therefrom.

b.    If either party fails to pay any debt or liability, as set forth herein, the other party shall have the right, but is not obligated, to make any payments due. If paid, the defaulting party shall be responsible for reimbursement and indemnification to the party who made the payments, with interest computed at the rate of twelve (12%) percent per annum on the amount of any payment made by said party.

c.    With respect to each party's responsibility to pay the debts, liabilities

9

and/or obligations set forth in this Agreement and to hold the other harmless from any liability

thereon whatsoever, the parties intend these specific debts and liabilities to be non-dischargeable

under Sections 523(a)(5) and (a)(15) of the Bankruptcy Code.

        d.     Each party acknowledges that the assumption of the obligation to hold the

other harmless from any liability upon the debts, liabilities and/or obligations contained in this

Agreement is the assumption of a separate and distinct obligation in addition to the obligation to

assume and pay said liabilities.

        e.     The Wife shall assume, pay and hold the Husband harmless from the

indebtedness owed on the 2001 Cadillac Escalade.

        f.     The Husband shall assume, pay and hold the Wife harmless from the

following debts:

        1.     Any and all debts in the individual name of the Husband.

        2.     Any and all debts in the individual name of the Wife with the

exception of the 2001 Cadillac Escalade.

        3.     Any and all debts in the joint names of the parties.

        4.     Any and all debts in the name of Cross Country Freightlines, Inc.,

and any and all debts in the name of any other business entity, however designated.

Further, any and all indebtedness which may be in the name of any sole proprietorship,

partnership, corporation, or any other business entity, however designated, in which the

parties have conducted business.

        5.     Any and all debts which may have been cosigned or guaranteed

by the Wife.

g.    Neither party shall hereafter directly or indirectly incur further debts or

credit obligations which would obligate the other party either individually or jointly. Neither party

shall hereafter charge upon the credit of the other.

12.    **MARITAL RESIDENCE:**

a.    The marital residence of Husband and Wife located in Steamboat Springs,

Colorado, and popularly known as 41600 RCR 38A, Steamboat Springs, Colorado 80487 shall be

the sole and absolute property of the Wife. The Husband shall execute a warranty deed to Wife

conveying all of his right, title and interest therein to Wife to be her's absolutely. The Husband

shall be responsible for and pay any and all mortgages, taxes, insurance, repair and maintenance

expenses, and utility expenses associated with said residence until such time as it is sold. By the

execution of this Agreement, the Husband hereby relinquishes all right, title and interest in and to

said residence. Payments made by the Husband pursuant to this paragraph are additional property

settlement between the parties. Said payments are not periodic alimony and shall not be

deductible by Husband for federal and state income tax purposes and shall not be includable by

Wife as income for federal and state income tax purposes.

b.    In the event the marital residence is sold, the Wife shall receive all proceeds

from the sale therefrom. The term "proceeds" is hereby defined as the funds received by the Wife

after the deduction of the payment of the first mortgage indebtedness on the marital residence,

realtor fees and closing costs. However, in the event the Wife decides to auction the property, the

Husband shall be responsible for paying any and all fees and/or expenses associated with the

auction. The Husband shall be responsible for all costs of sale associated with the sale of the

marital residence including, but not limited to, auction fees, realtor fees, and closing costs.

11

1167

c.       The Husband shall not further encumber the marital residence by obtaining

any loans or liens against the property, such as a second mortgage.  The Husband warrants and

represents that there are no loans or liens against the property except for the first mortgage.

13.      **PROPERTY SETTLEMENT:**        The Husband shall pay to the Wife as

property settlement the total sum of Seven Hundred Twenty Thousand and No/100 ($720,000.00)

Dollars payable in monthly increments of Twelve Thousand and No/100 ($12,000.00) Dollars for

a period of sixty (60) months beginning August 1, 2001.  Said payments are additional property

settlement between the parties.  Said payments are not periodic alimony and shall not be

deductible by Husband for federal and state income tax purposes and shall not be includable by

Wife as income for federal and state income tax purposes.  Said payments shall not be modifiable

by either party.  Said property settlement shall be an obligation of the Husband's estate in the

event of his death.  Further, in the event of the Wife's death, the Wife's estate shall still be entitled

to receive said payments for their duration.  With respect to the Husband's responsibility to pay

this property settlement, the parties intend this obligation to be non-dischargable under Sections

523(a)(5) and (a)(15) of the Bankruptcy Code.  The Husband hereby acknowledges that this

payment to the Wife is in the nature of support and that the payment of this sum is vital to the

financial security of the Wife and minor children.

14.      **PERSONAL PROPERTY:**

a.       The Wife shall be the sole and absolute owner of all household furniture,

furnishings, fixtures and appliances located at either the marital residence in Steamboat Springs,

Colorado or at the residence that the parties are renting in Montgomery, Alabama.

b.       The Wife shall be entitled to all of her personal belongings including, but

148

not limited to, clothing, jewelry, furs, and personal effects.

       c.    The Husband shall be entitled to all of his personal belongings including, but not limited to, clothing, jewelry, and personal effects. The Husband shall be allowed a reasonable time to remove from the marital residence his clothing, jewelry and personal effects.

       d.    Each party is hereby divested of all right, title and interest in and to the property awarded to the other party except as provided herein.

       e.    The Husband shall be responsible for and pay any and all costs and/or expenses which are incurred by the Wife in order to move the household furniture, furnishings, fixtures, appliances and her personal belongings from Steamboat Springs, Colorado to Montgomery, Alabama.

   15.   **TAXES:**

       a.    The Wife shall have the right to claim the minor children as dependents and exemptions for federal and state income tax purposes commencing with the 2000 tax year and continuing each year thereafter. The Husband shall execute any and all documents necessary for this provision to be given full force and effect.

       b.    The Husband shall assume, pay, indemnify and hold the Wife harmless from any and all tax liability accruing to the parties by virtue of any and all income tax returns filed jointly by the parties during their marriage, both state and federal, including, but not limited to, taxes, interest, penalties, and any other expenses that Wife may incur in responding to or defending a claim relative to potential tax liability or actual tax liability, including reasonable attorney's fee, accountants fees and costs, relative to any tax audit and/or adjustment.

       c.    Husband acknowledges that Wife has relied on Husband for the

149

preparation, filing and/or non-filing of any tax returns and that to his knowledge she is an innocent spouse for taxation purposes.

d.    The Husband shall assume, pay, indemnify and hold the Wife harmless from any and all tax liability accruing to the parties by virtue of the parties' interest in Cross Country Freightlines, Inc., or any other business entity whether sole proprietorship, partnership, corporation, limited liability company or otherwise, both state and federal, including, but not limited to, taxes, interest, penalties, and any other expenses that Wife may incur in responding to or defending a claim relative to potential tax liability or actual tax liability, including reasonable attorney's fees, accountants fees, and costs, relative to any tax audit and/or adjustment.

e.    The parties agree to cooperate with respect to the securing, copying and furnishing to each other of originals or copies of any tax documents, either federal or state, including substantiating records and papers and tax returns, and providing any other necessary or convenient or appropriate information relative to the parties' taxes or to the taxes related to any business entity in which the parties have an interest.

e.    The parties acknowledge that they have been advised by their attorneys of record in this case, that there may be certain tax consequences pertaining to this "Marital Settlement Agreement", that their attorneys have not furnished tax advice with respect to this Agreement, that each party has been directed and advised by their attorneys to obtain independent tax advice from qualified tax accountants or tax counsel prior to signing this Agreement and that each party has had the opportunity to do so.

f    The parties hereby agree to equally divide any "loss carry forwards" or any other loss or tax benefit which have been accrued by the parties during their marriage.

14

160

16.    **BANK ACCOUNTS, CASH AND EQUIVALENTS:**

a.    The parties shall immediately close any remaining joint bank accounts including, but not limited to, joint checking and/or savings accounts, and shall equally divide any funds remaining therein.

b.    The Husband shall have as his separate property all checking accounts, savings accounts, cash and equivalents presently in his possession or in his individual name. By the execution of this Agreement, the Wife does hereby relinquish all right, title and interest she may have therein.

c.    The Wife shall have as her separate property all checking accounts, savings accounts, cash and equivalents presently in her possession or in her individual name. By the execution of this Agreement, the Husband does hereby relinquish all right, title and interest he may have therein.

17.    **PERIODIC ALIMONY:**    The issue of periodic alimony for the benefit of the Wife is hereby reserved by the Court for future determination.

18.    **BUSINESS INTERESTS:**

a.    Each party owns a one-fourth (1/4) interest in a business entity known as Cross Country Freightlines, Inc. The Wife hereby relinquishes all right, title and interest in and to the business known as Cross Country Freightlines, Inc. and shall execute such documents as may be required to transfer her interest therein to the Husband within thirty (30) days of the entry of the "Final Judgment of Divorce".

b.    The parties are joint owners in trucks, trailers, other vehicles, equipment and other personal property associated with the operation of Cross Country Freightlines, Inc.

15

151

(hereinafter referred to collectively as the "business personal property"). The parties shall continue to exercise joint ownership of the business personal property. However, the Husband shall be entitled to the use and possession of said business personal property for as long as any and all debt payments are paid which may be encumbering said business personal property, or for as long as he continues to profitably operate Cross Country Freightlines, Inc. In the event the Husband fails to timely pay the indebtedness encumbering said business personal property or in the event of the bankruptcy of Cross Country Freightlines, Inc. or in the event said corporation fails to operate profitably, said business personal property shall revert to the use and possession of the Wife. The Husband shall maintain said business personal property in good condition, pay any and all indebtedness associated with said business personal property and pay all fees, repairs, maintenance expenses, or any other costs associated with said business personal property.

    c.    The Wife authorizes the Husband to purchase, immediately upon the entry of the "Final Judgment of Divorce" or thereafter, without further notice to the Wife, the interest of Anna Cantrell in the business known as Cross Country Freightlines, Inc. in accordance with the agreement which is attached hereto as Exhibit "A", and subject to this Agreement.

    d.    The Husband shall assume responsibility for the payment of any and all indebtedness and tax liabilities associated with Cross Country Freightlines, Inc., the business personal property, and any other sole proprietorship, corporation, partnership, limited liability company or other business entity in which the parties have an interest and shall indemnify and hold the Wife harmless therefrom.

    19.    **TIFFIN MOTOR HOMES, INC. STOCK:**    The Wife shall be the sole and absolute owner of the stock in Tiffin Motor Homes, Inc. which is presently titled in the Husband's

152

name. The Husband shall immediately execute any and all documents which are necessary to convey all right, title and interest therein to Wife to be her's absolutely. The Husband hereby warrants that there are no restrictions on the transfer or sale of said stock or upon the transfer or sale of said stock by a holder in due course. In the event there is a restriction on the transfer or sale of said stock or any limitations on the Wife's ability to liquidate said stock, the Husband shall pay to the Wife the fair market value of said stock as established by generally accepted accounting principles for the valuation of a closely held corporation. In the event there are any costs, expenses, legal fees or legal expenses associated with this stock or its transfer, the Husband hereby agrees to pay all of said fees and expenses and shall hold the Wife harmless therefrom. In the event the Husband sells or transfers this stock prior to the entry of the "Final Judgment of Divorce", he shall pay the fair market value of said stock as established by generally accepted accounting principles for a closely held corporation or the amount he actually receives, whichever amount is greater, to the Wife. A judicial lien is hereby established against the Husband and in favor of the Wife for any amount he receives for the sale or transfer of said stock.

20. **ATTORNEY'S FEES:**

a.    The Husband shall be responsible for the payment of his attorney's fees and litigation expenses incident to these proceedings.

b.    The Wife shall be responsible for the payment of her attorney's fees and litigation expenses incident to these proceedings.

21. **AGREEMENT TO EXECUTE:**    Upon demand, now or in the future, both parties agree to execute, acknowledge, and deliver all documents which may be necessary to carry out the terms and conditions of this Agreement. However, if a party is unable, unavailable or

17

153

refuses to do so, a certified copy of the "Final Judgment of Divorce" may be recorded and/or utilized with the same force and effect as if a deed, conveyance, transfer, assignment or other such document had been personally executed, acknowledged and delivered by said party. Said "Final Judgment of Divorce" shall constitute a full, present and effective relinquishment and waiver of all rights to be relinquished and waived. Should Husband fail to execute the deeds provided for in this "Marital Settlement Agreement" within thirty (30) days of delivery for execution, then in said event, the clerk of the Circuit Court, Domestic Relations Division, of Montgomery County, Alabama, shall be authorized to execute said deeds in their stead.

22.    **DIVESTING OF PROPERTY RIGHTS:**    Except as otherwise provided for in this "Marital Settlement Agreement", each party shall be divested of and each party waives, renounces, and gives up all right, title, and interest in and to the property awarded to the other.

23.    **ENFORCEMENT OF AGREEMENT:**    Any party breaching any term of this Agreement shall, after a judicial determination that the Agreement has been breached, be obligated to the other party for the payment of all costs, including attorney's fees, litigation expenses, and damages, both incidental and consequential, resulting from said breach.

24.    **STIPULATION FOR REVISION/MODIFICATION:**    No oral revisions, oral modifications or oral amendments shall be effective to revise, modify, amend or waive any terms or conditions of this Agreement. Failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature. Any written revision or modification of this Agreement shall be reduced to a stipulated "Order Amending Final Judgment of Divorce".

25.    **REVISION/MODIFICATION BY THE COURT:**    In the absence of a

18

*IC6*

written stipulation or agreement to revise or modify the "Final Judgment of Divorce", the parties

shall be bound by the law of the State of Alabama with respect to any request to the court to

revise or modify this Agreement and the "Final Judgment of Divorce".

    26.   **VOLUNTARY EXECUTION:**    Husband and Wife acknowledge that each

has freely entered into this Agreement. This Agreement was executed free of any duress,

coercion, collusion, or undue influence. In some instances, it represents a compromise of

disputed issues. However, both parties believe the terms and conditions to be fair and reasonable.

    27.   **FUTURE INTERPRETATION:**  Paragraph headings are for convenience

only. They are not part of the Agreement of the parties and shall not be used in the construction

thereof. With respect to the form of the Agreement, Husband and Wife assume joint

responsibility for the form and composition of each paragraph, and each further agrees that this

Agreement shall be interpreted as though each of the parties participated equally in the

composition of each and every part thereof. This Agreement is not to be strictly construed for or

against Husband or Wife. This Agreement shall be interpreted simply and fairly to both Husband

and Wife.

    28.   **FILING FEES:**    The Wife has previously paid the filing fee associated with

this action.

    29.   **INCORPORATION OF AGREEMENT INTO JUDGMENT:**  Husband and

Wife will submit this Agreement to the Court for approval. Husband and Wife request that the

Court incorporate the terms of this Agreement into the "Final Judgment of Divorce" and make

them enforceable as part of said Decree. However, this Agreement shall be null and void and of

no legal force and effect in the absence of court approval and incorporation into the "Final

155

Judgment of Divorce".

30.    **DISCLOSURE:**    The parties acknowledge that they are each entitled to the

benefit of formal discovery of assets, liabilities and any other information to which they are

entitled under the <u>Alabama Rules of Civil Procedure</u> and other applicable laws of the State of

Alabama governing divorce and that they have elected not to conduct any type of discovery

incident to this divorce proceeding.  In connection with this election, the parties further

acknowledge that their respective attorneys have not had the benefit of that discovery and

therefore have not been in a position to nor have they advised the parties, respectively, concerning

their rights nor have they rendered opinions concerning the legal consequences of the provisions

of this "Marital Settlement Agreement" nor how these provisions might affect this divorce

proceeding.  The parties hereby acknowledge that their attorneys have advised them of the risks

associated with their decision not to conduct discovery in this matter and they accept the

consequences of their decisions.

31.    **STIPULATION:**    Pursuant to Rule 29, <u>Alabama Rules of Civil Procedure</u>, the

parties hereby stipulate and agree that testimony in this cause may be taken before any person, at

any time and place, upon any notice and in any manner.  Specifically, any disqualification of a

Notary Public pursuant to Rule 28(d), <u>Alabama Rules of Civil Procedure</u>, is hereby waived by the

parties.

32.    **COLORADO DIVORCE ACTION:**    The Husband shall cause to be

dismissed the divorce proceeding currently pending in the State of Colorado.  The Husband

hereby acknowledges that he was a bona fide resident of the State of Alabama at the time the

Wife filed her "Complaint for Divorce" in the State of Alabama.

156

33.   **SEVERABILITY:**      Every provision of this Agreement is intended to be

severable.  If any term or provision hereof is illegal or invalid for any reason whatsoever, such

illegality or invalidity shall not affect the validity of the remainder of this Agreement.

**IN WITNESS WHEREOF,** the parties have executed this "Marital Settlement

Agreement" by placing their signatures hereon on the date so indicated by their individual

acknowledgments.

_____
STEPHEN LEE PRICE

_____
STARLA WATSON PRICE

STATE OF ALABAMA           )
MONTGOMERY COUNTY          )

Before me, the undersigned authority, a Notary Public, in and for said State and

County, personally appeared **Stephen Lee Price**, who, being first duly  sworn by me, deposes

on oath and says that he has read this instrument, has been advised of and understands its

nature and effect, and voluntarily executed the same.

_____
STEPHEN LEE PRICE

Sworn to and subscribed before me on this the ___2d___ day of ___August___, 2001.

_____
NOTARY PUBLIC

21

157

OF COUNSEL:

_Wanda Devereaux_
**WANDA D. DEVEREAUX**
Devereaux & Hamlett, L.L.C.
Post Office Box 103
Montgomery, Alabama 36101-0103
(334) 262-6801
Attorney for the Husband


STATE OF ALABAMA          )
MONTGOMERY COUNTY         )

     Before me, the undersigned authority, a Notary Public, in and for said State and

County, personally appeared **Starla Watson Price**, who, being first duly sworn by me,

deposes on oath and says that she has read this instrument, has been advised of and

understands its nature and effect, and voluntarily executed the same.

                         _Starla Watson Price_
                         **STARLA WATSON PRICE**

Sworn to and subscribed before me on this the 2nd day of August, 2001.

                    _Diane K. McIver_
                 **NOTARY PUBLIC**


OF COUNSEL:

_John Olszewski_
**JOHN OLSZEWSKI (OLS004)**
Minor & Olszewski, L.L.C.
Post Office Box 164
Montgomery, Alabama 36101-0164
(334) 265-6200
Attorney for the Wife